RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
LAURA A. SUCHESKI, SBN 302445
  lsucheski@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8429

JASON C. SCHWARTZ (*Pro Hac Vice Application to be Submitted*)
  jschwartz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC, 20036-5306
Telephone:    202.955.8500
Facsimile:    202.467.0539

Attorneys for Defendant
SUNRISE SENIOR LIVING, LLC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREY HEREDIA, as successor-in-interest to the Estate of Carlos Heredia; and CORBINA MANCUSO, as successor-in-interest to the Estate of Ruby Mancuso; on their own behalves and on behalf of others similarly situated,<br><br>         Plaintiffs,<br><br>    v.<br><br>SUNRISE SENIOR LIVING, LLC; and DOES 1 through 100,<br><br>         Defendants. | CASE NO.<br><br>**DECLARATION OF RACHEL S. BRASS IN SUPPORT OF DEFENDANT SUNRISE SENIOR LIVING, LLC'S NOTICE OF REMOVAL**<br><br>(Alameda County Superior Court Case No. RG17865541)<br><br>Action Filed:  June 27, 2017<br>Trial Date:  None Set |

1

**DECLARATION OF RACHEL S. BRASS**

2      1.      I am an attorney admitted to practice law before this Court.  I am a partner in the law

3 firm of Gibson, Dunn & Crutcher LLP, and I am one of the attorneys responsible for the

4 representation of Defendant Sunrise Senior Living, LLC ("SSL") in the above-captioned action.  I

5 submit this declaration in support of Sunrise's Notice of Removal.  The following facts are within my

6 personal knowledge and, if called and sworn as a witness, I would testify competently to them.

7      2.      Plaintiff Audrey Heredia as successor-in-interest to the Estate of Carlos Heredia

8 ("Plaintiff Heredia") and Plaintiff Corbina Mancuso as successor-in-interest to the Estate of Ruby

9 Mancuso ("Plaintiff Mancuso") (collectively "Plaintiffs") filed a putative class action Complaint (the

10 "Complaint") against Sunrise Senior Living, LLC ("SSL") on June 27, 2017, in Alameda County

11 Superior Court, State of California, Case No. RG17865541, captioned *Audrey Heredia as successor-*

12 *in-interest to the Estate of Carlos Heredia; and Corbina Mancuso as successor-in-interest to the*

13 *Estate of Ruby Mancuso; on their own behalves and on behalf of others similarly situated, Plaintiffs*

14 *vs.  Sunrise Senior Living, LLC; and Does 1 Through 100, Defendants* (the "Action").  A true and

15 correct copy of the Complaint is attached hereto as **Exhibit A.**

16      3.      Plaintiffs sought and obtained several extensions of their deadline to serve the

17 Complaint on SSL.  On August 17, 2017, the Alameda County Superior Court granted Plaintiffs'

18 request to extend the service deadline to October 9, 2017.  On October 12, 2017, the Alameda County

19 Superior Court granted Plaintiffs' request to extend the service deadline to November 22, 2017.

20 Finally, on November 17, 2017, the Alameda County Superior Court granted a service extension to

21 January 3, 2018 and indicated that no further extensions would be granted.  On December 5, 2017,

22 the Alameda County Superior Court issued an Order re Case Management scheduling a further Case

23 Management Conference for February 6, 2018.

24      4.      Attached hereto as **Exhibit B** is a true and correct copy of all process, pleadings and

25 orders served upon SSL in connection with the Action.  On January 3, 2018, I executed on behalf of

26 SSL a written acknowledgment of receipt of service of the Complaint and the other materials

27 included in Exhibit B.  Attached hereto as **Exhibit C** is a true and correct copy of that written

28 acknowledgment of receipt of service.

5.      There have been no substantive filings or proceedings in the Action since the Alameda County Superior Court issued its December 5, 2017 Order.  Plaintiffs filed proof of service of the Complaint in Alameda County Superior Court on January 4, 2018.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on January 29, 2018, at San Francisco, California.


By:      _/s/  Rachel S. Brass_____
                  Rachel S. Brass

Gibson, Dunn &
Crutcher LLP

DECLARATION OF RACHEL S. BRASS IN SUPPORT OF DEFENDANT SUNRISE SENIOR LIVING, LLC'S
NOTICE OF REMOVAL

# EXHIBIT A

1   Kathryn A. Stebner, State Bar No. 121088
Kelly Knapp, State Bar No. 252013
2   George Kawamoto, State Bar No. 280358
**STEBNER AND ASSOCIATES**
3   870 Market Street, Suite 1212
San Francisco, CA 94102
4   Tel: (415) 362-9800
Fax: (415) 362-9801

5

6   Christopher J. Healey, State Bar No. 105798
**DENTONS US LLP**
7   600 West Broadway, Suite 2600
San Diego, CA 92101-3372
8   Tel: (619) 235-3491
Fax: (619) 645-5328

9   Robert S. Arns, State Bar No. 65071
Julie C. Erickson, State Bar 293111
10  **THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
11  San Francisco, CA 94105
Tel: (415) 495-7800
12  Fax: (415) 495-7888

13  [Additional Counsel listed on signature page]

14  Attorneys for Plaintiffs and the Proposed Class

15              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16                      **COUNTY OF ALAMEDA**

17

18  Audrey Heredia as successor-in-interest to      CASE NO. RG 17 8 3 5 5 6 1
the Estate of Carlos Heredia; and Corbina
19  Mancuso as successor-in-interest to the          **CLASS ACTION COMPLAINT FOR:**
Estate of Ruby Mancuso; on their own
20  behalves and on behalf of others similarly       1. VIOLATION OF THE CONSUMERS
situated,                                              LEGAL REMEDIES ACT (Civ. Code §
21                                                       1750 *et seq.*)
                    Plaintiffs,                    2. UNLAWFUL, UNFAIR AND
22                                                       FRAUDULENT BUSINESS PRACTICES
    vs.                                                  (B&P Code § 17200 *et seq.*)
23                                                 3. ELDER FINANCIAL ABUSE (W&I Code
    Sunrise Senior Living, LLC; and Does 1            § 15610.30)
24  Through 100,
                                                   **JURY TRIAL DEMANDED**
25                  Defendants.

26

27

28

                                    1
                        CLASS ACTION COMPLAINT

**BY FAX**

## INTRODUCTION

1.       Plaintiff Audrey Heredia as successor-in-interest to the Estate of Carlos Heredia and Plaintiff Corbina Mancuso as successor-in-interest to the Estate of Ruby Mancuso (collectively "Plaintiffs") bring this action for injunctive relief and damages to stop the unlawful and fraudulent practices of Sunrise Senior Living, LLC ("Sunrise" or "Defendant").

2.       Defendant has engaged in a scheme to defraud seniors, persons with disabilities, and their family members at its assisted living facilities in California by falsely representing to all residents in its admission contracts that each resident will be provided the care services (through facility staff) that the resident needs as determined by a resident assessment conducted by facility personnel.  This is false and misleading because Sunrise does not use the results generated by its resident assessment system to determine or provide staffing at its facilities.  Sunrise conceals and fails to disclose that, as a matter of corporate policy, Sunrise sets facility staffing per shift based on pre-determined labor budgets that remain static throughout the year despite any increases in aggregated resident needs as determined by resident assessments.

3.       In its form admission agreements, Sunrise uniformly represents to each new resident that (a) each resident will receive the care that he/she requires; (b) the facility's professional staff will determine the care required for each resident through the resident assessment process; and (c) the amount of care identified in the resident assessment process as needed by the resident will be translated into a "score" and specific "Service Level" for which the resident will be charged on a daily basis.  The reasonable consumer understands these representations to mean that, as a matter of policy and practice, Sunrise will use its resident assessment system to determine and provide staffing levels at its facilities, and accordingly, will provide sufficient staff at each facility to deliver to all facility residents the amount and type of care that Sunrise has identified as necessary based on resident assessments and overall census.

4.       Sunrise's misrepresentations, misleading statements, and omissions about the manner in which its facilities are staffed and the failure to consider the aggregate staffing needs dictated by the comprehensive assessments are material to the reasonable consumer.  Seniors and/or their family members choose an *assisted* living facility based on the expectation that they

1    will receive the quantity and quality of care that they need.  A system or policy that ensures a level

2    of staffing based on the overall needs of residents as quantified through aggregation of current

3    residents' assessment scores is likely to provide such care at the outset and on an ongoing basis.

4    However, Sunrise's system of care is based solely on budget considerations and desired profit

5    margins, which results in pre-determined facility staffing levels that are much lower than

6    necessary to meet the needs identified in residents' assessments.  This system precludes Sunrise

7    from providing all promised care to the residents of its facilities.  It is therefore a matter of

8    fundamental importance to the reasonable consumer that Sunrise does not staff and has no

9    intention of staffing its facilities based on the assessment scores and levels of care that Sunrise has

10   promised to provide and for which it is charging its residents.

11          5.      Through its representations and nondisclosures, Sunrise dupes residents and family

12   members into paying large sums in the form of new resident fees and initial monthly payments.

13   For example, Carlos Heredia was charged a new resident fee (labeled by Sunrise as a "Move-In

14   Fee") of $4,050 prior to his entry to the Sunrise at Tustin facility.

15          6.      Sunrise's failure to use its resident assessment system when it sets and provides

16   facility staffing places all residents at an unnecessary risk of harm.  That risk is particularly acute,

17   given the vulnerable nature of the targeted population of seniors and residents with disabilities.

18          7.      Sunrise's promotion of its system of comprehensive resident assessments and

19   corresponding Service Levels in its form contract and marketing materials contributes to its

20   competitiveness in the marketplace of assisted living facilities and is a factor in its pricing

21   structure.  Its purported use of such a system to accurately assess the needs of residents and

22   provide sufficient staffing to meet those needs enables it to charge more for residency and services

23   at its facilities than it otherwise could.  In effect, residents pay a premium for a system that Sunrise

24   misrepresents will result in comprehensive resident needs assessments and the staff necessary to

25   provide the promised care.

26          8.      If Plaintiffs and the putative class members had known the true facts about

27   Sunrise's corporate policy of ignoring its resident assessment system in determining and providing

28   facility staffing, they would not have agreed to enter Sunrise or paid Sunrise significant amounts

1  of money in new resident fees and monthly charges.  As a result of Sunrise's failure to staff based

2  on resident assessments, the named Plaintiffs and putative class members did not or have not

3  received, and/or are subjected to a substantial risk that they will not receive in the future, the care

4  that Sunrise has promised to provide in its admission contracts.

5        9.    This action seeks to require Sunrise to cease and desist its ongoing violations of

6  law.  In addition, Plaintiffs seek an order requiring Sunrise to disclose to prospective and current

7  residents, their family members, and/or responsible parties that it does not use its resident

8  assessment system or aggregate the results generated by that system in setting and providing

9  staffing at its facilities.  In addition to injunctive relief, this action seeks class wide damages based

10  on Defendant's misrepresentations and misleading statements and material omissions alleged

11  herein.  This action does not seek recovery for personal injuries, emotional distress, or bodily

12  harm that may have been caused by Defendant's conduct alleged herein.

13  <div align="center">**PARTIES**</div>

14  **Plaintiffs**

15        10.    Plaintiff Audrey Heredia is the wife of decedent Carlos Heredia, a resident of

16  Sunrise at Tustin, in Santa Ana, California from June 2014 to April 2015.  She is the successor-in-

17  interest to the Estate of Carlos Heredia pursuant to California Code of Civil Procedure sections

18  77.11 and 377.32.  The appropriate declaration pursuant to section 377.32 is attached hereto as

19  Attachment 1.  At all times relevant to this complaint, Carlos Heredia was an elder as defined

20  under California Welfare & Institutions Code section 15610.27 and a senior citizen as defined

21  under California Civil Code section 1761(f).  Carlos Heredia was at all times herein mentioned a

22  resident of the State of California.  Plaintiff Audrey Heredia brings this action on behalf of

23  decedent Carlos Heredia and all others similarly situated.

24        11.    Plaintiff Corbina Mancuso is a daughter of decedent Ruby Mancuso, a resident of

25  Sunrise of Oakland Hills, in Oakland, California from December 26, 2012 to January 2016.  She is

26  a successor-in-interest to the Estate of Ruby Mancuso pursuant to California Code of Civil

27  Procedure sections 377.11 and 377.32.  The appropriate declaration pursuant to section 377.32 is

28  attached hereto as Attachment 2.  At all times relevant to this complaint, Ruby Mancuso was an

1   elder as defined under California Welfare & Institutions Code section 15610.27 and a senior

2   citizen as defined under California Civil Code section 1761(f). Ruby Mancuso was at all times

3   herein mentioned a resident of the State of California. Plaintiff Corbina Mancuso brings this

4   action on behalf of decedent Ruby Mancuso and all others similarly situated.

5   **Defendant**

6   12.   Defendant Sunrise Senior Living LLC is a Delaware limited liability company with

7   its principal place of business in McClean, Virginia. The residences of its members are unknown.

8   13.   Sunrise owns and operates all of the real estate and buildings, and holds the

9   licenses for approximately 52 assisted living facilities in California under the Sunrise name.

10   14.   The true names and capacities, whether individual, corporate, associate, or

11   otherwise, of the designated herein as Does 1 through 100, inclusive, are presently unknown to

12   Plaintiff and thus sued by such fictitious names. On information and belief, each of the

13   Defendants designated herein as "Doe" is legally responsible for the events and actions alleged

14   herein, and proximately caused or contributed to the injuries and damages as hereinafter described.

15   Plaintiffs will seek leave to amend this Complaint, in order to show the true names and capacities

16   of such parties, when the same has been ascertained.

17   **JURISDICTION AND VENUE**

18   15.   This Court has jurisdiction over all causes of action asserted herein. Defendant has

19   sufficient minimum contacts in California or otherwise intentionally prevails itself of the

20   California market through ownership and management of 52 assisted living facilities located in

21   California, derivation of substantial revenues from California, and other activities, so as to render

22   the exercise of jurisdiction over the Sunrise Defendant by the California courts consistent with

23   traditional notions of fair play and substantial justice.

24   16.   Venue is proper in Alameda County under Code of Civil Procedure section 395(a),

25   Business & Professions Code section 17203 and Civil Code section 1780, based on the facts,

26   without limitation, that: This Court is a court of competent jurisdiction; Defendant's conduct

27   substantial business in this county, including but not limited to the management and ownership of

28   Sunrise of Oakland Hills in Oakland; a portion of Defendant's liability arose in this county; and

1   the acts upon which this action is based occurred in part in this county.

2   <u>**GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**</u>

3       17.    Sunrise provides assisted living and memory care for senior citizens and persons

4   with disabilities at facilities nationwide, including 52 facilities that it owns and/or operates in

5   California.

6       18.    Assisted living facilities, also called Residential Care Facilities for the Elderly

7   ("RCFEs"), offer room, board, and daily assistance for seniors in certain activities of daily living

8   ("ADLs"), such as preparing meals, shopping, transportation, preparing and taking medication,

9   using the telephone, paying bills, housekeeping, and others.

10       19.    Assisted living facilities are intended to provide a level of care appropriate for

11   those who are unable to live by themselves, but who do not have medical conditions requiring

12   more extensive nursing care and significant assistance with most of their ADLs.  Sunrise's assisted

13   living facilities also have Memory Care units, which serve individuals with dementia and other

14   cognitive disorders.

15       20.    In recent years, Sunrise has increasingly been accepting and retaining more

16   residents with conditions and care needs that were once handled almost exclusively in skilled

17   nursing facilities.  Sunrise has acknowledged in public statements:

18
19         What we've seen over the years is that, we've gone from caring for a more
         independent senior who may have needed some assistance with activities of daily
         living (ADLs), to those who have more complex health needs requiring
         coordination of care and services.

20
21         Industry-wide, we are taking care of folks who are frailer, needing more assistance
         with ADLs and chronic disease management, such as diabetes. Also, people are
22         living longer. As the average lifespan has increased, so has the average age of
         Sunrise residents.

23   https://www.sunriseseniorliving.com/blog/december-2016/the-evolution-of-care-in-assisted-

24   living.aspx (last visited April 26, 2017).  Sunrise's practice of accepting and retaining residents

25   with "more complex health needs" has allowed it to increase not only the potential resident pool

26   but also the amounts of money charged to residents and/or their family members.

27       21.    At Sunrise facilities, residents are charged a base rate, which includes room, board,

28   and basic maintenance, cleaning and laundry.  Sunrise assesses each resident before admission and

1   then periodically, including whenever there is a change of the resident's condition. By performing

2   these assessments, Sunrise determines what additional services a resident needs, such as assistance

3   with ADLs. Each additional need correlates to a numerical score and "Service Level," which

4   determines how much more time Sunrise staff must spend caring for the resident. The Service

5   Level also determines the amount charged per-day for fees. Thus, the higher the Service Level

6   assessed the more money Defendant charges the resident.

7                    **Uniform Representations in Sunrise's Standardized Contracts and Other**
                     **Corporate Materials**
8

9        22.    Defendant represents that it will use its resident assessment system to identify the

10   level of care necessary to ensure that residents receive the services they require and to identify the

11   amount Sunrise will charge them for services.

12       23.    Sunrise clearly represents in its standardized contracts that there is a connection

13   between the services they will receive and the level of care assessed as needed in the resident

14   assessment system. At or before the time of move-in, Sunrise requires all residents to sign a

15   "Residency Agreement." Section I.D. of the Residency Agreement describes the Assessment

16   process:

17       The level of assisted living services required by the Resident is determined through
         an assessment ("Assessment") of the Resident. The Assessment is performed by
18       designated team members and includes an evaluation of each Resident's specific
         needs. It covers areas such as: mobility, skin care, eating habits, oral hygiene,
19       continence, cognitive behavior, and medication. This Assessment, along with the
         Physician's Report, provides the basis for identifying the Resident's Service Level.
20

21       24.    Section I.E. describes the "Resident Service Plan" that is developed based

22   on the Assessment. It provides, "The service plan will outline the services the Resident is

23   to receive."

24       25.    Section I.F. provides:

25       If the Resident's condition changes so that the previously assessed level of services
         is no longer appropriate, the Community will reevaluate the Resident's needs to
26       determine which level of service is appropriate and notify the Resident/Responsible
         Party of such reevaluation. The rate charged will vary according to the level of
27       service provided.

28       26.    Section III.F. emphasizes that residents who require more services will be

                                                  7

1   charged higher fees.  "A change in the level of service is <u>not</u> considered a change of fees or

2   charges.  Rather, it is an increase in services which are subject to the higher fees

3   corresponding to those services."

4          27.     The Residency Agreement, on page 18, includes a "Schedule of Community Fees."

5   It lists "Service Level Fees" including "Assisted Living Select," "Assisted Living Plus," "Assisted

6   Living Plus Plus," "Reminiscence Program Fee," "Reminiscence Plus Plus," etc., with

7   corresponding daily rates ranging from $18 to $98.  The same page indicates that residents'

8   assessments result in a numerical value: "Enhanced Care fees are variable, **depending on the**

9   **needs of the resident as determined by the resident's assessment <u>score</u>** [emphasis added]."

10          28.     In the Agreement, Sunrise describes the various service levels, which vary

11   by resident based on the "nature and extent of services provided."   Likewise, the

12   Individualized Service Plan prepared for each resident describes the "level of assistance"

13   required from staff to provide the services Sunrise has determined are necessary to meet

14   the resident's needs.  For example, under the category "Bathing," a service plan might list

15   the following:

16           "Needs step-by-step cuing while bathing, Needs standby assistance while bathing.
      … Be sure bathroom is warmed up prior to shower time, all needed supplies,
17           towels, shampoo, lotions are ready for her. … [O]ffer her privacy but stay stand by
      [sic] to keep her safe and be sure to cue her for full cleaning.  Give simple step by
18           step instruction if she appears confused on the process and assist as needed."

19          29.     The Residency Agreement and Individualized Service Plans highlight the

20   obvious—care can only be provided by people/staff, and the reasonable consumer understands that

21   a resident who has additional needs requires additional staff time.  Thus, a reasonable consumer

22   would interpret Sunrise's promise of increased services as residents' needs increase, and the

23   corresponding increase in fees, to include additional staff time to provide those services. The

24   reasonable consumer would not agree to pay increased fees if she knew that such fees had no

25   relationship to staff time provided.

26          30.     Sunrise's website and a standardized brochure provided to prospective residents

27   explicitly links staffing levels to the assessed needs of its residents.  A brochure states, "We adjust

28   staffing 365 days a year based on the number of residents and the care they need."  The website

1  lists "Frequently Asked Questions", including "What is your staff to resident ratio?

2      A: Our staffing ration is variable and adjusted constantly based on the needs of our
       residents at each community. Every resident's Individualized Service Plan (ISP)
3      outlines the type of care they need, which is delivered by a team of Designated
       Care Managers who also learn each resident's likes, dislikes and preferences,
4      helping to anticipate a resident's needs before they arise. Our residents and their
       care managers build very strong bonds."
5

6  The website further provides, "Team members are available 24-hours a day for help with bathing,

7  dressing, medication reminders, or other daily activities, relieving residents of the stress of day-to-

8  day chores and giving them more time to focus on choosing activities to participate in, meal

9  selection, and more."

10     31.    In another standardized brochure entitled, "Senior Living: A Resource Guide," that

11 is provided to prospective residents, Sunrise lists "important questions" that a prospective residents

12 should ask "when researching and visiting senior living communities." The list of questions

13 includes, "How does the community meet residents' needs as they change over time? Is staffing

14 adjusted to ensure that quality of care remains consistent through such changes?"

15     32.    A reasonable consumer would infer from all of Defendant's representations that

16 Sunrise would consider the resident assessment system in setting staffing levels. Sunrise's clear

17 message to the consuming public, including Plaintiff and the putative class, through all of its

18 corporate materials is that staffing levels matter and are part of the value they will receive in

19 exchange for their fees at Sunrise facilities.

20     33.    Because these representations are presented through form contracts and other

21 standardized corporate materials, potential and current residents of Sunrise facilities reasonably

22 understand them to be representations of the policies and procedures followed by Sunrise both for

23 determining the needs of facility residents and for setting staffing levels at each of its California

24 facilities.

25     34.    Based on these representations, Plaintiffs, the putative class members, and the

26 general consuming public reasonably expect that Sunrise uses its resident assessment system to

27 ensure adequate staffing and meet all current residents' needs.

28

**Sunrise's Non-Disclosure and Concealment**

36.     Contrary to the express and implied representations in the Sunrise standardized contract and other uniform written statements, Sunrise does not use the resident assessment system or consider assessment scores in setting or providing facility staffing.  Sunrise conceals this material fact from the residents, their family members, and the general public.

37.     Plaintiffs are informed and believe, and on that basis allege, that Sunrise has the capability to determine the facility staffing levels required to meet the aggregate care scores promised to residents.  With its resident assessment system, Sunrise can calculate the amount and type of staff needed by a facility for the population or group of residents therein viewed as a whole on any given shift based on the evaluated needs and assessed scores of residents.  However, in reality Defendant only uses this resident assessment system to assign Service Levels and charge the corresponding daily rates; it does not use the resident assessment system to set staffing at its facilities.

38.     As reflected in corporate policies and procedures, Sunrise directs its facilities to make meeting labor budgets and operating income targets a paramount concern, regardless of the impact on the care and staffing needs of facility residents.

39.     Sunrises' Executive Directors ("EDs") must adhere to pre-determined budgets – including labor budgets – approved by corporate headquarters for the next fiscal year.  Regardless of changes of needs in the resident population, EDs of Sunrise may not increase these budgets without approval from corporate headquarters.  The ED Job Description states that EDs should "meet[] financial targets with the goal to maximize the owners return," "prepare and adhere to the community's budget," and "manage[] labor and other operating costs in line with budget and revenue."  Sunrise's Assisted Living Coordinators are responsible for "maintain[ing] budgetary guidelines for daily staffing hours and supplies."

40.     As a result of Sunrise's failure to use its resident assessment system and Service Levels in setting staffing at its facilities, staffing is substantially lower than what Sunrise itself has determined is necessary to meet the assessed needs of residents.  Further, because Sunrise's failure to use its residential assessment system for staffing decisions results in lower staffing levels than it

1   has determined are necessary, the residents of Sunrise's facilities run the continuing risk of not

2   having their care needs met and of suffering injury from the lack of care or from other residents

3   who are insufficiently supervised or cared for.

4       41.     The consequences of Sunrise's common policy and standard operating procedure of

5   providing staffing without regard to the assessment scores or Service Levels of its current

6   residents are significant.  They include, but are not limited to: resident falls, injured or sick

7   residents left unattended, elopements, urinary tract infections, slow or no responses to resident call

8   buttons, inconsistent incontinence care resulting in residents sitting in soiled and/or wet briefs for

9   long periods of time, failures to assist with toileting resulting in incontinence, decubitus ulcers,

10  medication errors, and inadequate grooming and hygiene assistance.

11                      **The Misrepresented and Concealed Facts Are Material**

12      42.     Defendant's misrepresentations and the facts it conceals are material to the

13  reasonable consumer.  An important and significant factor in choosing to move oneself or one's

14  relative to a Sunrise facility is the provision of staffing that the facility itself has determined is

15  necessary to meet the assessed needs of all facility residents.  The use of a system that determines

16  and assigns the staffing necessary for a facility based on comprehensive assessments of its

17  residents' care needs, such as the one Sunrise represented it uses, is likely to ensure that those

18  needs are met and will be met in the future.

19      43.     Sunrise's promise to provide the care services (through facility staff) that each

20  resident requires as calculated by the resident assessments conducted by Sunrise is material to

21  prospective residents and their family members.  Further, residents (and their family members)

22  reasonably expect that Sunrise will provide staffing at levels sufficient to meet the assessed needs

23  of facility residents.  Staffing at levels sufficient to provide the care necessary to meet assessed

24  resident needs is a substantial factor (and indeed often the most important factor) in deciding to

25  enter an assisted living facility.  Plaintiffs would not have admitted their family members to

26  Sunrise if they had known that Defendant did not and does not use its resident assessment system

27  and the assessed Service Levels in setting staffing levels at its facilities.   Likewise, members of

28  the putative class would in all reasonable probability not have entered Sunrise's facilities if they

1  had known that Sunrise did not and does not use its resident assessment system and the Service

2  levels generated by it when determining the amount and type of staff at its facilities.

3      44.     This is true even for residents who currently are practically independent. These

4  residents choose an assisted living facility as opposed to remaining at home or moving into an

5  independent living community because they wish to "age in place." Sunrise specifically markets

6  to those individuals on its website by stating it has a "philosophy to encourage residents' ability to

7  age in place." https://www.sunriseseniorliving.com/care-and-services/memory-care/sunrise-

8  reminiscence-program/terrace-club.aspx (last visited on February 14, 2017). Residents who wish

9  to "age in place" may not need significant assistance with their activities of daily living initially

10  upon admission, but they expect to (and will) become more dependent as they age and do not want

11  to move yet again when that happens.

12      45.     A key factor for these residents in selecting Sunrise is that the facility will provide

13  the staffing sufficient to provide the care services that Sunrise itself has determined are necessary

14  to meet assessed residents' needs, both now and as those needs, and corresponding care services

15  fees, increase.

16      46.     Sunrise has a duty to disclose to the consuming public that it does not use its

17  resident assessment system or the Service Levels generated by it to set aggregate staffing levels

18  because of, among other things, the inherent and substantial safety risk to current and future

19  residents from Sunrise's conduct, particularly as Defendant serves a vulnerable population that

20  needs assistance. The non-disclosure is material because Sunrise knows that its conduct risks the

21  safety of its residents. Yet, Sunrise has failed to disclose and actively conceals from residents,

22  prospective residents, and their family members the true facts about how it sets staffing at its

23  facilities.

24              **Barriers to Moving Out**

25      47.     Defendant's misrepresentations affect not only the decision of residents to enter a

26  Sunrise facility, but also the decision to stay there.

27      48.     In choosing assisted living in general and a Sunrise facility in particular, the

28  resident forgoes other options such as his or her former home, a senior community, or other

1  facilities where the resident can try to build a new community.  Once in a facility, there are

2  significant physical, emotional and other burdens for the residents that are triggered if they

3  terminate residency, including impacts such as "transfer trauma."  Sunrise is aware of these

4  burdens, and makes the representations described herein with the knowledge that it will be

5  difficult for residents to leave its facilities once they are enticed to enter based on its

6  misrepresentations.

7       49.  Sunrise also repeats its misrepresentations when it conducts periodic re-

8  assessments of residents.  Often, the facility discovers additional care services needed by the

9  resident that Sunrise uses as a basis for a Service Fee increase.

10       50.  Sunrise thereby unjustly continues to profit from the original fraud by perpetuating

11  its misrepresentations and failures to disclose.

12  **Named Plaintiffs' Experiences At Sunrise Facilities**

13  **Carlos Heredia**

14       51.  Carlos Heredia ("Mr. Heredia") lived at Sunrise at Tustin in Santa Ana, California

15  from June 18, 2014 to April 18, 2015.  He died on March 16, 2016.  Plaintiff Audrey Heredia

16  ("Mrs. Heredia") is his surviving wife.  Their daughter, Vivian Heredia ("Vivian"), made health

17  care decisions for Mr. Heredia.  Three weeks before he moved into Sunrise at Tustin, Mr. Heredia

18  moved from his home into another assisted living facility that was not part of the Sunrise chain.

19  During those three weeks, he fell twice.  Vivian believed that he fell because there were not

20  enough staff to help him and that he needed to move immediately to another facility that was

21  better staffed.  They visited Sunrise at Tustin and spoke to the Executive Director.  The Executive

22  Director assured the Heredias that Sunrise at Tustin was staffed appropriately, they would provide

23  Mr. Heredia with individualized care, and his needs would be met.

24       52.  In addition, Sunrise provided Mrs. Heredia and Vivian with the standard contract

25  quoted in detail, *supra,* in paragraphs 24-29.  In short, the contract promised that staff would

26  provide an assessment of Mr. Heredia that would be used to develop a service plan and identify

27  his specific needs.   It promised to provide the services outlined in the service plan.  It also stated

28  that the assessment would be used to identify Mr. Heredia's service level, and that "[t]he rate

1  charged will vary according to the level of service provided." It explained that a change of level is

2  an increase in services "which are subject to the higher fees corresponding to those services."

3  Exhibit 1 of the contract provided that Mr. Heredia's service level was "Enhanced Care" and that

4  he would be charged $77 a day for this level of care, in addition to "Base Fees," "Medication

5  Management" fees, and "Pendant" fees, for a total of $236 a day.

6      53.    Mrs. Heredia and Vivian reviewed the contract and reasonably understood its

7  representations regarding the assessment, service level, service plan, and fee structure to mean that

8  staff would assess Mr. Heredia, identify his needs, and provide the services necessary to meet his

9  needs. They further reasonably understood that as Mr. Heredia's needs and services increased, he

10  would require more staff time, and that Sunrise would provide the increased staff time in exchange

11  for more fees.

12      54.    In reliance on all of Sunrise's representations, Mrs. Heredia entered the Tustin

13  facility on June 18, 2014 and signed a Sunrise admission contract. Mr. Heredia paid a "Move-in

14  Fee" of $4,050.

15      55.    Approximately six weeks later, the Heredias began noticing problems related to

16  understaffing. Vivian asked staff if they could occasionally take her father to the courtyard for

17  some fresh air, but they refused stating there were not enough staff available to do that. Vivian

18  was disturbed when she heard another resident yelling for help over and over for approximately 15

19  to 20 minutes. At the end of July 2014, Mr. Heredia fell, and received stitches in his face, after

20  staff did not respond to his call-pendant and he was forced to transfer alone from his bed to his

21  wheelchair. In October 2014, Vivian noticed that staff was not taking Mr. Heredia's blood

22  pressure as frequently as Sunrise had represented they would do and as ordered by Mr. Heredia's

23  physician; Vivian eventually had to hire an outside provider to deliver this service. Mr. Heredia

24  often complained to Vivian that staff was not responding when he called them for help getting to

25  the toilet, which made him so uncomfortable that his physical therapist recommended that he keep

26  a trash can next to his bed for urinating. Vivian also personally observed that staff did not always

27  respond to his call-pendant, on one occasion for up to two hours, requiring Vivian to leave the

28  room and find staff herself. Mr. Heredia fell approximately six times or more because he tried

1   ambulating unassisted when staff did not timely respond to his calls.

2       56.    In January 2015, Sunrise sent Mrs. Heredia a "Service & Health Update" that gave

3   Mr. Heredia a total of 12 Service Points, and placed him in the "Assisted Living Enhanced" level

4   of care.

5       57.    On February 19, 2015, Sunrise increased Mr. Heredia's service points from 12 to

6   15 and his service fees from $77 a day to $99.  A Service Health Update dated April 5, 2015

7   delineating the 15 points showed that Sunrise had doubled his service points from 1 to 2 points

8   each for mobility, grooming, and assistance to the bathroom because he required "significantly

9   more time" for each task.  Despite the increase in points and related fees, Mr. Heredia did not

10  receive increased attention from staff.

11      58.    Whenever Vivian approached management and other staff members because her

12  father was not receiving the care for which he was being charged, they would reassure Vivian that

13  her concerns would be addressed and her father's needs would be met.  Sunrise never disclosed to

14  the Heredias that its Service Level system was not supported by sufficient numbers of staff and

15  was geared only toward increasing revenue.

16      59.    In April 2015, Mr. Heredia nearly died from a medication error, which often occurs

17  at facilities that are understaffed.  He suffered from an overdose after he received prescription

18  opiates that were not prescribed to him.  Vivian moved her father out of Sunrise immediately after

19  the overdose.

20  **Ruby Mancuso**

21      60.    Ruby Mancuso ("Ms. Mancuso") lived at Sunrise of Oakland Hills, in Oakland,

22  California from December 26, 2012 to January 2016.  She died on April 30, 2016, in another

23  facility.  Her daughter, Corbina Mancuso made healthcare decisions for her mother and chose

24  Sunrise of Oakland Hills over other facilities after touring the facility and meeting with the

25  marketing staff who promised her that her mother's needs would be met.    On December 13,

26  2012, Ms. Mancuso paid a Move-In Fee of $4,000 to hold her space at the facility.

27      61.    Prior to move-in, the Executive Director of the facility provided Corbina with the

28  standard contract quoted in detail, *supra,* in paragraphs 24-29.  In short, the contract promised that

1    staff would provide an assessment of Ms. Mancuso that would be used to develop a service plan

2    and identify her specific needs.  The contract included Sunrise's promise to provide the services

3    outlined in the service plan.  The contract also stated that the assessment would be used to identify

4    Ms. Mancuso's service level, and that "[t]he rate charged will vary according to the level of

5    service provided."  It explained that a change of level is an increase in services "which are subject

6    to the higher fees corresponding to those services."  Exhibit 1 to the contract provided that Ms.

7    Mancuso's  medication management level was "Level 2" and that she would be charged $18 a day

8    for this service, in addition to "Base Fees," for a total of $97 a day, plus the Move-In Fee of

9    $4,000.  Later in Ms. Mancuso's residency, she was also charged for "Service Level Fees."

10          62.    Corbina reviewed all of the representations in the contract.  She reasonably

11   understood that as her mother's care needs increased, Sunrise staff would perform an assessment

12   to determine what level of care Ms. Mancuso would receive, and that staff would provide the level

13   of care they assessed as needed.  She understood that Ms. Mancuso would pay more as her level of

14   care and need for staff time increased.  She also reasonably understood that Sunrise would provide

15   enough staff to deliver the services for which she would be charged. Corbina relied on all of

16   Sunrise's representations when she moved her mother into the facility on December 26, 2012.

17          63.    Towards the end of 2013, Ms. Mancuso's needs for assisted living services began

18   to increase.  Beginning in January 2014, Sunrise sent Corbina several "Service and Health

19   Update" forms stating she would be charged Service Level Fees.  The forms represented that Ms.

20   Mancuso would receive standby assistance for mobility and dressing, scored as a total of two

21   service points, and placed her in the "Assisted Living Select Program – Daily."  Sunrise charged

22   her $19 a day for this service level, on top of base fees of $86 a day and medication service fees of

23   $18 a day.  During the first half of 2014, Corbina did not notice any problems with Sunrise's

24   delivery of the specific services it promised in the Service and Health Updates.

25          64.    Over time, Corbina began to notice that the facility was understaffed and not

26   providing promised care.  When Corbina notified the Executive Director of her concerns, Corbina

27   was told in an email that all residents "are well care for and feel safe in our community."  But the

28   staffing conditions did not improve and, on one occasion, another resident physically struck Ms.

1  Mancuso during an unsupervised bridge game in the common area.  Corbina also noticed that

2  residents spent most afternoons watching television or sitting idle because there were no activities,

3  or when there were activities, there was not enough staff to encourage and escort each resident to

4  join them.

5       65.    Further, the facility provided conflicting communications regarding Ms.

6  Mancuso's services.  In December 2014, Sunrise sent Corbina a Service and Health Update stating

7  that Ms. Mancuso was now independent for dressing and mobility, which was not true, gave her

8  no Service Points, and stated the Service Level was "N/A."  A Service and Health Update dated

9  January 2015 again misstated that she was independent for dressing, but required reminders for

10  mobility, gave her no Service Points, and again stated her Service Level was "N/A."  Nonetheless,

11  beginning in November 2014, Sunrise increased her Service Level to "Assisted Living Plus" and

12  service fees to $38 a day.  Sunrise did not send Corbina any more Service Health Updates, but did

13  send her an Individualized Service Plan dated April 3, 2015.  The Individualized Service Plan

14  represented that Sunrise would provide staffing assistance with mobility, grooming, bathing,

15  assistance to the bathroom, and dressing.  For example, the Plan stated Sunrise would "provide

16  assistance of 1 team member to promote dignity and safety" with bathing.

17       66.    By 2015, it was clear to Corbina that Sunrise only inconsistently and sporadically

18  provided the services it promised in the Service and Health Updates and the Individualized Service

19  Plan.  Staff did not consistently help Ms. Mancuso get dressed.  On one occasion that year,

20  Corbina left her mom alone in bed in the evening fully dressed only to find her still fully dressed

21  in the same clothes in the early morning.  Ms. Mancuso reported several times to Corbina that staff

22  was not helping her get dressed.  Also during that year, Corbina pushed her mother's call-pendant

23  for help with dressing her mother, waited at least 15 minutes without a response, pushed the

24  pendant again and waited 30 minutes more, before eventually going out into the hallway to find

25  someone.  On other occasions, staff was too busy to notice when Ms. Mancuso had lost her glasses

26  and hearing aid – Corbina was the first to notice after Ms. Mancuso had been without them well

27  into the day.  A few times Corbina discovered that staff and her mother had lost her walker even

28  though her Individualized Service Plan stated, "Ruby uses a walker for support, and will need

1  reminding to use it at all times, especially if she's outside her room." Ms. Mancuso fell at least

2  once in the dining room when she should have been assisted by staff.

3      67.    In 2015, Corbina noticed other residents who were not receiving help from staff.

4  She saw a man fall out of his wheelchair onto the floor. She pushed the call button for help from

5  staff, and no one responded. She attempted to help the man off the floor, but was unable to lift

6  him. She went looking for a staff member, and the only caregiver she could find would not help

7  because she was "on break." The man was left on the floor unattended for at least 20 to 30

8  minutes before a caregiver came to help him. On other occasions, she heard residents calling from

9  their rooms for help and did not see any staff responding.

10      68.    Although Corbina was concerned about inadequate staffing, she did not want to

11  move her mother to another assisted living facility because she was afraid that such a move could

12  result in further decline of her mother's health. She was also afraid that complaining too much

13  about problems at Sunrise could result in retaliation or poor treatment of her mother. Any time

14  that she did complain, Sunrise staff reassured that all problems would be addressed. Sunrise never

15  disclosed to Corbina that staffing levels were not determined by resident assessments, Service

16  levels, or Service points. She had no way of discovering that Sunrise set staffing levels based on

17  fixed labor budgets.

18      69.    In approximately January 2016, Sunrise told Corbina that her mother could only

19  stay in the facility if she moved into the Memory Care unit at considerably more expense.

20  Sunrise's only justification for this move was that Ms. Mancuso was going into other residents'

21  rooms uninvited. Sunrise did not have enough staff to try any interventions short of requiring her

22  to move to Memory Care. Corbina did not believe Memory Care was necessary but was

23  eventually forced to move her mother to a different skilled nursing facility.

24                        **CLASS ALLEGATIONS**

25      70.    The Named Plaintiff brings this action as a class action pursuant to Cal. Code of

26  Civ. Proc. section 382 as set forth below.

27      71.    **Class Definition.** This action is brought on behalf of the Named Plaintiffs and all

28  similarly situated persons who resided or reside at one of the California assisted living facilities

1    owned and/or operated by Sunrise under the Sunrise name from June 27, 2013 through the present

2    (the "Class Period"), and who contracted with Sunrise for services for which Sunrise was paid

3    money.

4        72.    Excluded from the above-referenced class are the officers, directors, and employees

5    of Defendant, and any of Defendant's shareholders or other persons who hold a financial interest

6    in Defendant.  Also excluded is any judge assigned to hear this case (or any spouse or family

7    member of any assigned judge) or any juror selected to hear this case.

8        73.    This action is brought as a class action and may properly be so maintained pursuant

9    to Cal. Code of Civ. Proc section 382 and applicable case law.  In addition to injunctive relief, this

10   action seeks class wide damages based on Defendant's misrepresentations and misleading

11   statements and material omissions alleged herein.  This action does not seek recovery for personal

12   injuries, emotional distress, or bodily harm that may have been caused by Defendant's conduct

13   alleged herein.

14       74.    **Ascertainability.**  Members of the class are identifiable and ascertainable.

15   Defendant retains admissions contracts, Resident Services Plans, and billing statements for all

16   persons who currently reside or resided at Sunrise facilities during the class period.  Thus,

17   Defendant's own records will reliably identify class members.

18       75.    **Impracticability of Joinder (Numerosity of the Class).**  Members of the class are

19   so numerous that their individual joinder herein is impracticable.  The precise number of members

20   of the class and their addresses are presently unknown to Plaintiffs.  Defendant currently owns

21   and/or operates approximately 52 assisted living facilities in California.  The precise number of

22   persons in the class and their identities and addresses may be ascertained from Defendant's

23   records.

24       76.    **Questions of Fact and Law Common to the Class.**  Numerous important

25   common questions of law and fact exist as to all members of the class and predominate over the

26   questions affecting only individual members of the class.  These common legal and factual

27   questions include without limitation:

28               (a)    whether Defendant has violated and continues to violate the Consumer

1  Legal Remedies Act, California Civil Code section 1770 et seq. by falsely representing that

2  Sunrise uses its resident assessment system and the Service Levels generated by it to determine

3  and provide staffing at its California assisted living facilities, when, in fact, Defendant does not

4  and has no intention to do so;

5          (b)    whether Defendant has violated and continues to violate the Consumer

6  Legal Remedies Act, California Civil Code section 1770 et seq. by promising residents that it will

7  provide care and services when Defendant knows that its standard operating procedure and

8  corporate policy of providing pre-determined staffing at its facilities, without regard to the

9  resident assessment system and Service Levels, precludes it from providing its residents all of the

10  care they have been promised and places all residents at an inherent and substantial risk that they

11  will not receive the services they have paid for on any given day;

12          (c)    whether Defendant's misrepresentations, misleading statements and

13  omissions regarding the staffing of its facilities as alleged herein were and are material to the

14  reasonable consumer;

15          (d)    whether a reasonable consumer would be likely to be deceived by

16  Defendant's misrepresentations, misleading statements, or material omissions;

17          (e)    whether by making the misrepresentations, misleading statements, and

18  material omissions alleged in this Complaint, Defendant has violated and continues to violate the

19  Consumer Legal Remedies Act;

20          (f)    whether by making the misrepresentations, misleading statements, and

21  material omissions alleged in this Complaint Defendant violated and continues to violate

22  California Business & Professions Code section 17200, et seq. ("UCL");

23          (g)    whether Defendant had exclusive knowledge of material facts not known or

24  reasonably accessible to the Plaintiffs and the class;

25          (h)    whether the Plaintiffs, the class, and the consuming public were likely to be

26  deceived by the foregoing concealment and omission;

27          (i)    whether the Plaintiffs, the class, and the consuming public have a

28  reasonable expectation that Defendant will use its resident assessment system to determine and

provide staffing at its facilities;

        (j)    whether the Plaintiffs, the Class, and the consuming public have a reasonable expectation that Defendant will provide staffing at its facilities to meet the aggregate care needs of the residents in its facilities as determined by Defendant's resident assessment system;

        (k)    whether Defendant's misrepresentations, its misleading statements, its failures to disclose, and its concealment of its true policies, procedures and practices regarding how its staffs its facilities violated the CLRA and the UCL;

        (l)    whether Defendant has engaged and continues to engage in a pattern and practice of unfair and deceptive conduct in connection with the management, administration, and operation of its California assisted living and memory care facilities;

        (m)    whether Defendant has violated and continues to violate the UCL by violating the CLRA and California W&I Code section 15610.30 during the Class Period;

        (n)    whether Defendant has committed financial elder abuse under California W&I Code section 15610.30 by taking, secreting, appropriating, obtaining, and/or retaining money from elders and dependent adults for a wrongful use and/or with the intent to defraud them;

        (o)    whether Plaintiffs and the members of the Class have sustained injury;

        (p)    whether Plaintiffs and the members of the Class are entitled to damages, and the nature of such damages; and,

        (q)    whether Plaintiffs and the members of the Class are entitled to restitution, declaratory and injunctive relief and/or other relief, and the nature of such relief.

    86.    **Typicality.**  The claims of the Named Plaintiffs are typical of the claims of the Class.  As alleged above, Defendant misrepresented to Plaintiffs and the class members and/or their family members that Defendant uses its resident assessment system to determine the care services to be provided by facility staff and to assess and bill residents for corresponding Service Levels.  The resident assessment system, and the Service Levels generated by it,  allow Defendant to determine and provide the aggregate staffing Defendant has determined is necessary to meet

the assessed needs of its residents, but in fact, Defendant does not use this critical information in budgeting for or scheduling staff at its California facilities. Rather, Defendant has a policy of fixed staffing, regardless of the results generated by its resident assessment system, which results in residents not receiving all of the care they have paid for and/or being subjected to the inherent risk that, on any given day, facility staffing will be insufficient to provide the promised care for all residents. Further, as alleged above, Defendant has failed to disclose and concealed this material fact from the Named Plaintiffs and the class. Plaintiffs' claims are typical of the claims of the proposed class in the following ways: 1) Plaintiffs are members of the proposed class; 2) Plaintiffs' claims arise from the same uniform corporate policies, procedures, practices, and course of conduct on the part of Defendant; 3) Plaintiffs' claims are based on the same legal and remedial theories as those of the proposed class and involve similar factual circumstances; 4) the injuries suffered by the Named Plaintiffs are similar to the injuries suffered by the proposed class members; and 5) Plaintiffs seek a common form of relief for themselves and the members of the class.

87. **Adequacy**. The Named Plaintiffs are adequate representatives of the class on whose behalf this action is prosecuted. Their interests do not conflict with the interests of the class. Also, they have retained competent counsel with extensive experience in class action and senior care litigation who will prosecute this action vigorously.

88. **Predominance**. With respect to Plaintiffs' claims under the CLRA, the UCL, and the Elder Abuse Act, class certification is appropriate because significant questions of law or fact common to class members, including but not limited to those set forth above, predominate over any questions affecting only individual members of the proposed class.

89. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

(a) individual claims by the class members would be impracticable because the costs of pursuing such claims would far exceed what any individual class member has at stake;

(b) relatively little individual litigation has been commenced over the controversies alleged in this Complaint and individual class members are unlikely to have an

1    interest in separately prosecuting and controlling individual actions;

2          (c)     the concentration of litigation of these claims in one forum will achieve

3    efficiency and promote judicial economy;

4          (d)     the proposed class is manageable, and no difficulties are likely to be

5    encountered in the management of this class action that would preclude its maintenance as a class

6    action;

7          (e)     the proposed class members are readily identifiable from Defendant's own

8    records; and,

9          (f)     prosecution of separate actions by individual members of the proposed class

10    would create the risk of inconsistent or varying adjudications with respect to individual members

11    of the proposed class that would establish incompatible standards of conduct for Defendant.

12       90.     Without a class action, Defendant will likely retain the benefit of its wrongdoing

13    and will continue in its illegal course of conduct which will result in further damages to Plaintiffs

14    and the proposed class.

15 <div align="center">**FIRST CLAIM**</div>

16 <div align="center">**CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (Cal. Civ. Code § 1750 *et seq.*)**</div>

17       91.     Plaintiffs refer to, and incorporate herein by reference, all preceding paragraphs.

18       92.     Plaintiffs and the class members are "senior citizens" and/or "disabled persons" as

19    defined in California Civil Code sections 1761(f) and (g).  They are also "consumers" as defined

20    in California Civil Code section 1761(d).

21       93.     Defendant is a "person" as defined under California Civil Code section 1761(c).

22    The assisted living and memory care services provided by Defendant constitute "services" under

23    California Civil Code section 1761(b).  The agreement by Plaintiffs and the putative class

24    members to provide new resident services fees and monthly payments to Defendant in exchange

25    for assisted living and memory care services constitute a "transaction" under California Civil Code

26    section 1761(e).

27       94.     In its uniform resident contracts presented to prospective residents and their family

28    members, Defendant represented and continues to represent that Sunrise will provide care services

<div align="center">23</div>

1   (through its facility staff) that are sufficient to meet the needs of each resident, as determined by

2   Sunrise's resident assessment system and confirmed in the Service Levels assigned to each

3   resident. That same representation is made in Sunrise's Individualized Service Plans for residents

4   and other standardized corporate materials.  As alleged herein, these uniform corporate

5   representations are false and misleading, and are likely to deceive the reasonable consumer.

6       95.     Contrary to Sunrise's uniform misrepresentations and misleading statements,

7   Sunrise does not use its resident assessment system and Service Levels generated by it in setting

8   staffing levels necessary to provide the services to residents it assessed as required, but instead

9   uses predetermined labor budgets designed to meet corporate profit goals. Sunrise facilities use a

10  predetermined staffing schedule that rarely, if ever, changes, despite changes in the assessment

11  scores or Service Levels of the current residents.  Sunrise does not disclose and actively conceals

12  this corporate policy and practice from current and prospective residents and their family

13  members.

14      96.     The named Plaintiffs, through their legal representatives and power of attorneys,

15  and the putative class members considered material Sunrise's promise to provide care services

16  (through its facility staff) that would be sufficient to meet the needs of each resident, as

17  determined by Sunrise's resident assessment system.  If the named Plaintiffs and their

18  representatives had known the true facts, they would not have agreed to place them in a Sunrise

19  facility.  If the putative class members had known the true facts, they would in all reasonable

20  probability not have agreed to enter Sunrise.

21      97.     The facts that Sunrise misrepresents, fails to disclose and actively conceals are

22  material and are likely to deceive the reasonable consumer.  Consumers choose an assisted living

23  facility because they need care and/or wish to age in place as their care needs change.  Residents

24  and their family members consider the overall staffing levels provided by the assisted living

25  facility they select to be of great importance. The use of a system such as the one Sunrise

26  represents it uses, which ensures adequate staffing at the facilities by basing staffing decisions on

27  resident assessments and personal care needs, is also, therefore, of great importance to residents

28  and their family members and is a material factor in their decision to choose Sunrise and to pay

1  Sunrise the amounts of money that it charges for occupancy and services.

2  98.  Residents and their family members would consider material Defendant's uniform

3  corporate policy and practice of not using its resident assessment system and Service Levels

4  generated by it to set and staff its facilities.  They would consider material Defendant's policy and

5  practice of maintaining predetermined staffing schedules regardless of increases in the assessed

6  needs and corresponding Service Levels assigned to current residents.  Plaintiffs and the putative

7  class members could not reasonably have been expected to learn or discover these non-disclosed

8  facts, and in fact, Sunrise affirmatively concealed them.

9  99.  Sunrise has violated and continues to violate the Consumers Legal Remedies Act,

10  California Civil Code section 1750 *et seq.* ("CLRA") in at least the following respects: (a) in

11  violation of section 1770(a)(5), Sunrise has misrepresented, failed to disclose and concealed the

12  true characteristics and/or quantities of services provided at its California facilities; (b) in violation

13  of section 1770(a)(7), Defendant has misrepresented, failed to disclose and concealed the true

14  standard, quality and/or grade of services provided at its California facilities; (c) in violation of

15  section 1770(a)(9), Defendant has falsely advertised that it will provide staffing based on resident

16  assessments and the Service Levels generated by those assessments, knowing that it does not

17  intend to provide the services as advertised; and (d) in violation of section 1770(a)(14), Defendant

18  has represented that the agreement signed by residents and/or their representatives, and under

19  which they pay their monthly rate, confers on residents the right to reside in a facility that provides

20  staffing based on the level of care its own resident assessment system has determined is necessary

21  to provide the services each resident needs and for which residents are charged, when in fact,

22  Defendant does not use its resident assessment system and related Service Levels when

23  determining and providing facility staffing.

24  100.  These misrepresentations, misleading statements, acts, practices, and omissions by

25  Defendant are and were intended to induce and lure elderly and dependent adult residents and their

26  family members into agreeing to be admitted to Defendant's facilities and to pay new resident

27  services fees and monthly rates based on Defendant's resident assessment system and assessed

28  Service Levels.

101.    Defendant made the written misrepresentations and misleading statements alleged herein through various uniform means of communication, including without limitation, the admission agreement, service and health updates, individualized service plans, standardized corporate marketing and promotional materials, and other written corporate materials disseminated to the public in connection with Defendant's services.  These representations were made directly to the named Plaintiffs, putative class members and their family members and/or representatives by Sunrise in its standard resident admission contract and reinforced by the uniform means of communication listed above.

102.    In addition to its affirmative misrepresentations,  Defendant failed to disclose and concealed from Plaintiffs, the putative class members, and their family members that it does not use its resident assessment system to determine or provide facility staffing at levels sufficient to meet the assessed care needs of facility residents, but instead maintains predetermined levels of staffing, regardless of changes in the aggregate assessment scores or Service Levels of the facility residents and regardless of whether the residents' assessed care needs are being met.

103.    Sunrise had exclusive and superior knowledge of material facts not known to the named Plaintiffs, class members, or the general public at the time of the subject transactions and actively concealed these material facts.

104.    Sunrise had exclusive and superior knowledge of its corporate policy and practice of ignoring its resident assessment system and related Service Levels in setting staffing levels. Sunrise knew that its failure to provide staffing based on the levels of care that Sunrise had itself determined was necessary to provide the services for which it charged its residents posed a substantial health and safety risk to the named Plaintiffs and class members.  Sunrise intentionally concealed, suppressed, and/or failed to disclose the true facts with the intent to defraud the named Plaintiffs and putative class members. The named Plaintiffs and the putative class members did not know these material undisclosed facts and could not reasonably have been expected to discover them.

105.    As a direct and proximate result of the Defendant's conduct, Plaintiffs and the putative class members suffered actual damages.  Specifically, Plaintiffs and the class members

1  paid money to Defendant, in the form of the new resident fee (called a "Move-In Fee"), their

2  initial monthly fees, and additional monthly fees, paid in exchange for residency and services in a

3  facility that was falsely represented to be staffed based on Sunrise's residential assessment and

4  care level system.  Plaintiffs and the class members paid a premium for the misrepresented

5  services, and would not have entered Sunrise's facilities and made payments to Sunrise had they

6  known the truth about Sunrise's policies and practices for staffing its assisted living facilities.

7  Members of the class continue to pay monthly fees based on their assessed Service Levels.

8       106.   As a further direct and proximate result of Defendant's failure to staff its facilities

9  as represented, *i.e.* based on residents' needs as determined through its comprehensive

10  assessments, Plaintiffs and the class members have been forced to reside in facilities that have less

11  staff than necessary to satisfy their care needs, as determined by Sunrise itself. As a result of

12  Sunrise's policy of staffing its facilities according to pre-determined labor budgets which do not

13  permit staffing increases, regardless of increases in the overall care needs and assessed points of

14  current residents, it is not possible for the needs of all residents to be met, and there is a substantial

15  likelihood that each resident, at any time, will not receive the care Sunrise has determined

16  necessary and promised to provide. Plaintiffs and the class members also face the substantial risk

17  that they will suffer physical injuries from such lack of care and/or from other residents who are

18  insufficiently supervised or cared for.

19       107.   Sunrise's conduct presents a continuing threat of substantial harm to the public in

20  that, among other things, Sunrise continues to misrepresent how it uses its resident assessment

21  system and how it determines and provides staffing at its facilities.  Despite the knowledge that

22  Sunrise does not staff its facilities based on the resident assessments and assessed Service Levels,

23  Defendant continues to induce elderly and vulnerable citizens to enter its facilities. Additionally,

24  the risk of harm to the class members from Defendant's conduct is substantial.  Accordingly,

25  Plaintiffs seek an injunction that requires that Defendant immediately cease the CLRA violations

26  alleged herein, and to enjoin it from continuing to engage in any such acts or practices in the

27  future.  Additionally, Plaintiffs seek an injunction requiring Defendant to disclose to Plaintiffs, the

28  putative class members, and the consuming public that Sunrise does not staff its facilities based on

1   the results of resident assessments but instead maintains staffing levels based on pre-determined

2   labor budgets, regardless of changes in the overall care needs and assessed care points of current

3   residents.

4         108.    In accordance with Civil Code section 1782(a), Plaintiff has provided Defendant

5   with notice and an opportunity to address the violations alleged herein.   If Defendant fails to cure

6   the violations within the statutory time period, Plaintiff will amend the complaint to seek CLRA

7   damages as authorized under Civil Code section 1782(d).

8

9        **SECOND CLAIM FOR UNLAWFUL, UNFAIR AND DECEPTIVE BUSINESS**

10                **PRACTICES (Cal. B&P Code §17200 et seq.)**

11         109.    Plaintiffs refer to, and incorporate herein by this reference, all preceding

12   paragraphs.

13         110.    Defendant has engaged in unlawful business acts and practices.  Such acts and

14   practices constitute unfair business practices in violation of California Business and Professions

15   Code section 17200 *et seq.*

16         111.    In particular, Defendant has engaged in unlawful business acts and practices by

17   violating numerous laws, statutes, and regulations including, without limitation:

18           (a)    Systematically and uniformly representing to the residents of its assisted

19   living facilities in California, family members and the public that Sunrise uses its resident

20   assessment system and related Service Levels to determine and provide facility staffing, when in

21   fact, it did not and never intended to do so, in violation of California Business & Professions

22   Code section 17500, *et seq.* and California Civil Code section 1770, *et seq.*; and

23           (b)    Taking, secreting, appropriating, obtaining, and retaining the funds of elders

24   and dependent adults for a wrongful use and/or with the intent to defraud in violation of

25   California W&I Code section 15610.30.

26         112.    By virtue of the conduct alleged herein, Defendant has also engaged in fraudulent

27   business practices. Members of the general public (including without limitation persons admitted

28   to and/or residing in Sunrise's California assisted living and memory care facilities during the

Class Period, and their family members and/or representatives) have been and are likely to be deceived by Defendant's misrepresentations and failures to disclose as alleged herein.

113.    The acts and practices of Defendant also constitute unfair business acts and practices within the meaning of California Business & Professions Code section 17200, *et seq.*, in that the conduct alleged herein is immoral, unscrupulous, and contrary to public policy, and the detriment and gravity of that conduct outweighs any benefits attributable to such conduct.

114.    Defendant's misrepresentations, misleading statements, acts, practices, and omissions were intended to induce and lure elderly and dependent adult residents and their family members into agreeing to be admitted to Defendant's facilities and to pay a new resident services fee and monthly rates to live in an assisted living facility that determines and provides staffing according to the staff time and type of staff Defendant has determined is necessary to provide the services identified in its resident assessments.

115.    Defendant made these misrepresentations and misleading statements through various uniform means of written corporate communications, including without limitation, the admission agreement, service and health updates, individualized service plans, marketing and promotional materials, Defendant's corporate website, and other materials disseminated to the public from its corporate headquarters in connection with Defendant's services.  These representations were made directly to the named Plaintiffs, class members and their family members and/or representatives by Defendant in its standard resident contracts and reinforced by the uniform means of communication listed above.

116.    In addition to its affirmative misrepresentations that Sunrise uses its resident assessment system to determine and provide facility staffing in accordance with residents' assessed needs, Defendant concealed from Plaintiffs, the putative class members, and their family members that Defendant does not use its resident assessment system to set or provide facility staffing but instead maintains predetermined facility staffing levels regardless of changes in the overall assessed Service Levels and Service Points of current residents.

117.    Defendant had exclusive and superior knowledge of material facts not known to the named Plaintiffs, putative class members, or the general public at the time of the subject

1  transactions and actively concealed these material facts.

2     118.    Defendant had exclusive and superior knowledge of its corporate policy and

3  procedure of ignoring the resident assessments and corresponding Service Levels and Service

4  Points in setting staffing levels.  Sunrise also knew that its failure to provide staffing based on the

5  levels of care that Sunrise had itself determined as necessary to provide the services for which it

6  charged its residents posed a substantial health and safety risk to the named Plaintiffs and class

7  members.  Sunrise intentionally concealed, suppressed and/or failed to disclose the true facts with

8  the intent to defraud the named Plaintiffs and putative class members. The named Plaintiffs and

9  the putative class members did not know these material undisclosed facts and could not reasonably

10  have been expected to discover them.

11     119.    As a direct and proximate result of Defendant's conduct, Plaintiffs, the class

12  members, and members of the general public (including without limitation persons admitted to

13  and/or residing in the facilities, and their family members and/or representatives) have been

14  harmed and continue to be harmed.  Among other things, they paid money to Defendant to enter

15  the facility and for services that were substandard to those promised by Defendant.   Accordingly,

16  Plaintiffs and the putative class members are entitled to restitution.

17     120.    Additionally, Plaintiffs seek an injunction that requires that Defendant immediately

18  cease acts of unlawful, unfair, and fraudulent business acts or practices as alleged herein, and to

19  enjoin Defendant from continuing to engage in any such acts or practices in the future.  Plaintiffs

20  and the putative class members also seek reasonable attorneys' fees, costs and expenses, and all

21  other remedies permitted by law.

22     **THIRD CLAIM FOR ELDER FINANCIAL ABUSE (Cal. W&I Code §15610.30)**

23     121.    Plaintiffs refer to, and incorporate herein by this reference, all preceding

24  paragraphs.

25     122.    Plaintiffs and the putative class members are and at all times were "elders" as

26  defined under California W&I Code section 15610.27 and/or "dependent adults" as defined under

27  California W&I Code section 15610.23.

28     123.    Defendant entered into a standard agreement with the named Plaintiffs, by and

1  through their power of attorneys, the putative class members and/or their personal representatives.

2  In these agreements, Defendant represented that Sunrise determines and provides staffing at its

3  assisted living facilities sufficient to meet the needs of its residents as determined by Sunrise's

4  assessments and confirmed in Service Levels used to calculate resident charges.  Defendant made

5  this promise in exchange for new resident services fees and monthly payments that it received

6  from the named Plaintiffs and the putative class members.  Yet Defendant did not and had no

7  intention of complying with its obligations under the contract.  Defendant did not intend to and

8  does not use its resident assessment system and Service Levels generated by it to set or provide

9  staffing at its facilities.  Rather, it has a policy and practice of providing pre-determined facility

10 staffing that does not change with increases in resident care needs.  This policy and practice

11 precludes Sunrise from providing facility residents with all of the care Sunrise has promised them

12 and for which they are paying Sunrise.

13      124.   Defendant knew or should have known that such conduct would likely be harmful

14 to Plaintiffs and the putative class members.

15      125.   Defendant knew or should have known that Plaintiffs and the putative class

16 members had a right to the funds used to pay new resident move-in fees and monthly fees to

17 Defendant.

18      126.   As such, Defendant took, secreted, appropriated, obtained, and retained the funds of

19 Plaintiffs and the putative class members for a wrongful use and/or with the intent to defraud.

20      127.   Defendant's conduct was despicable, fraudulent, reckless, and carried out with a

21 willful and conscious disregard for the rights and safety of Plaintiffs and the members of the

22 putative class.

23      128.   Accordingly, Plaintiffs and the putative class seek an injunction requiring

24 Defendant to disclose to Plaintiffs, the putative class members, and the consuming public that

25 Sunrise does not use its resident assessments or Service Levels to set or provide staffing at its

26 facilities, but instead maintains pre-determined staffing levels, based on fixed labor budgets,

27 which do not change regardless of increases in the overall assessed care needs of current residents.

28      129.   Plaintiffs and the putative class members also seek compensatory damages,

1  reasonable attorneys' fees, costs and expenses, punitive damages, treble damages pursuant to

2  California Civil Code section 3345, and all other remedies permitted by law.  Plaintiffs do not

3  seek certification of any claims for damages related to any personal injuries, emotional distress, or

4  wrongful death suffered by any member of the class.

5  <div align="center">**PRAYER**</div>

6  WHEREFORE, Plaintiffs pray for judgment as follows:

7  1.  For a Court order certifying that the action may be maintained as a class action;

8  2.  For actual damages according to proof, excepting any damages for personal injury,

9  emotional distress, and/or wrongful death suffered by the named Plaintiff or any

10  class member;

11  3.  For restitution and any other monetary relief permitted by law;

12  4.  For reasonable attorneys' fees, costs, and expenses;

13  5.  For treble damages pursuant to California Civil Code section 3345;

14  6.  For punitive damages;

15  7.  For pre-judgment and post-judgment interest, according to law;

16  8.  For an order requiring that Defendant immediately cease acts that constitute

17  unlawful, unfair and fraudulent business practices, false advertising and violations

18  of the Consumer Legal Remedies Act, Business and Professions Code section

19  17200 *et seq.*, and the Elder Financial Abuse statute as alleged herein, and to enjoin

20  Defendant from continuing to engage in any such acts or practices in the future;

21  9.  Plaintiffs and the class further seek an injunction requiring Defendant to disclose to

22  the putative class members and the consuming public that Sunrise does not use its

23  resident assessment or corresponding Service Levels to set or provide staffing at its

24  facilities; and

25  ///

26  ///

27  ///

28  ///

1          10.    For such other and further relief as the Court may deem just and proper.

2                                   **JURY TRIAL DEMANDED**

3          Plaintiffs demand a jury trial on all issues so triable.

4    DATED:   June 27, 2017

5                                          _____

6                                          Kathryn A. Stebner, State Bar No. 121088
                                           Kelly Knapp, State Bar No. 252013
7                                          George Kawamoto, State Bar No. 280358
                                           **STEBNER AND ASSOCIATES**
8                                          870 Market Street, Suite 1212
                                           San Francisco, CA  94102
9                                          Tel:    (415) 362-9800
                                           Fax:    (415) 362-9801

10                                         Christopher J. Healey, State Bar No. 105798
                                           **DENTONS US LLP**
11                                         600 West Broadway, Suite 2600
                                           San Diego, CA  92101-3372
12                                         Tel: (619) 235-3491
                                           Fax: (619) 645-5328
13
                                           Robert S. Arns, State Bar No. 65071
14                                         **THE ARNS LAW FIRM**
                                           515 Folsom Street, 3rd Floor
15                                         San Francisco, CA 94105

16                                         Guy B. Wallace, State Bar No. 176151
                                           Sarah Colby, State Bar No. 194475
17                                         Jennifer A. Uhrowczik, State Bar No. 302212
                                           **SCHNEIDER WALLACE**
18                                         **COTTRELL KONECKY**
                                           **WOTKYNS, LLP**
19                                         2000 Powell Street, Suite 1400
20                                         Emeryville, California 94608
                                           Tel: (415) 421-7100
21                                         Fax: (415) 421-7105

22                                         Michael D. Thamer, State Bar No. 101440
                                           **LAW OFFICES OF MICHAEL D. THAMER**
23                                         12444 South Highway 3
                                           Post Office Box 1568
24                                         Callahan, California 96014-1568

25                                         W. Timothy Needham, State Bar No. 96542
                                           **JANSSEN MALLOY LLP**
26                                         730 Fifth Street
                                           Eureka, CA  95501
27
                                           *Attorneys for Plaintiffs and the Proposed Class*
28

                                              33
                                   CLASS ACTION COMPLAINT

# ATTACHMENT 1

1   I, Vivian Heredia, hereby declare as follows:

2       1.   I am the attorney-in-fact for Audrey Heredia, who is the wife of decedent

3   CARLOS HEREDIA (hereinafter "Decedent").

4       2.   Decedent died on April 16, 2016, in _Santa Ana_, California.

5       3.   No proceeding is now pending in California for administration of the

6   Decedent's estate.

7       4.   Audrey Heredia is a named plaintiff in this action.  She is suing as a

8   successor-in-interest to the estate of Decedent.

9       5.   Audrey Heredia is a successor-in-interest of Decedent as defined in Section

10  377.11 of the California Code of Civil Procedure, and succeeds to the Decedent's interest

11  in this action or proceeding.

12      6.   No other persons have a superior right to commence the action or proceeding

13  or to be substituted for the Decedent in the pending action or proceeding.

14      7.   A copy of Decedent's Death Certificate is attached as Exhibit A.

15

16      I declare under the penalty of perjury under the laws of the State of California that

17  the foregoing is true and correct.

18

19

20  This declaration was executed in _Tustin_, California on June 13, 2017.

21

22  By:

23  _____
    VIVIAN HEREDIA

24

25

26

27

28
                                        1   DECLARATION OF VIVIAN HEREDIA
                                            PURSUANT TO CALIFORNIA CODE OF CIVIL
                                            PROCEDURE 377.32

# COUNTY OF ORANGE

## HEALTH CARE AGENCY

1200 N. MAIN STREET, SUITE 100-A
SANTA ANA, CALIFORNIA 92701

3052016059109     **CERTIFICATE OF DEATH**     3201630004770
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
STATE FILE NUMBER     LOCAL REGISTRATION NUMBER

**DECEDENT'S PERSONAL DATA**

| | | |
|---|---|---|
| 1. NAME OF DECEDENT—FIRST (Given) **CARLOS** | 2. MIDDLE | 3. LAST (Family) **HEREDIA** |
| AKA, ALSO KNOWN AS—Include full AKA (FIRST, MIDDLE, LAST) | 4. DATE OF BIRTH mm/dd/ccyy **02/27/1936** | 6. AGE Yrs. **80** — IF UNDER ONE YEAR Months / Days — IF UNDER 24 HOURS Hours / Minutes — 6. SEX **M** |
| 7. BIRTH STATE/FOREIGN COUNTRY **AZ** | 10. SOCIAL SECURITY NUMBER **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** 11. EVER IN U.S. ARMED FORCES? ☐ YES ☒ NO | 12. MARITAL STATUS **MARRIED** 13. DATE OF DEATH mm/dd/ccyy **03/16/2016** 14. HOUR (24 Hrs) **0839** |
| 15. EDUCATION—Highest Level/Degree **HS GRADUATE** | 16. DECEDENT'S RACE ☒ YES **MEXICAN AMERICAN** ☐ NO HISPANIC | |
| 17. USUAL OCCUPATION—Type of work for most of life, DO NOT USE RETIRED **GENERAL CONTRACTOR** | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) **CONSTRUCTION** | 19. YEARS IN OCCUPATION **20** |

**USUAL RESIDENCE**

| | | | |
|---|---|---|---|
| 20. DECEDENT'S RESIDENCE (Street and number, or location) **460 W 2ND STREET** | | | |
| 21. CITY **TUSTIN** | 22. COUNTY/PROVINCE **ORANGE** | 23. ZIP CODE **92780** | 24. YEARS IN COUNTY **56** 25. STATE/FOREIGN COUNTRY **CA** |

**INFORMANT**

| | |
|---|---|
| 26. INFORMANT'S NAME, RELATIONSHIP **AUDREY ANN EMSEL HEREDIA, WIFE** | 27. INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state and zip) **460 W 2ND STREET, TUSTIN, CA 92780** |

**SPOUSE/SRDP AND PARENT INFORMATION**

| | | |
|---|---|---|
| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST **AUDREY** | 29. MIDDLE **ANN** | 30. LAST (BIRTH NAME) **EMSEL** |
| 31. NAME OF FATHER/PARENT—FIRST **EUSEBIO** | 32. MIDDLE | 33. LAST **HEREDIA** — 34. BIRTH STATE **MEXICO** |
| 35. NAME OF MOTHER/PARENT—FIRST **GUADALUPE** | 36. MIDDLE | 37. LAST (BIRTH NAME) **PERALTA** — 38. BIRTH STATE **AZ** |

**FUNERAL DIRECTOR/LOCAL REGISTRAR**

| | |
|---|---|
| 39. DISPOSITION DATE mm/dd/ccyy **03/24/2016** | 40. PLACE OF FINAL DISPOSITION **RES OF AUDREY HEREDIA 460 W 2ND STREET, TUSTIN, CA 92780** |
| 41. TYPE OF DISPOSITION(S) **CR/RES** | 42. SIGNATURE OF EMBALMER ▶ **NOT EMBALMED** — 43. LICENSE NUMBER - |
| 44. NAME OF FUNERAL ESTABLISHMENT **FAIRHAVEN MORTUARY** — 44. LICENSE NUMBER **FD1313** | 45. SIGNATURE OF LOCAL REGISTRAR ▶ **ERIC G. HANDLER, M.D.** — 46. DATE mm/dd/ccyy **03/23/2016** |

**PLACE OF DEATH**

| | | |
|---|---|---|
| 101. PLACE OF DEATH **ADVANCED REHAB CENTER OF TUSTIN** | 102. IF HOSPITAL, SPECIFY ONE ☐ IP ☐ ER/OP ☐ DOA — 103. IF OTHER THAN HOSPITAL, SPECIFY ONE ☐ Hospice ☐ Nursing Home/LTC ☒ Decedent's Home ☐ Other | |
| 104. COUNTY **ORANGE** | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) **2210 EAST FIRST ST** | 106. CITY **SANTA ANA** |

**CAUSE OF DEATH**

| 107. CAUSE OF DEATH | | |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) ▶ **CARDIOPULMONARY ARREST** | 108. DEATH REPORTED TO CORONER? ☐ YES ☒ NO | |
| Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST ▶ **PARKINSON'S DISEASE** | 109. BIOPSY PERFORMED? ☐ YES ☒ NO — 110. AUTOPSY PERFORMED? ☐ YES ☒ NO — 111. USED IN DETERMINING CAUSE? ☐ YES ☐ NO | MINS / YRS |
| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 **NONE** | | |
| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date) **NO** | 113A. IF FEMALE, PREGNANT IN LAST YEAR? ☐ YES ☐ NO ☐ UNK | |

**PHYSICIAN'S CERTIFICATION**

| | | |
|---|---|---|
| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. Decedent Attended Since **02/24/2016** Decedent Last Seen Alive **03/16/2016** | 115. SIGNATURE AND TITLE OF CERTIFIER ▶ **VINOD MALHOTRA M.D.** | 116. LICENSE NUMBER **A31505** 117. DATE mm/dd/ccyy **03/23/2016** |
| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE **VINOD MALHOTRA M.D. 11100 WARNER AVE STE 268, FOUNTAIN VALLEY, CA 92708** | | |

**CORONER'S USE ONLY**

| | | | |
|---|---|---|---|
| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. MANNER OF DEATH ☐ Natural ☐ Accident ☐ Homicide ☐ Suicide ☐ Pending Investigation ☐ Could not be determined | 120. INJURED AT WORK? ☐ YES ☐ NO ☐ UNK | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) | | | |
| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) | | | |
| 125. LOCATION OF INJURY (Street and number, or location, and city and zip) | | | |
| 126. SIGNATURE OF CORONER / DEPUTY CORONER ▶ | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER | |

**STATE REGISTRAR**   A   B   C   D   \*01000100320018?\*   FAX AUTH.#   CENSUS TRACT

CAORANGED1

## CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, COUNTY OF ORANGE

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Vital Records Section, Orange County Health Care Agency.





DATE ISSUED **April 4, 2016**


ERIC G. HANDLER, MD
COUNTY HEALTH OFFICER

**003753682**

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Registrar.
ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE




# ATTACHMENT 2

I, Corbina Mancuso, hereby declare as follows:

1.    I am the daughter of decedent RUBY MANCUSO (hereinafter "Decedent").

2.    Decedent died on April 30, 2016, in Oakland, California.

3.    No proceeding is now pending in California for administration of the Decedent's estate.

4.    I am a named plaintiff in this action.  I am suing as a successor-in-interest to the estate of Decedent.

5.    I am a successor-in-interest of Decedent as defined in Section 377.11 of the California Code of Civil Procedure, and succeed to the Decedent's interest in this action or proceeding.

6.    No other persons have a superior right to commence the action or proceeding or to be substituted for the Decedent in the pending action or proceeding.

7.    A copy of Decedent's Death Certificate is attached as Exhibit A.


I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.


This declaration was executed in ___Richmond___, California on June _1_, 2017.


By: _____
CORBINA MANCUSO

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# ALAMEDA COUNTY HEALTH CARE SERVICES AGENCY
## PUBLIC HEALTH DEPARTMENT

### CERTIFICATE OF DEATH

STATE FILE NUMBER: 3201601003268

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| RUBY | | MANCUSO |

AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST): CORBINA RUBY MANCUSO

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | 6. SEX |
|---|---|---|
| 10/05/1921 | 94 | F |

| 8. BIRTH STATE/FOREIGN COUNTRY | 9. SOCIAL SECURITY NUMBER | 10. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS | 13. DATE OF DEATH mm/dd/ccyy | 14. HOUR |
|---|---|---|---|---|---|
| NY | 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 | YES [X] NO | WIDOWED | 04/30/2016 | 1130 |

| 15. EDUCATION | 16. DECEDENT HISPANIC/LATINO | 17. DECEDENT'S RACE | 18. YEARS IN OCCUPATION |
|---|---|---|---|
| HS GRADUATE | YES [X] NO | CAUCASIAN | |

| 19. USUAL OCCUPATION | 19. KIND OF BUSINESS OR INDUSTRY |
|---|---|
| HOMEMAKER | OWN HOME |

20. DECEDENT'S RESIDENCE (Street and number, or location): 226 SHORELINE COURT

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| RICHMOND | CONTRA COSTA | 94804 | 5 | CA |

26. INFORMANT'S NAME, RELATIONSHIP: CORBINA MANCUSO, DAUGHTER — 226 SHORELINE COURT, RICHMOND, CA 94804

| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST BIRTH NAME |
|---|---|---|

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| JOSEPH | | FIORIO | ITALY |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST BIRTH NAME | 38. BIRTH STATE |
|---|---|---|---|
| FRANCES | | LOSCALZO | ITALY |

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 05/11/2016 | RES JOANN DEEGAN, 10 LA RUE DRIVE, HUNTINGTON, NY 11743 |

| 42. TYPE OF DISPOSITION(S) | 43. SIGNATURE OF EMBALMER | 44. LICENSE NUMBER |
|---|---|---|
| CR/TR/RES | NOT EMBALMED | |

| 46. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 47. SIGNATURE OF LOCAL REGISTRAR | 48. DATE mm/dd/ccyy |
|---|---|---|---|
| PACIFIC INTERMENT SERVICE | FD 1506 | MUNTU DAVIS, M.D. | 05/09/2016 |

| 101. PLACE OF DEATH | 101A. IF HOSPITAL, SPECIFY ONE | 101B. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| MERCY RETIREMENT AND CARE CENTER | IP EP/OP [X] DOA | Hospice [X] Home/LTC Decedent's Home Other |

| 102. COUNTY | 103. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number or location) | 104. CITY |
|---|---|---|
| ALAMEDA | 3431 FOOTHILL BLVD | OAKLAND |

| 107. CAUSE OF DEATH | | Time Interval Onset to Death | 108. BIOPSY PERFORMED? |
|---|---|---|---|
| IMMEDIATE CAUSE (A) | COLON CARCINOMA | MOS | YES [X] NO |
| (B) | | | 109. AUTOPSY PERFORMED? YES [X] NO |
| (C) | | | |
| (D) | | | 110. USED IN DETERMINING CAUSE? YES [X] NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| ANEMIA, GASTROINTESTINAL BLEEDING |

| 111. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? | 113. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| NO | [X] YES NO UNK |

| 114. I CERTIFY... | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| | MICHAEL JAMES MARCHIANO M.D. | A46191 | 05/06/2016 |

| 118. DECEDENT ATTENDED SINCE | 119. DECEDENT LAST SEEN ALIVE | 120. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE |
|---|---|---|
| 05/18/2015 | 04/30/2016 | MICHAEL JAMES MARCHIANO M.D. 6140 STONERIDGE MALL RD, HAYWARD, CA 94545 |

| 121. MANNER OF DEATH | 122. INJURED AT WORK? | 123. INJURY DATE mm/dd/ccyy | 123. HOUR |
|---|---|---|---|
| Natural Accident Homicide Suicide Pending Investigation Could not be determined | YES NO UNK | | |

124. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.)

125. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury)

126. LOCATION OF INJURY (Street and number, or location, and city)

| 128. SIGNATURE OF CORONER / DEPUTY CORONER | 137. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|

| STATE REGISTRAR | A | B | C | D | E | FAX AUTH # | CENSUS TRACT |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

*9110001003237130*

## CERTIFIED COPY OF VITAL RECORDS
### STATE OF CALIFORNIA, COUNTY OF ALAMEDA

This is a true and exact reproduction of the document officially registered and filed with the Alameda County Health Care Services Agency.

001075178

DATE ISSUED: MAY 10 2016



HEALTH OFFICER AND LOCAL REGISTRAR
ALAMEDA COUNTY, CALIFORNIA

This copy not valid unless prepared on an engraved border displaying date and signature of Registrar.

ANY ALTERATION OR ERASURE VOIDS THIS...

CAALAMED01

# EXHIBIT B

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>─Kathryn Stebner (SBN 121088); Kelly Knapp (SBN 252013)<br>Stebner and Associates<br>870 Market Street, Suite 1212<br>San Francisco, CA 94102<br>TELEPHONE NO.: 415-362-9800      FAX NO.: 415-362-9801<br>ATTORNEY FOR *(Name):* Plaintiffs and the Proposed Class | FOR COURT USE ONLY<br><br>ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>JUN 27 2017<br><br>CLERK OF THE SUPERIOR COURT<br>By: D. OLIVER Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

CASE NAME:
Audrey Heredia as successor-in-interest v. Sunrise Senior Living, LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: RG 17 8 6 5 5 4 |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [✓] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [✓] is    [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [✓] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence           f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):*  Three
5. This case [✓] is    [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 27 2017

Kathryn Stebner/Kelly Knapp                          ▶        *Kelly Knapp*
_____                    _____
(TYPE OR PRINT NAME)                                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |



CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
    Auto (22)–Personal Injury/Property
        Damage/Wrongful Death
    Uninsured Motorist (46) *(if the
        case involves an uninsured
        motorist claim subject to
        arbitration, check this item
        instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
    Asbestos (04)
        Asbestos Property Damage
        Asbestos Personal Injury/
            Wrongful Death
    Product Liability *(not asbestos or
        toxic/environmental)* (24)
    Medical Malpractice (45)
        Medical Malpractice–
            Physicians & Surgeons
        Other Professional Health Care
            Malpractice
    Other PI/PD/WD (23)
        Premises Liability (e.g., slip
            and fall)
        Intentional Bodily Injury/PD/WD
            (e.g., assault, vandalism)
        Intentional Infliction of
            Emotional Distress
        Negligent Infliction of
            Emotional Distress
        Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
    Business Tort/Unfair Business
        Practice (07)
    Civil Rights (e.g., discrimination,
        false arrest) *(not civil
        harassment)* (08)
    Defamation (e.g., slander, libel)
        (13)
    Fraud (16)
    Intellectual Property (19)
    Professional Negligence (25)
        Legal Malpractice
        Other Professional Malpractice
            *(not medical or legal)*
    Other Non-PI/PD/WD Tort (35)
**Employment**
    Wrongful Termination (36)
    Other Employment (15)

**Contract**
    Breach of Contract/Warranty (06)
        Breach of Rental/Lease
            Contract *(not unlawful detainer
                or wrongful eviction)*
        Contract/Warranty Breach–Seller
            Plaintiff *(not fraud or negligence)*
        Negligent Breach of Contract/
            Warranty
        Other Breach of Contract/Warranty
    Collections (e.g., money owed, open
        book accounts) (09)
        Collection Case–Seller Plaintiff
        Other Promissory Note/Collections
            Case
    Insurance Coverage *(not provisionally
        complex)* (18)
        Auto Subrogation
        Other Coverage
    Other Contract (37)
        Contractual Fraud
        Other Contract Dispute
**Real Property**
    Eminent Domain/Inverse
        Condemnation (14)
    Wrongful Eviction (33)
    Other Real Property (e.g., quiet title) (26)
        Writ of Possession of Real Property
        Mortgage Foreclosure
        Quiet Title
        Other Real Property *(not eminent
            domain, landlord/tenant, or
            foreclosure)*
**Unlawful Detainer**
    Commercial (31)
    Residential (32)
    Drugs (38) *(if the case involves illegal
        drugs, check this item; otherwise,
        report as Commercial or Residential)*
**Judicial Review**
    Asset Forfeiture (05)
    Petition Re: Arbitration Award (11)
    Writ of Mandate (02)
        Writ–Administrative Mandamus
        Writ–Mandamus on Limited Court
            Case Matter
        Writ–Other Limited Court Case
            Review
    Other Judicial Review (39)
        Review of Health Officer Order
        Notice of Appeal–Labor
            Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
    Antitrust/Trade Regulation (03)
    Construction Defect (10)
    Claims Involving Mass Tort (40)
    Securities Litigation (28)
    Environmental/Toxic Tort (30)
    Insurance Coverage Claims
        *(arising from provisionally complex
        case type listed above)* (41)
**Enforcement of Judgment**
    Enforcement of Judgment (20)
        Abstract of Judgment (Out of
            County)
        Confession of Judgment *(non-
            domestic relations)*
        Sister State Judgment
        Administrative Agency Award
            *(not unpaid taxes)*
        Petition/Certification of Entry of
            Judgment on Unpaid Taxes
        Other Enforcement of Judgment
            Case
**Miscellaneous Civil Complaint**
    RICO (27)
    Other Complaint *(not specified
        above)* (42)
        Declaratory Relief Only
        Injunctive Relief Only *(non-
            harassment)*
        Mechanics Lien
        Other Commercial Complaint
            Case *(non-tort/non-complex)*
        Other Civil Complaint
            *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
    Partnership and Corporate
        Governance (21)
    Other Petition *(not specified
        above)* (43)
        Civil Harassment
        Workplace Violence
        Elder/Dependent Adult
            Abuse
        Election Contest
        Petition for Name Change
        Petition for Relief From Late
            Claim
        Other Civil Petition

**CIVIL CASE COVER SHEET**



20111558

SUM-100

# SUMMONS
## (CITACION JUDICIAL)



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
ALAMEDA COUNTY

JUN 27 2017

CLERK OF THE SUPERIOR COURT
By _____ Deputy
R. OLIVER, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Sunrise Senior Living, LLC; and DOES 1 Through 100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Audrey Heredia as successor-in-interest to the Estate of Carlos Heredia;
and [Additional Parties Attached]

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):* Alameda County Superior Court

1225 Fallon Street
Oakland, CA  94612

CASE NUMBER:
*(Número del Caso):* RG17865541

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kathryn Stebner, Stebner and Asociates, 870 Market St., Ste. 1212, San Francisco, CA 94102; 415-362-9800

DATE: **JUN 27 2017**     **Chad Finke**  Clerk, by _____ , Deputy
*(Fecha)*                                 *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Audrey Heredia, et al. v. Sunrise Senior Living, LLC; et al. | |

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[✓] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

Corbina Mancuso as successor-in-interest to the Estate of Ruby Mancuso; on their own behalves and on behalf of others similarly situated.

Page __1__ of __1__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1  Kathryn A. Stebner, State Bar No. 121088
   Kelly Knapp, State Bar No. 252013
2  George Kawamoto, State Bar No. 280358
   **STEBNER AND ASSOCIATES**
3  870 Market Street, Suite 1212
   San Francisco, CA 94102
4  Tel: (415) 362-9800
   Fax: (415) 362-9801
5
   Christopher J. Healey, State Bar No. 105798
6  **DENTONS US LLP**
   600 West Broadway, Suite 2600
7  San Diego, CA 92101-3372
   Tel: (619) 235-3491
8  Fax: (619) 645-5328

9  Robert S. Arns, State Bar No. 65071
   Julie C. Erickson, State Bar 293111
10 **THE ARNS LAW FIRM**
   515 Folsom Street, 3rd Floor
11 San Francisco, CA 94105
   Tel: (415) 495-7800
12 Fax: (415) 495-7888

13 [Additional Counsel listed on signature page]

14 Attorneys for Plaintiffs and the Proposed Class

15            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16                      **COUNTY OF ALAMEDA**

17
   Audrey Heredia as successor-in-interest to     CASE NO. RG 17 8 3 5 5 6 1
18 the Estate of Carlos Heredia; and Corbina
   Mancuso as successor-in-interest to the        **CLASS ACTION COMPLAINT FOR:**
19 Estate of Ruby Mancuso; on their own
   behalves and on behalf of others similarly     1.  VIOLATION OF THE CONSUMERS
20 situated,                                           LEGAL REMEDIES ACT (Civ. Code §
                                                       1750 et seq.)
21                          Plaintiffs,            2.  UNLAWFUL, UNFAIR AND
                                                       FRAUDULENT BUSINESS PRACTICES
22 vs.                                                 (B&P Code § 17200 et seq.)
                                                  3.  ELDER FINANCIAL ABUSE (W&I Code
23 Sunrise Senior Living, LLC; and Does 1             § 15610.30)
   Through 100,
24                                                 **JURY TRIAL DEMANDED**
                           Defendants.
25

26

27

28

BY FAX

ENDORSED
FILED
ALAMEDA COUNTY

JUN 27 2017

CLERK OF THE SUPERIOR COURT
By: D. OLIVER, Deputy

**INTRODUCTION**

1.     Plaintiff Audrey Heredia as successor-in-interest to the Estate of Carlos Heredia and Plaintiff Corbina Mancuso as successor-in-interest to the Estate of Ruby Mancuso (collectively "Plaintiffs") bring this action for injunctive relief and damages to stop the unlawful and fraudulent practices of Sunrise Senior Living, LLC ("Sunrise" or "Defendant").

2.     Defendant has engaged in a scheme to defraud seniors, persons with disabilities, and their family members at its assisted living facilities in California by falsely representing to all residents in its admission contracts that each resident will be provided the care services (through facility staff) that the resident needs as determined by a resident assessment conducted by facility personnel. This is false and misleading because Sunrise does not use the results generated by its resident assessment system to determine or provide staffing at its facilities. Sunrise conceals and fails to disclose that, as a matter of corporate policy, Sunrise sets facility staffing per shift based on pre-determined labor budgets that remain static throughout the year despite any increases in aggregated resident needs as determined by resident assessments.

3.     In its form admission agreements, Sunrise uniformly represents to each new resident that (a) each resident will receive the care that he/she requires; (b) the facility's professional staff will determine the care required for each resident through the resident assessment process; and (c) the amount of care identified in the resident assessment process as needed by the resident will be translated into a "score" and specific "Service Level" for which the resident will be charged on a daily basis. The reasonable consumer understands these representations to mean that, as a matter of policy and practice, Sunrise will use its resident assessment system to determine and provide staffing levels at its facilities, and accordingly, will provide sufficient staff at each facility to deliver to all facility residents the amount and type of care that Sunrise has identified as necessary based on resident assessments and overall census.

4.     Sunrise's misrepresentations, misleading statements, and omissions about the manner in which its facilities are staffed and the failure to consider the aggregate staffing needs dictated by the comprehensive assessments are material to the reasonable consumer. Seniors and/or their family members choose an *assisted* living facility based on the expectation that they

1  will receive the quantity and quality of care that they need.  A system or policy that ensures a level

2  of staffing based on the overall needs of residents as quantified through aggregation of current

3  residents' assessment scores is likely to provide such care at the outset and on an ongoing basis.

4  However, Sunrise's system of care is based solely on budget considerations and desired profit

5  margins, which results in pre-determined facility staffing levels that are much lower than

6  necessary to meet the needs identified in residents' assessments.  This system precludes Sunrise

7  from providing all promised care to the residents of its facilities.  It is therefore a matter of

8  fundamental importance to the reasonable consumer that Sunrise does not staff and has no

9  intention of staffing its facilities based on the assessment scores and levels of care that Sunrise has

10 promised to provide and for which it is charging its residents.

11      5.      Through its representations and nondisclosures, Sunrise dupes residents and family

12 members into paying large sums in the form of new resident fees and initial monthly payments.

13 For example, Carlos Heredia was charged a new resident fee (labeled by Sunrise as a "Move-In

14 Fee") of $4,050 prior to his entry to the Sunrise at Tustin facility.

15      6.      Sunrise's failure to use its resident assessment system when it sets and provides

16 facility staffing places all residents at an unnecessary risk of harm.  That risk is particularly acute,

17 given the vulnerable nature of the targeted population of seniors and residents with disabilities.

18      7.      Sunrise's promotion of its system of comprehensive resident assessments and

19 corresponding Service Levels in its form contract and marketing materials contributes to its

20 competitiveness in the marketplace of assisted living facilities and is a factor in its pricing

21 structure.  Its purported use of such a system to accurately assess the needs of residents and

22 provide sufficient staffing to meet those needs enables it to charge more for residency and services

23 at its facilities than it otherwise could.  In effect, residents pay a premium for a system that Sunrise

24 misrepresents will result in comprehensive resident needs assessments and the staff necessary to

25 provide the promised care.

26      8.      If Plaintiffs and the putative class members had known the true facts about

27 Sunrise's corporate policy of ignoring its resident assessment system in determining and providing

28 facility staffing, they would not have agreed to enter Sunrise or paid Sunrise significant amounts

1   of money in new resident fees and monthly charges.  As a result of Sunrise's failure to staff based

2   on resident assessments, the named Plaintiffs and putative class members did not or have not

3   received, and/or are subjected to a substantial risk that they will not receive in the future, the care

4   that Sunrise has promised to provide in its admission contracts.

5       9.     This action seeks to require Sunrise to cease and desist its ongoing violations of

6   law.  In addition, Plaintiffs seek an order requiring Sunrise to disclose to prospective and current

7   residents, their family members, and/or responsible parties that it does not use its resident

8   assessment system or aggregate the results generated by that system in setting and providing

9   staffing at its facilities.  In addition to injunctive relief, this action seeks class wide damages based

10  on Defendant's misrepresentations and misleading statements and material omissions alleged

11  herein.  This action does not seek recovery for personal injuries, emotional distress, or bodily

12  harm that may have been caused by Defendant's conduct alleged herein.

13                              **PARTIES**

14      **Plaintiffs**

15      10.    Plaintiff Audrey Heredia is the wife of decedent Carlos Heredia, a resident of

16  Sunrise at Tustin, in Santa Ana, California from June 2014 to April 2015.  She is the successor-in-

17  interest to the Estate of Carlos Heredia pursuant to California Code of Civil Procedure sections

18  77.11 and 377.32.  The appropriate declaration pursuant to section 377.32 is attached hereto as

19  Attachment 1.  At all times relevant to this complaint, Carlos Heredia was an elder as defined

20  under California Welfare & Institutions Code section 15610.27 and a senior citizen as defined

21  under California Civil Code section 1761(f).  Carlos Heredia was at all times herein mentioned a

22  resident of the State of California.  Plaintiff Audrey Heredia brings this action on behalf of

23  decedent Carlos Heredia and all others similarly situated.

24      11.    Plaintiff Corbina Mancuso is a daughter of decedent Ruby Mancuso, a resident of

25  Sunrise of Oakland Hills, in Oakland, California from December 26, 2012 to January 2016.  She is

26  a successor-in-interest to the Estate of Ruby Mancuso pursuant to California Code of Civil

27  Procedure sections 377.11 and 377.32.  The appropriate declaration pursuant to section 377.32 is

28  attached hereto as Attachment 2.  At all times relevant to this complaint, Ruby Mancuso was an

1    elder as defined under California Welfare & Institutions Code section 15610.27 and a senior

2    citizen as defined under California Civil Code section 1761(f). Ruby Mancuso was at all times

3    herein mentioned a resident of the State of California. Plaintiff Corbina Mancuso brings this

4    action on behalf of decedent Ruby Mancuso and all others similarly situated.

5        **Defendant**

6        12.    Defendant Sunrise Senior Living LLC is a Delaware limited liability company with

7    its principal place of business in McClean, Virginia. The residences of its members are unknown.

8        13.    Sunrise owns and operates all of the real estate and buildings, and holds the

9    licenses for approximately 52 assisted living facilities in California under the Sunrise name.

10       14.    The true names and capacities, whether individual, corporate, associate, or

11   otherwise, of the designated herein as Does 1 through 100, inclusive, are presently unknown to

12   Plaintiff and thus sued by such fictitious names. On information and belief, each of the

13   Defendants designated herein as "Doe" is legally responsible for the events and actions alleged

14   herein, and proximately caused or contributed to the injuries and damages as hereinafter described.

15   Plaintiffs will seek leave to amend this Complaint, in order to show the true names and capacities

16   of such parties, when the same has been ascertained.

17                    **JURISDICTION AND VENUE**

18       15.    This Court has jurisdiction over all causes of action asserted herein. Defendant has

19   sufficient minimum contacts in California or otherwise intentionally prevails itself of the

20   California market through ownership and management of 52 assisted living facilities located in

21   California, derivation of substantial revenues from California, and other activities, so as to render

22   the exercise of jurisdiction over the Sunrise Defendant by the California courts consistent with

23   traditional notions of fair play and substantial justice.

24       16.    Venue is proper in Alameda County under Code of Civil Procedure section 395(a),

25   Business & Professions Code section 17203 and Civil Code section 1780, based on the facts,

26   without limitation, that:  This Court is a court of competent jurisdiction; Defendant's conduct

27   substantial business in this county, including but not limited to the management and ownership of

28   Sunrise of Oakland Hills in Oakland; a portion of Defendant's liability arose in this county; and

1    the acts upon which this action is based occurred in part in this county.

2    <u>**GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**</u>

3        17.     Sunrise provides assisted living and memory care for senior citizens and persons

4    with disabilities at facilities nationwide, including 52 facilities that it owns and/or operates in

5    California.

6        18.     Assisted living facilities, also called Residential Care Facilities for the Elderly

7    ("RCFEs"), offer room, board, and daily assistance for seniors in certain activities of daily living

8    ("ADLs"), such as preparing meals, shopping, transportation, preparing and taking medication,

9    using the telephone, paying bills, housekeeping, and others.

10        19.     Assisted living facilities are intended to provide a level of care appropriate for

11    those who are unable to live by themselves, but who do not have medical conditions requiring

12    more extensive nursing care and significant assistance with most of their ADLs.  Sunrise's assisted

13    living facilities also have Memory Care units, which serve individuals with dementia and other

14    cognitive disorders.

15        20.     In recent years, Sunrise has increasingly been accepting and retaining more

16    residents with conditions and care needs that were once handled almost exclusively in skilled

17    nursing facilities.  Sunrise has acknowledged in public statements:

18        What we've seen over the years is that, we've gone from caring for a more
independent senior who may have needed some assistance with activities of daily
19        living (ADLs), to those who have more complex health needs requiring
coordination of care and services.

20

       Industry-wide, we are taking care of folks who are frailer, needing more assistance
21        with ADLs and chronic disease management, such as diabetes. Also, people are
living longer. As the average lifespan has increased, so has the average age of
22        Sunrise residents.

23    https://www.sunriseseniorliving.com/blog/december-2016/the-evolution-of-care-in-assisted-

24    living.aspx (last visited April 26, 2017).  Sunrise's practice of accepting and retaining residents

25    with "more complex health needs" has allowed it to increase not only the potential resident pool

26    but also the amounts of money charged to residents and/or their family members.

27        21.     At Sunrise facilities, residents are charged a base rate, which includes room, board,

28    and basic maintenance, cleaning and laundry.  Sunrise assesses each resident before admission and

1   then periodically, including whenever there is a change of the resident's condition.  By performing

2   these assessments, Sunrise determines what additional services a resident needs, such as assistance

3   with ADLs.  Each additional need correlates to a numerical score and "Service Level," which

4   determines how much more time Sunrise staff must spend caring for the resident.  The Service

5   Level also determines the amount charged per-day for fees.  Thus, the higher the Service Level

6   assessed the more money Defendant charges the resident.

7   **Uniform Representations in Sunrise's Standardized Contracts and Other**
8   **Corporate Materials**

9       22.     Defendant represents that it will use its resident assessment system to identify the

10  level of care necessary to ensure that residents receive the services they require and to identify the

11  amount Sunrise will charge them for services.

12      23.     Sunrise clearly represents in its standardized contracts that there is a connection

13  between the services they will receive and the level of care assessed as needed in the resident

14  assessment system.  At or before the time of move-in, Sunrise requires all residents to sign a

15  "Residency Agreement."  Section I.D. of the Residency Agreement describes the Assessment

16  process:

17      The level of assisted living services required by the Resident is determined through
        an assessment ("Assessment") of the Resident.  The Assessment is performed by
18      designated team members and includes an evaluation of each Resident's specific
        needs.  It covers areas such as: mobility, skin care, eating habits, oral hygiene,
19      continence, cognitive behavior, and medication.  This Assessment, along with the
        Physician's Report, provides the basis for identifying the Resident's Service Level.
20

21      24.     Section I.E. describes the "Resident Service Plan" that is developed based

22  on the Assessment.  It provides, "The service plan will outline the services the Resident is

23  to receive."

24      25.     Section I.F. provides:

25      If the Resident's condition changes so that the previously assessed level of services
        is no longer appropriate, the Community will reevaluate the Resident's needs to
26      determine which level of service is appropriate and notify the Resident/Responsible
        Party of such reevaluation.  The rate charged will vary according to the level of
27      service provided.

28      26.     Section III.F. emphasizes that residents who require more services will be

7

1  charged higher fees. "A change in the level of service is <u>not</u> considered a change of fees or

2  charges. Rather, it is an increase in services which are subject to the higher fees

3  corresponding to those services."

4        27.     The Residency Agreement, on page 18, includes a "Schedule of Community Fees."

5  It lists "Service Level Fees" including "Assisted Living Select," "Assisted Living Plus," "Assisted

6  Living Plus Plus," "Reminiscence Program Fee," "Reminiscence Plus Plus," etc., with

7  corresponding daily rates ranging from $18 to $98. The same page indicates that residents'

8  assessments result in a numerical value: "Enhanced Care fees are variable, **depending on the**

9  **needs of the resident as determined by the resident's assessment <u>score</u>** [emphasis added]."

10        28.     In the Agreement, Sunrise describes the various service levels, which vary

11  by resident based on the "nature and extent of services provided." Likewise, the

12  Individualized Service Plan prepared for each resident describes the "level of assistance"

13  required from staff to provide the services Sunrise has determined are necessary to meet

14  the resident's needs. For example, under the category "Bathing," a service plan might list

15  the following:

16      "Needs step-by-step cuing while bathing, Needs standby assistance while bathing.

17      ... Be sure bathroom is warmed up prior to shower time, all needed supplies, towels, shampoo, lotions are ready for her. ... [O]ffer her privacy but stay stand by [sic] to keep her safe and be sure to cue her for full cleaning. Give simple step by

18      step instruction if she appears confused on the process and assist as needed."

19        29.     The Residency Agreement and Individualized Service Plans highlight the

20  obvious—care can only be provided by people/staff, and the reasonable consumer understands that

21  a resident who has additional needs requires additional staff time. Thus, a reasonable consumer

22  would interpret Sunrise's promise of increased services as residents' needs increase, and the

23  corresponding increase in fees, to include additional staff time to provide those services. The

24  reasonable consumer would not agree to pay increased fees if she knew that such fees had no

25  relationship to staff time provided.

26        30.     Sunrise's website and a standardized brochure provided to prospective residents

27  explicitly links staffing levels to the assessed needs of its residents. A brochure states, "We adjust

28  staffing 365 days a year based on the number of residents and the care they need." The website

lists "Frequently Asked Questions", including "What is your staff to resident ratio?

> A: Our staffing ration is variable and adjusted constantly based on the needs of our residents at each community. Every resident's Individualized Service Plan (ISP) outlines the type of care they need, which is delivered by a team of Designated Care Managers who also learn each resident's likes, dislikes and preferences, helping to anticipate a resident's needs before they arise. Our residents and their care managers build very strong bonds."

The website further provides, "Team members are available 24-hours a day for help with bathing, dressing, medication reminders, or other daily activities, relieving residents of the stress of day-to-day chores and giving them more time to focus on choosing activities to participate in, meal selection, and more."

31.   In another standardized brochure entitled, "Senior Living: A Resource Guide," that is provided to prospective residents, Sunrise lists "important questions" that a prospective residents should ask "when researching and visiting senior living communities." The list of questions includes, "How does the community meet residents' needs as they change over time? Is staffing adjusted to ensure that quality of care remains consistent through such changes?"

32.   A reasonable consumer would infer from all of Defendant's representations that Sunrise would consider the resident assessment system in setting staffing levels. Sunrise's clear message to the consuming public, including Plaintiff and the putative class, through all of its corporate materials is that staffing levels matter and are part of the value they will receive in exchange for their fees at Sunrise facilities.

33.   Because these representations are presented through form contracts and other standardized corporate materials, potential and current residents of Sunrise facilities reasonably understand them to be representations of the policies and procedures followed by Sunrise both for determining the needs of facility residents and for setting staffing levels at each of its California facilities.

34.   Based on these representations, Plaintiffs, the putative class members, and the general consuming public reasonably expect that Sunrise uses its resident assessment system to ensure adequate staffing and meet all current residents' needs.

CLASS ACTION COMPLAINT

**Sunrise's Non-Disclosure and Concealment**

36.     Contrary to the express and implied representations in the Sunrise standardized contract and other uniform written statements, Sunrise does not use the resident assessment system or consider assessment scores in setting or providing facility staffing.  Sunrise conceals this material fact from the residents, their family members, and the general public.

37.     Plaintiffs are informed and believe, and on that basis allege, that Sunrise has the capability to determine the facility staffing levels required to meet the aggregate care scores promised to residents.  With its resident assessment system, Sunrise can calculate the amount and type of staff needed by a facility for the population or group of residents therein viewed as a whole on any given shift based on the evaluated needs and assessed scores of residents.  However, in reality Defendant only uses this resident assessment system to assign Service Levels and charge the corresponding daily rates; it does not use the resident assessment system to set staffing at its facilities.

38.     As reflected in corporate policies and procedures, Sunrise directs its facilities to make meeting labor budgets and operating income targets a paramount concern, regardless of the impact on the care and staffing needs of facility residents.

39.     Sunrises' Executive Directors ("EDs") must adhere to pre-determined budgets – including labor budgets – approved by corporate headquarters for the next fiscal year.  Regardless of changes of needs in the resident population, EDs of Sunrise may not increase these budgets without approval from corporate headquarters.  The ED Job Description states that EDs should "meet[] financial targets with the goal to maximize the owners return," "prepare and adhere to the community's budget," and "manage[] labor and other operating costs in line with budget and revenue."  Sunrise's Assisted Living Coordinators are responsible for "maintain[ing] budgetary guidelines for daily staffing hours and supplies."

40.     As a result of Sunrise's failure to use its resident assessment system and Service Levels in setting staffing at its facilities, staffing is substantially lower than what Sunrise itself has determined is necessary to meet the assessed needs of residents.  Further, because Sunrise's failure to use its residential assessment system for staffing decisions results in lower staffing levels than it

1   has determined are necessary, the residents of Sunrise's facilities run the continuing risk of not

2   having their care needs met and of suffering injury from the lack of care or from other residents

3   who are insufficiently supervised or cared for.

4       41.     The consequences of Sunrise's common policy and standard operating procedure of

5   providing staffing without regard to the assessment scores or Service Levels of its current

6   residents are significant.  They include, but are not limited to: resident falls, injured or sick

7   residents left unattended, elopements, urinary tract infections, slow or no responses to resident call

8   buttons, inconsistent incontinence care resulting in residents sitting in soiled and/or wet briefs for

9   long periods of time, failures to assist with toileting resulting in incontinence, decubitus ulcers,

10  medication errors, and inadequate grooming and hygiene assistance.

**The Misrepresented and Concealed Facts Are Material**

12      42.     Defendant's misrepresentations and the facts it conceals are material to the

13  reasonable consumer.  An important and significant factor in choosing to move oneself or one's

14  relative to a Sunrise facility is the provision of staffing that the facility itself has determined is

15  necessary to meet the assessed needs of all facility residents.  The use of a system that determines

16  and assigns the staffing necessary for a facility based on comprehensive assessments of its

17  residents' care needs, such as the one Sunrise represented it uses, is likely to ensure that those

18  needs are met and will be met in the future.

19      43.     Sunrise's promise to provide the care services (through facility staff) that each

20  resident requires as calculated by the resident assessments conducted by Sunrise is material to

21  prospective residents and their family members.  Further, residents (and their family members)

22  reasonably expect that Sunrise will provide staffing at levels sufficient to meet the assessed needs

23  of facility residents.  Staffing at levels sufficient to provide the care necessary to meet assessed

24  resident needs is a substantial factor (and indeed often the most important factor) in deciding to

25  enter an assisted living facility.  Plaintiffs would not have admitted their family members to

26  Sunrise if they had known that Defendant did not and does not use its resident assessment system

27  and the assessed Service Levels in setting staffing levels at its facilities.   Likewise, members of

28  the putative class would in all reasonable probability not have entered Sunrise's facilities if they

1  had known that Sunrise did not and does not use its resident assessment system and the Service

2  levels generated by it when determining the amount and type of staff at its facilities.

3      44.    This is true even for residents who currently are practically independent. These

4  residents choose an assisted living facility as opposed to remaining at home or moving into an

5  independent living community because they wish to "age in place." Sunrise specifically markets

6  to those individuals on its website by stating it has a "philosophy to encourage residents' ability to

7  age in place." https://www.sunriseseniorliving.com/care-and-services/memory-care/sunrise-

8  reminiscence-program/terrace-club.aspx (last visited on February 14, 2017). Residents who wish

9  to "age in place" may not need significant assistance with their activities of daily living initially

10 upon admission, but they expect to (and will) become more dependent as they age and do not want

11 to move yet again when that happens.

12     45.    A key factor for these residents in selecting Sunrise is that the facility will provide

13 the staffing sufficient to provide the care services that Sunrise itself has determined are necessary

14 to meet assessed residents' needs, both now and as those needs, and corresponding care services

15 fees, increase.

16     46.    Sunrise has a duty to disclose to the consuming public that it does not use its

17 resident assessment system or the Service Levels generated by it to set aggregate staffing levels

18 because of, among other things, the inherent and substantial safety risk to current and future

19 residents from Sunrise's conduct, particularly as Defendant serves a vulnerable population that

20 needs assistance. The non-disclosure is material because Sunrise knows that its conduct risks the

21 safety of its residents. Yet, Sunrise has failed to disclose and actively conceals from residents,

22 prospective residents, and their family members the true facts about how it sets staffing at its

23 facilities.

24              **Barriers to Moving Out**

25     47.    Defendant's misrepresentations affect not only the decision of residents to enter a

26 Sunrise facility, but also the decision to stay there.

27     48.    In choosing assisted living in general and a Sunrise facility in particular, the

28 resident forgoes other options such as his or her former home, a senior community, or other

1    facilities where the resident can try to build a new community.  Once in a facility, there are

2    significant physical, emotional and other burdens for the residents that are triggered if they

3    terminate residency, including impacts such as "transfer trauma."  Sunrise is aware of these

4    burdens, and makes the representations described herein with the knowledge that it will be

5    difficult for residents to leave its facilities once they are enticed to enter based on its

6    misrepresentations.

7            49.     Sunrise also repeats its misrepresentations when it conducts periodic re-

8    assessments of residents.  Often, the facility discovers additional care services needed by the

9    resident that Sunrise uses as a basis for a Service Fee increase.

10           50.     Sunrise thereby unjustly continues to profit from the original fraud by perpetuating

11   its misrepresentations and failures to disclose.

12                       **Named Plaintiffs' Experiences At Sunrise Facilities**

13                       **Carlos Heredia**

14           51.     Carlos Heredia ("Mr. Heredia") lived at Sunrise at Tustin in Santa Ana, California

15   from June 18, 2014 to April 18, 2015.  He died on March 16, 2016.  Plaintiff Audrey Heredia

16   ("Mrs. Heredia") is his surviving wife.  Their daughter, Vivian Heredia ("Vivian"), made health

17   care decisions for Mr. Heredia.  Three weeks before he moved into Sunrise at Tustin, Mr. Heredia

18   moved from his home into another assisted living facility that was not part of the Sunrise chain.

19   During those three weeks, he fell twice.  Vivian believed that he fell because there were not

20   enough staff to help him and that he needed to move immediately to another facility that was

21   better staffed.  They visited Sunrise at Tustin and spoke to the Executive Director.  The Executive

22   Director assured the Heredias that Sunrise at Tustin was staffed appropriately, they would provide

23   Mr. Heredia with individualized care, and his needs would be met.

24           52.     In addition, Sunrise provided Mrs. Heredia and Vivian with the standard contract

25   quoted in detail, *supra,* in paragraphs 24-29.  In short, the contract promised that staff would

26   provide an assessment of Mr. Heredia that would be used to develop a service plan and identify

27   his specific needs.   It promised to provide the services outlined in the service plan.  It also stated

28   that the assessment would be used to identify Mr. Heredia's service level, and that "[t]he rate

1   charged will vary according to the level of service provided." It explained that a change of level is

2   an increase in services "which are subject to the higher fees corresponding to those services."

3   Exhibit 1 of the contract provided that Mr. Heredia's service level was "Enhanced Care" and that

4   he would be charged $77 a day for this level of care, in addition to "Base Fees," "Medication

5   Management" fees, and "Pendant" fees, for a total of $236 a day.

6        53.    Mrs. Heredia and Vivian reviewed the contract and reasonably understood its

7   representations regarding the assessment, service level, service plan, and fee structure to mean that

8   staff would assess Mr. Heredia, identify his needs, and provide the services necessary to meet his

9   needs. They further reasonably understood that as Mr. Heredia's needs and services increased, he

10  would require more staff time, and that Sunrise would provide the increased staff time in exchange

11  for more fees.

12       54.    In reliance on all of Sunrise's representations, Mrs. Heredia entered the Tustin

13  facility on June 18, 2014 and signed a Sunrise admission contract. Mr. Heredia paid a "Move-in

14  Fee" of $4,050.

15       55.    Approximately six weeks later, the Heredias began noticing problems related to

16  understaffing. Vivian asked staff if they could occasionally take her father to the courtyard for

17  some fresh air, but they refused stating there were not enough staff available to do that. Vivian

18  was disturbed when she heard another resident yelling for help over and over for approximately 15

19  to 20 minutes. At the end of July 2014, Mr. Heredia fell, and received stitches in his face, after

20  staff did not respond to his call-pendant and he was forced to transfer alone from his bed to his

21  wheelchair. In October 2014, Vivian noticed that staff was not taking Mr. Heredia's blood

22  pressure as frequently as Sunrise had represented they would do and as ordered by Mr. Heredia's

23  physician; Vivian eventually had to hire an outside provider to deliver this service. Mr. Heredia

24  often complained to Vivian that staff was not responding when he called them for help getting to

25  the toilet, which made him so uncomfortable that his physical therapist recommended that he keep

26  a trash can next to his bed for urinating. Vivian also personally observed that staff did not always

27  respond to his call-pendant, on one occasion for up to two hours, requiring Vivian to leave the

28  room and find staff herself. Mr. Heredia fell approximately six times or more because he tried

1  ambulating unassisted when staff did not timely respond to his calls.

2        56.    In January 2015, Sunrise sent Mrs. Heredia a "Service & Health Update" that gave

3  Mr. Heredia a total of 12 Service Points, and placed him in the "Assisted Living Enhanced" level

4  of care.

5        57.    On February 19, 2015, Sunrise increased Mr. Heredia's service points from 12 to

6  15 and his service fees from $77 a day to $99.  A Service Health Update dated April 5, 2015

7  delineating the 15 points showed that Sunrise had doubled his service points from 1 to 2 points

8  each for mobility, grooming, and assistance to the bathroom because he required "significantly

9  more time" for each task.  Despite the increase in points and related fees, Mr. Heredia did not

10  receive increased attention from staff.

11        58.    Whenever Vivian approached management and other staff members because her

12  father was not receiving the care for which he was being charged, they would reassure Vivian that

13  her concerns would be addressed and her father's needs would be met.  Sunrise never disclosed to

14  the Heredias that its Service Level system was not supported by sufficient numbers of staff and

15  was geared only toward increasing revenue.

16        59.    In April 2015, Mr. Heredia nearly died from a medication error, which often occurs

17  at facilities that are understaffed.  He suffered from an overdose after he received prescription

18  opiates that were not prescribed to him.  Vivian moved her father out of Sunrise immediately after

19  the overdose.

20  **Ruby Mancuso**

21        60.    Ruby Mancuso ("Ms. Mancuso") lived at Sunrise of Oakland Hills, in Oakland,

22  California from December 26, 2012 to January 2016.  She died on April 30, 2016, in another

23  facility.  Her daughter, Corbina Mancuso made healthcare decisions for her mother and chose

24  Sunrise of Oakland Hills over other facilities after touring the facility and meeting with the

25  marketing staff who promised her that her mother's needs would be met.   On December 13,

26  2012, Ms. Mancuso paid a Move-In Fee of $4,000 to hold her space at the facility.

27        61.    Prior to move-in, the Executive Director of the facility provided Corbina with the

28  standard contract quoted in detail, *supra,* in paragraphs 24-29.  In short, the contract promised that

1  staff would provide an assessment of Ms. Mancuso that would be used to develop a service plan

2  and identify her specific needs.  The contract included Sunrise's promise to provide the services

3  outlined in the service plan.  The contract also stated that the assessment would be used to identify

4  Ms. Mancuso's service level, and that "[t]he rate charged will vary according to the level of

5  service provided."  It explained that a change of level is an increase in services "which are subject

6  to the higher fees corresponding to those services."  Exhibit 1 to the contract provided that Ms.

7  Mancuso's  medication management level was "Level 2" and that she would be charged $18 a day

8  for this service, in addition to "Base Fees," for a total of $97 a day, plus the Move-In Fee of

9  $4,000.  Later in Ms. Mancuso's residency, she was also charged for "Service Level Fees."

10       62.     Corbina reviewed all of the representations in the contract.  She reasonably

11  understood that as her mother's care needs increased, Sunrise staff would perform an assessment

12  to determine what level of care Ms. Mancuso would receive, and that staff would provide the level

13  of care they assessed as needed.  She understood that Ms. Mancuso would pay more as her level of

14  care and need for staff time increased.  She also reasonably understood that Sunrise would provide

15  enough staff to deliver the services for which she would be charged. Corbina relied on all of

16  Sunrise's representations when she moved her mother into the facility on December 26, 2012.

17       63.     Towards the end of 2013, Ms. Mancuso's needs for assisted living services began

18  to increase.  Beginning in January 2014, Sunrise sent Corbina several "Service and Health

19  Update" forms stating she would be charged Service Level Fees.  The forms represented that Ms.

20  Mancuso would receive standby assistance for mobility and dressing, scored as a total of two

21  service points, and placed her in the "Assisted Living Select Program – Daily."  Sunrise charged

22  her $19 a day for this service level, on top of base fees of $86 a day and medication service fees of

23  $18 a day.  During the first half of 2014, Corbina did not notice any problems with Sunrise's

24  delivery of the specific services it promised in the Service and Health Updates.

25       64.     Over time, Corbina began to notice that the facility was understaffed and not

26  providing promised care.  When Corbina notified the Executive Director of her concerns, Corbina

27  was told in an email that all residents "are well care for and feel safe in our community."  But the

28  staffing conditions did not improve and, on one occasion, another resident physically struck Ms.

1   Mancuso during an unsupervised bridge game in the common area.  Corbina also noticed that

2   residents spent most afternoons watching television or sitting idle because there were no activities,

3   or when there were activities, there was not enough staff to encourage and escort each resident to

4   join them.

5        65.     Further, the facility provided conflicting communications regarding Ms.

6   Mancuso's services.  In December 2014, Sunrise sent Corbina a Service and Health Update stating

7   that Ms. Mancuso was now independent for dressing and mobility, which was not true, gave her

8   no Service Points, and stated the Service Level was "N/A."  A Service and Health Update dated

9   January 2015 again misstated that she was independent for dressing, but required reminders for

10  mobility, gave her no Service Points, and again stated her Service Level was "N/A."  Nonetheless,

11  beginning in November 2014, Sunrise increased her Service Level to "Assisted Living Plus" and

12  service fees to $38 a day.  Sunrise did not send Corbina any more Service Health Updates, but did

13  send her an Individualized Service Plan dated April 3, 2015.  The Individualized Service Plan

14  represented that Sunrise would provide staffing assistance with mobility, grooming, bathing,

15  assistance to the bathroom, and dressing.  For example, the Plan stated Sunrise would "provide

16  assistance of 1 team member to promote dignity and safety" with bathing.

17       66.     By 2015, it was clear to Corbina that Sunrise only inconsistently and sporadically

18  provided the services it promised in the Service and Health Updates and the Individualized Service

19  Plan.  Staff did not consistently help Ms. Mancuso get dressed.  On one occasion that year,

20  Corbina left her mom alone in bed in the evening fully dressed only to find her still fully dressed

21  in the same clothes in the early morning.  Ms. Mancuso reported several times to Corbina that staff

22  was not helping her get dressed.  Also during that year, Corbina pushed her mother's call-pendant

23  for help with dressing her mother, waited at least 15 minutes without a response, pushed the

24  pendant again and waited 30 minutes more, before eventually going out into the hallway to find

25  someone.  On other occasions, staff was too busy to notice when Ms. Mancuso had lost her glasses

26  and hearing aid – Corbina was the first to notice after Ms. Mancuso had been without them well

27  into the day.  A few times Corbina discovered that staff and her mother had lost her walker even

28  though her Individualized Service Plan stated, "Ruby uses a walker for support, and will need

1    reminding to use it at all times, especially if she's outside her room." Ms. Mancuso fell at least

2    once in the dining room when she should have been assisted by staff.

3         67.    In 2015, Corbina noticed other residents who were not receiving help from staff.

4    She saw a man fall out of his wheelchair onto the floor.  She pushed the call button for help from

5    staff, and no one responded.  She attempted to help the man off the floor, but was unable to lift

6    him.  She went looking for a staff member, and the only caregiver she could find would not help

7    because she was "on break."  The man was left on the floor unattended for at least 20 to 30

8    minutes before a caregiver came to help him.  On other occasions, she heard residents calling from

9    their rooms for help and did not see any staff responding.

10        68.    Although Corbina was concerned about inadequate staffing, she did not want to

11   move her mother to another assisted living facility because she was afraid that such a move could

12   result in further decline of her mother's health.  She was also afraid that complaining too much

13   about problems at Sunrise could result in retaliation or poor treatment of her mother.  Any time

14   that she did complain, Sunrise staff reassured that all problems would be addressed.  Sunrise never

15   disclosed to Corbina that staffing levels were not determined by resident assessments, Service

16   levels, or Service points.   She had no way of discovering that Sunrise set staffing levels based on

17   fixed labor budgets.

18        69.    In approximately January 2016, Sunrise told Corbina that her mother could only

19   stay in the facility if she moved into the Memory Care unit at considerably more expense.

20   Sunrise's only justification for this move was that Ms. Mancuso was going into other residents'

21   rooms uninvited.  Sunrise did not have enough staff to try any interventions short of requiring her

22   to move to Memory Care.  Corbina did not believe Memory Care was necessary but was

23   eventually forced to move her mother to a different skilled nursing facility.

24   <center>**CLASS ALLEGATIONS**</center>

25        70.    The Named Plaintiff brings this action as a class action pursuant to Cal. Code of

26   Civ. Proc. section 382 as set forth below.

27        71.    **Class Definition.**  This action is brought on behalf of the Named Plaintiffs and all

28   similarly situated persons who resided or reside at one of the California assisted living facilities

<center>18</center>

1  owned and/or operated by Sunrise under the Sunrise name from June 27, 2013 through the present

2  (the "Class Period"), and who contracted with Sunrise for services for which Sunrise was paid

3  money.

4       72.    Excluded from the above-referenced class are the officers, directors, and employees

5  of Defendant, and any of Defendant's shareholders or other persons who hold a financial interest

6  in Defendant.  Also excluded is any judge assigned to hear this case (or any spouse or family

7  member of any assigned judge) or any juror selected to hear this case.

8       73.    This action is brought as a class action and may properly be so maintained pursuant

9  to Cal. Code of Civ. Proc section 382 and applicable case law.  In addition to injunctive relief, this

10  action seeks class wide damages based on Defendant's misrepresentations and misleading

11  statements and material omissions alleged herein.  This action does not seek recovery for personal

12  injuries, emotional distress, or bodily harm that may have been caused by Defendant's conduct

13  alleged herein.

14       74.    **Ascertainability.**  Members of the class are identifiable and ascertainable.

15  Defendant retains admissions contracts, Resident Services Plans, and billing statements for all

16  persons who currently reside or resided at Sunrise facilities during the class period.  Thus,

17  Defendant's own records will reliably identify class members.

18       75.    **Impracticability of Joinder (Numerosity of the Class).**  Members of the class are

19  so numerous that their individual joinder herein is impracticable.  The precise number of members

20  of the class and their addresses are presently unknown to Plaintiffs.  Defendant currently owns

21  and/or operates approximately 52 assisted living facilities in California.  The precise number of

22  persons in the class and their identities and addresses may be ascertained from Defendant's

23  records.

24       76.    **Questions of Fact and Law Common to the Class.**  Numerous important

25  common questions of law and fact exist as to all members of the class and predominate over the

26  questions affecting only individual members of the class.  These common legal and factual

27  questions include without limitation:

28           (a)    whether Defendant has violated and continues to violate the Consumer

1   Legal Remedies Act, California Civil Code section 1770 et seq. by falsely representing that

2   Sunrise uses its resident assessment system and the Service Levels generated by it to determine

3   and provide staffing at its California assisted living facilities, when, in fact, Defendant does not

4   and has no intention to do so;

5       (b) whether Defendant has violated and continues to violate the Consumer

6   Legal Remedies Act, California Civil Code section 1770 et seq. by promising residents that it will

7   provide care and services when Defendant knows that its standard operating procedure and

8   corporate policy of providing pre-determined staffing at its facilities, without regard to the

9   resident assessment system and Service Levels, precludes it from providing its residents all of the

10  care they have been promised and places all residents at an inherent and substantial risk that they

11  will not receive the services they have paid for on any given day;

12      (c) whether Defendant's misrepresentations, misleading statements and

13  omissions regarding the staffing of its facilities as alleged herein were and are material to the

14  reasonable consumer;

15      (d) whether a reasonable consumer would be likely to be deceived by

16  Defendant's misrepresentations, misleading statements, or material omissions;

17      (e) whether by making the misrepresentations, misleading statements, and

18  material omissions alleged in this Complaint, Defendant has violated and continues to violate the

19  Consumer Legal Remedies Act;

20      (f) whether by making the misrepresentations, misleading statements, and

21  material omissions alleged in this Complaint Defendant violated and continues to violate

22  California Business & Professions Code section 17200, et seq. ("UCL");

23      (g) whether Defendant had exclusive knowledge of material facts not known or

24  reasonably accessible to the Plaintiffs and the class;

25      (h) whether the Plaintiffs, the class, and the consuming public were likely to be

26  deceived by the foregoing concealment and omission;

27      (i) whether the Plaintiffs, the class, and the consuming public have a

28  reasonable expectation that Defendant will use its resident assessment system to determine and

1 | provide staffing at its facilities;

2 |       (j)     whether the Plaintiffs, the Class, and the consuming public have a

3 | reasonable expectation that Defendant will provide staffing at its facilities to meet the aggregate

4 | care needs of the residents in its facilities as determined by Defendant's resident assessment

5 | system;

6 |       (k)     whether Defendant's misrepresentations, its misleading statements, its

7 | failures to disclose, and its concealment of its true policies, procedures and practices regarding

8 | how its staffs its facilities violated the CLRA and the UCL;

9 |       (l)     whether Defendant has engaged and continues to engage in a pattern and

10 | practice of unfair and deceptive conduct in connection with the management, administration, and

11 | operation of its California assisted living and memory care facilities;

12 |       (m)     whether Defendant has violated and continues to violate the UCL by

13 | violating the CLRA and California W&I Code section 15610.30 during the Class Period;

14 |       (n)     whether Defendant has committed financial elder abuse under California

15 | W&I Code section 15610.30 by taking, secreting, appropriating, obtaining, and/or retaining

16 | money from elders and dependent adults for a wrongful use and/or with the intent to defraud

17 | them;

18 |       (o)     whether Plaintiffs and the members of the Class have sustained injury;

19 |       (p)     whether Plaintiffs and the members of the Class are entitled to damages,

20 | and the nature of such damages; and,

21 |       (q)     whether Plaintiffs and the members of the Class are entitled to restitution,

22 | declaratory and injunctive relief and/or other relief, and the nature of such relief.

23 |     86.    **Typicality.**  The claims of the Named Plaintiffs are typical of the claims of the

24 | Class.  As alleged above, Defendant misrepresented to Plaintiffs and the class members and/or

25 | their family members that Defendant uses its resident assessment system to determine the care

26 | services to be provided by facility staff and to assess and bill residents for corresponding Service

27 | Levels.  The resident assessment system, and the Service Levels generated by it,  allow Defendant

28 | to determine and provide the aggregate staffing Defendant has determined is necessary to meet

the assessed needs of its residents, but in fact, Defendant does not use this critical information in budgeting for or scheduling staff at its California facilities.  Rather, Defendant has a policy of fixed staffing, regardless of the results generated by its resident assessment system, which results in residents not receiving all of the care they have paid for and/or being subjected to the inherent risk that, on any given day, facility staffing will be insufficient to provide the promised care for all residents.  Further, as alleged above, Defendant has failed to disclose and concealed this material fact from the Named Plaintiffs and the class. Plaintiffs' claims are typical of the claims of the proposed class in the following ways: 1) Plaintiffs are members of the proposed class; 2) Plaintiffs' claims arise from the same uniform corporate policies, procedures, practices, and course of conduct on the part of Defendant; 3) Plaintiffs' claims are based on the same legal and remedial theories as those of the proposed class and involve similar factual circumstances; 4) the injuries suffered by the Named Plaintiffs are similar to the injuries suffered by the proposed class members; and 5) Plaintiffs seek a common form of relief for themselves and the members of the class.

87.   **Adequacy**.  The Named Plaintiffs are adequate representatives of the class on whose behalf this action is prosecuted.  Their interests do not conflict with the interests of the class.  Also, they have retained competent counsel with extensive experience in class action and senior care litigation who will prosecute this action vigorously.

88.   **Predominance**.  With respect to Plaintiffs' claims under the CLRA, the UCL, and the Elder Abuse Act, class certification is appropriate because significant questions of law or fact common to class members, including but not limited to those set forth above, predominate over any questions affecting only individual members of the proposed class.

89.   **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

(a)   individual claims by the class members would be impracticable because the costs of pursuing such claims would far exceed what any individual class member has at stake;

(b)   relatively little individual litigation has been commenced over the controversies alleged in this Complaint and individual class members are unlikely to have an

1   interest in separately prosecuting and controlling individual actions;

2           (c)     the concentration of litigation of these claims in one forum will achieve

3   efficiency and promote judicial economy;

4           (d)     the proposed class is manageable, and no difficulties are likely to be

5   encountered in the management of this class action that would preclude its maintenance as a class

6   action;

7           (e)     the proposed class members are readily identifiable from Defendant's own

8   records; and,

9           (f)     prosecution of separate actions by individual members of the proposed class

10   would create the risk of inconsistent or varying adjudications with respect to individual members

11   of the proposed class that would establish incompatible standards of conduct for Defendant.

12       90.     Without a class action, Defendant will likely retain the benefit of its wrongdoing

13   and will continue in its illegal course of conduct which will result in further damages to Plaintiffs

14   and the proposed class.

15   **FIRST CLAIM**

16   **CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (Cal. Civ. Code § 1750 *et seq.*)**

17       91.     Plaintiffs refer to, and incorporate herein by reference, all preceding paragraphs.

18       92.     Plaintiffs and the class members are "senior citizens" and/or "disabled persons" as

19   defined in California Civil Code sections 1761(f) and (g).  They are also "consumers" as defined

20   in California Civil Code section 1761(d).

21       93.     Defendant is a "person" as defined under California Civil Code section 1761(c).

22   The assisted living and memory care services provided by Defendant constitute "services" under

23   California Civil Code section 1761(b).  The agreement by Plaintiffs and the putative class

24   members to provide new resident services fees and monthly payments to Defendant in exchange

25   for assisted living and memory care services constitute a "transaction" under California Civil Code

26   section 1761(e).

27       94.     In its uniform resident contracts presented to prospective residents and their family

28   members, Defendant represented and continues to represent that Sunrise will provide care services

23

1  (through its facility staff) that are sufficient to meet the needs of each resident, as determined by

2  Sunrise's resident assessment system and confirmed in the Service Levels assigned to each

3  resident. That same representation is made in Sunrise's Individualized Service Plans for residents

4  and other standardized corporate materials.  As alleged herein, these uniform corporate

5  representations are false and misleading, and are likely to deceive the reasonable consumer.

6       95.     Contrary to Sunrise's uniform misrepresentations and misleading statements,

7  Sunrise does not use its resident assessment system and Service Levels generated by it in setting

8  staffing levels necessary to provide the services to residents it assessed as required, but instead

9  uses predetermined labor budgets designed to meet corporate profit goals. Sunrise facilities use a

10  predetermined staffing schedule that rarely, if ever, changes, despite changes in the assessment

11  scores or Service Levels of the current residents.  Sunrise does not disclose and actively conceals

12  this corporate policy and practice from current and prospective residents and their family

13  members.

14       96.     The named Plaintiffs, through their legal representatives and power of attorneys,

15  and the putative class members considered material Sunrise's promise to provide care services

16  (through its facility staff) that would be sufficient to meet the needs of each resident, as

17  determined by Sunrise's resident assessment system.  If the named Plaintiffs and their

18  representatives had known the true facts, they would not have agreed to place them in a Sunrise

19  facility.  If the putative class members had known the true facts, they would in all reasonable

20  probability not have agreed to enter Sunrise.

21       97.     The facts that Sunrise misrepresents, fails to disclose and actively conceals are

22  material and are likely to deceive the reasonable consumer.  Consumers choose an assisted living

23  facility because they need care and/or wish to age in place as their care needs change.  Residents

24  and their family members consider the overall staffing levels provided by the assisted living

25  facility they select to be of great importance. The use of a system such as the one Sunrise

26  represents it uses, which ensures adequate staffing at the facilities by basing staffing decisions on

27  resident assessments and personal care needs, is also, therefore, of great importance to residents

28  and their family members and is a material factor in their decision to choose Sunrise and to pay

1    Sunrise the amounts of money that it charges for occupancy and services.

2        98.    Residents and their family members would consider material Defendant's uniform

3    corporate policy and practice of not using its resident assessment system and Service Levels

4    generated by it to set and staff its facilities.  They would consider material Defendant's policy and

5    practice of maintaining predetermined staffing schedules regardless of increases in the assessed

6    needs and corresponding Service Levels assigned to current residents.  Plaintiffs and the putative

7    class members could not reasonably have been expected to learn or discover these non-disclosed

8    facts, and in fact, Sunrise affirmatively concealed them.

9        99.    Sunrise has violated and continues to violate the Consumers Legal Remedies Act,

10   California Civil Code section 1750 et seq. ("CLRA") in at least the following respects: (a) in

11   violation of section 1770(a)(5), Sunrise has misrepresented, failed to disclose and concealed the

12   true characteristics and/or quantities of services provided at its California facilities; (b) in violation

13   of section 1770(a)(7), Defendant has misrepresented, failed to disclose and concealed the true

14   standard, quality and/or grade of services provided at its California facilities; (c) in violation of

15   section 1770(a)(9), Defendant has falsely advertised that it will provide staffing based on resident

16   assessments and the Service Levels generated by those assessments, knowing that it does not

17   intend to provide the services as advertised; and (d) in violation of section 1770(a)(14), Defendant

18   has represented that the agreement signed by residents and/or their representatives, and under

19   which they pay their monthly rate, confers on residents the right to reside in a facility that provides

20   staffing based on the level of care its own resident assessment system has determined is necessary

21   to provide the services each resident needs and for which residents are charged, when in fact,

22   Defendant does not use its resident assessment system and related Service Levels when

23   determining and providing facility staffing.

24       100.   These misrepresentations, misleading statements, acts, practices, and omissions by

25   Defendant are and were intended to induce and lure elderly and dependent adult residents and their

26   family members into agreeing to be admitted to Defendant's facilities and to pay new resident

27   services fees and monthly rates based on Defendant's resident assessment system and assessed

28   Service Levels.

101.    Defendant made the written misrepresentations and misleading statements alleged herein through various uniform means of communication, including without limitation, the admission agreement, service and health updates, individualized service plans, standardized corporate marketing and promotional materials, and other written corporate materials disseminated to the public in connection with Defendant's services.  These representations were made directly to the named Plaintiffs, putative class members and their family members and/or representatives by Sunrise in its standard resident admission contract and reinforced by the uniform means of communication listed above.

102.    In addition to its affirmative misrepresentations,  Defendant failed to disclose and concealed from Plaintiffs, the putative class members, and their family members that it does not use its resident assessment system to determine or provide facility staffing at levels sufficient to meet the assessed care needs of facility residents, but instead maintains predetermined levels of staffing, regardless of changes in the aggregate assessment scores or Service Levels of the facility residents and regardless of whether the residents' assessed care needs are being met.

103.    Sunrise had exclusive and superior knowledge of material facts not known to the named Plaintiffs, class members, or the general public at the time of the subject transactions and actively concealed these material facts.

104.    Sunrise had exclusive and superior knowledge of its corporate policy and practice of ignoring its resident assessment system and related Service Levels in setting staffing levels. Sunrise knew that its failure to provide staffing based on the levels of care that Sunrise had itself determined was necessary to provide the services for which it charged its residents posed a substantial health and safety risk to the named Plaintiffs and class members.  Sunrise intentionally concealed, suppressed, and/or failed to disclose the true facts with the intent to defraud the named Plaintiffs and putative class members. The named Plaintiffs and the putative class members did not know these material undisclosed facts and could not reasonably have been expected to discover them.

105.    As a direct and proximate result of the Defendant's conduct, Plaintiffs and the putative class members suffered actual damages.  Specifically, Plaintiffs and the class members

1  paid money to Defendant, in the form of the new resident fee (called a "Move-In Fee"), their

2  initial monthly fees, and additional monthly fees, paid in exchange for residency and services in a

3  facility that was falsely represented to be staffed based on Sunrise's residential assessment and

4  care level system.  Plaintiffs and the class members paid a premium for the misrepresented

5  services, and would not have entered Sunrise's facilities and made payments to Sunrise had they

6  known the truth about Sunrise's policies and practices for staffing its assisted living facilities.

7  Members of the class continue to pay monthly fees based on their assessed Service Levels.

8      106.    As a further direct and proximate result of Defendant's failure to staff its facilities

9  as represented, *i.e.* based on residents' needs as determined through its comprehensive

10  assessments, Plaintiffs and the class members have been forced to reside in facilities that have less

11  staff than necessary to satisfy their care needs, as determined by Sunrise itself. As a result of

12  Sunrise's policy of staffing its facilities according to pre-determined labor budgets which do not

13  permit staffing increases, regardless of increases in the overall care needs and assessed points of

14  current residents, it is not possible for the needs of all residents to be met, and there is a substantial

15  likelihood that each resident, at any time, will not receive the care Sunrise has determined

16  necessary and promised to provide. Plaintiffs and the class members also face the substantial risk

17  that they will suffer physical injuries from such lack of care and/or from other residents who are

18  insufficiently supervised or cared for.

19      107.    Sunrise's conduct presents a continuing threat of substantial harm to the public in

20  that, among other things, Sunrise continues to misrepresent how it uses its resident assessment

21  system and how it determines and provides staffing at its facilities.  Despite the knowledge that

22  Sunrise does not staff its facilities based on the resident assessments and assessed Service Levels,

23  Defendant continues to induce elderly and vulnerable citizens to enter its facilities. Additionally,

24  the risk of harm to the class members from Defendant's conduct is substantial.  Accordingly,

25  Plaintiffs seek an injunction that requires that Defendant immediately cease the CLRA violations

26  alleged herein, and to enjoin it from continuing to engage in any such acts or practices in the

27  future.  Additionally, Plaintiffs seek an injunction requiring Defendant to disclose to Plaintiffs, the

28  putative class members, and the consuming public that Sunrise does not staff its facilities based on

the results of resident assessments but instead maintains staffing levels based on pre-determined labor budgets, regardless of changes in the overall care needs and assessed care points of current residents.

108.    In accordance with Civil Code section 1782(a), Plaintiff has provided Defendant with notice and an opportunity to address the violations alleged herein.   If Defendant fails to cure the violations within the statutory time period, Plaintiff will amend the complaint to seek CLRA damages as authorized under Civil Code section 1782(d).

## SECOND CLAIM FOR UNLAWFUL, UNFAIR AND DECEPTIVE BUSINESS PRACTICES (Cal. B&P Code §17200 et seq.)

109.    Plaintiffs refer to, and incorporate herein by this reference, all preceding paragraphs.

110.    Defendant has engaged in unlawful business acts and practices.  Such acts and practices constitute unfair business practices in violation of California Business and Professions Code section 17200 *et seq.*

111.    In particular, Defendant has engaged in unlawful business acts and practices by violating numerous laws, statutes, and regulations including, without limitation:

(a)    Systematically and uniformly representing to the residents of its assisted living facilities in California, family members and the public that Sunrise uses its resident assessment system and related Service Levels to determine and provide facility staffing, when in fact, it did not and never intended to do so, in violation of California Business & Professions Code section 17500, *et seq.* and California Civil Code section 1770, *et seq.*; and

(b)    Taking, secreting, appropriating, obtaining, and retaining the funds of elders and dependent adults for a wrongful use and/or with the intent to defraud in violation of California W&I Code section 15610.30.

112.    By virtue of the conduct alleged herein, Defendant has also engaged in fraudulent business practices. Members of the general public (including without limitation persons admitted to and/or residing in Sunrise's California assisted living and memory care facilities during the

1    Class Period, and their family members and/or representatives) have been and are likely to be

2    deceived by Defendant's misrepresentations and failures to disclose as alleged herein.

3        113.    The acts and practices of Defendant also constitute unfair business acts and

4    practices within the meaning of California Business & Professions Code section 17200, *et seq.*, in

5    that the conduct alleged herein is immoral, unscrupulous, and contrary to public policy, and the

6    detriment and gravity of that conduct outweighs any benefits attributable to such conduct.

7        114.    Defendant's misrepresentations, misleading statements, acts, practices, and

8    omissions were intended to induce and lure elderly and dependent adult residents and their family

9    members into agreeing to be admitted to Defendant's facilities and to pay a new resident services

10   fee and monthly rates to live in an assisted living facility that determines and provides staffing

11   according to the staff time and type of staff Defendant has determined is necessary to provide the

12   services identified in its resident assessments.

13       115.    Defendant made these misrepresentations and misleading statements through

14   various uniform means of written corporate communications, including without limitation, the

15   admission agreement, service and health updates, individualized service plans, marketing and

16   promotional materials, Defendant's corporate website, and other materials disseminated to the

17   public from its corporate headquarters in connection with Defendant's services.  These

18   representations were made directly to the named Plaintiffs, class members and their family

19   members and/or representatives by Defendant in its standard resident contracts and reinforced by

20   the uniform means of communication listed above.

21       116.    In addition to its affirmative misrepresentations that Sunrise uses its resident

22   assessment system to determine and provide facility staffing in accordance with residents'

23   assessed needs, Defendant concealed from Plaintiffs, the putative class members, and their family

24   members that Defendant does not use its resident assessment system to set or provide facility

25   staffing but instead maintains predetermined facility staffing levels regardless of changes in the

26   overall assessed Service Levels and Service Points of current residents.

27       117.    Defendant had exclusive and superior knowledge of material facts not known to

28   the named Plaintiffs, putative class members, or the general public at the time of the subject

29

1   transactions and actively concealed these material facts.

2       118.    Defendant had exclusive and superior knowledge of its corporate policy and
3   procedure of ignoring the resident assessments and corresponding Service Levels and Service
4   Points in setting staffing levels.  Sunrise also knew that its failure to provide staffing based on the
5   levels of care that Sunrise had itself determined as necessary to provide the services for which it
6   charged its residents posed a substantial health and safety risk to the named Plaintiffs and class
7   members.  Sunrise intentionally concealed, suppressed and/or failed to disclose the true facts with
8   the intent to defraud the named Plaintiffs and putative class members. The named Plaintiffs and
9   the putative class members did not know these material undisclosed facts and could not reasonably
10  have been expected to discover them.

11      119.    As a direct and proximate result of Defendant's conduct, Plaintiffs, the class
12  members, and members of the general public (including without limitation persons admitted to
13  and/or residing in the facilities, and their family members and/or representatives) have been
14  harmed and continue to be harmed.  Among other things, they paid money to Defendant to enter
15  the facility and for services that were substandard to those promised by Defendant.   Accordingly,
16  Plaintiffs and the putative class members are entitled to restitution.

17      120.    Additionally, Plaintiffs seek an injunction that requires that Defendant immediately
18  cease acts of unlawful, unfair, and fraudulent business acts or practices as alleged herein, and to
19  enjoin Defendant from continuing to engage in any such acts or practices in the future.  Plaintiffs
20  and the putative class members also seek reasonable attorneys' fees, costs and expenses, and all
21  other remedies permitted by law.

22      **THIRD CLAIM FOR ELDER FINANCIAL ABUSE (Cal. W&I Code §15610.30)**

23      121.    Plaintiffs refer to, and incorporate herein by this reference, all preceding
24  paragraphs.

25      122.    Plaintiffs and the putative class members are and at all times were "elders" as
26  defined under California W&I Code section 15610.27 and/or "dependent adults" as defined under
27  California W&I Code section 15610.23.

28      123.    Defendant entered into a standard agreement with the named Plaintiffs, by and

through their power of attorneys, the putative class members and/or their personal representatives. In these agreements, Defendant represented that Sunrise determines and provides staffing at its assisted living facilities sufficient to meet the needs of its residents as determined by Sunrise's assessments and confirmed in Service Levels used to calculate resident charges. Defendant made this promise in exchange for new resident services fees and monthly payments that it received from the named Plaintiffs and the putative class members. Yet Defendant did not and had no intention of complying with its obligations under the contract. Defendant did not intend to and does not use its resident assessment system and Service Levels generated by it to set or provide staffing at its facilities. Rather, it has a policy and practice of providing pre-determined facility staffing that does not change with increases in resident care needs. This policy and practice precludes Sunrise from providing facility residents with all of the care Sunrise has promised them and for which they are paying Sunrise.

124.    Defendant knew or should have known that such conduct would likely be harmful to Plaintiffs and the putative class members.

125.    Defendant knew or should have known that Plaintiffs and the putative class members had a right to the funds used to pay new resident move-in fees and monthly fees to Defendant.

126.    As such, Defendant took, secreted, appropriated, obtained, and retained the funds of Plaintiffs and the putative class members for a wrongful use and/or with the intent to defraud.

127.    Defendant's conduct was despicable, fraudulent, reckless, and carried out with a willful and conscious disregard for the rights and safety of Plaintiffs and the members of the putative class.

128.    Accordingly, Plaintiffs and the putative class seek an injunction requiring Defendant to disclose to Plaintiffs, the putative class members, and the consuming public that Sunrise does not use its resident assessments or Service Levels to set or provide staffing at its facilities, but instead maintains pre-determined staffing levels, based on fixed labor budgets, which do not change regardless of increases in the overall assessed care needs of current residents.

129.    Plaintiffs and the putative class members also seek compensatory damages,

1  reasonable attorneys' fees, costs and expenses, punitive damages, treble damages pursuant to

2  California Civil Code section 3345, and all other remedies permitted by law.  Plaintiffs do not

3  seek certification of any claims for damages related to any personal injuries, emotional distress, or

4  wrongful death suffered by any member of the class.

## PRAYER

6  WHEREFORE, Plaintiffs pray for judgment as follows:

7  1.    For a Court order certifying that the action may be maintained as a class action;

8  2.    For actual damages according to proof, excepting any damages for personal injury,

9        emotional distress, and/or wrongful death suffered by the named Plaintiff or any

10       class member;

11 3.    For restitution and any other monetary relief permitted by law;

12 4.    For reasonable attorneys' fees, costs, and expenses;

13 5.    For treble damages pursuant to California Civil Code section 3345;

14 6.    For punitive damages;

15 7.    For pre-judgment and post-judgment interest, according to law;

16 8.    For an order requiring that Defendant immediately cease acts that constitute

17       unlawful, unfair and fraudulent business practices, false advertising and violations

18       of the Consumer Legal Remedies Act, Business and Professions Code section

19       17200 *et seq.*, and the Elder Financial Abuse statute as alleged herein, and to enjoin

20       Defendant from continuing to engage in any such acts or practices in the future;

21 9.    Plaintiffs and the class further seek an injunction requiring Defendant to disclose to

22       the putative class members and the consuming public that Sunrise does not use its

23       resident assessment or corresponding Service Levels to set or provide staffing at its

24       facilities; and

25 / / /

26 / / /

27 / / /

28 / / /

CLASS ACTION COMPLAINT

1     10.    For such other and further relief as the Court may deem just and proper.

2                              **JURY TRIAL DEMANDED**

3        Plaintiffs demand a jury trial on all issues so triable.

4   DATED:  June 27, 2017

5                                      _Kelly Knapp_
                                       _____
6                                      Kathryn A. Stebner, State Bar No. 121088
                                       Kelly Knapp, State Bar No. 252013
7                                      George Kawamoto, State Bar No. 280358
                                       **STEBNER AND ASSOCIATES**
8                                      870 Market Street, Suite 1212
                                       San Francisco, CA  94102
9                                      Tel:    (415) 362-9800
                                       Fax:    (415) 362-9801

10                                     Christopher J. Healey, State Bar No. 105798
                                       **DENTONS US LLP**
11                                     600 West Broadway, Suite 2600
                                       San Diego, CA  92101-3372
12                                     Tel: (619) 235-3491
                                       Fax: (619) 645-5328

13
                                       Robert S. Arns, State Bar No. 65071
14                                     **THE ARNS LAW FIRM**
                                       515 Folsom Street, 3rd Floor
15                                     San Francisco, CA 94105

16                                     Guy B. Wallace, State Bar No. 176151
                                       Sarah Colby, State Bar No. 194475
17                                     Jennifer A. Uhrowczik, State Bar No. 302212
                                       **SCHNEIDER WALLACE**
18                                     **COTTRELL KONECKY**
                                       **WOTKYNS, LLP**
19                                     2000 Powell Street, Suite 1400
                                       Emeryville, California 94608
20                                     Tel: (415) 421-7100
                                       Fax: (415) 421-7105
21
                                       Michael D. Thamer, State Bar No. 101440
22                                     **LAW OFFICES OF MICHAEL D. THAMER**
                                       12444 South Highway 3
23                                     Post Office Box 1568
                                       Callahan, California 96014-1568
24
                                       W. Timothy Needham, State Bar No. 96542
25                                     **JANSSEN MALLOY LLP**
                                       730 Fifth Street
26                                     Eureka, CA  95501

27                                     _Attorneys for Plaintiffs and the Proposed Class_
28

                                      33
                               CLASS ACTION COMPLAINT

# ATTACHMENT 1

I, Vivian Heredia, hereby declare as follows:

1.      I am the attorney-in-fact for Audrey Heredia, who is the wife of decedent CARLOS HEREDIA (hereinafter "Decedent").

2.      Decedent died on April 16, 2016, in _Santa Ana_, California.

3.      No proceeding is now pending in California for administration of the Decedent's estate.

4.      Audrey Heredia is a named plaintiff in this action.  She is suing as a successor-in-interest to the estate of Decedent.

5.      Audrey Heredia is a successor-in-interest of Decedent as defined in Section 377.11 of the California Code of Civil Procedure, and succeeds to the Decedent's interest in this action or proceeding.

6.      No other persons have a superior right to commence the action or proceeding or to be substituted for the Decedent in the pending action or proceeding.

7.      A copy of Decedent's Death Certificate is attached as Exhibit A.


I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.


This declaration was executed in _Tustin_, California on June 13, 2017.


By:    _____
       VIVIAN HEREDIA

1    DECLARATION OF VIVIAN HEREDIA
     PURSUANT TO CALIFORNIA CODE OF CIVIL
     PROCEDURE 377.32

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF ORANGE
## HEALTH CARE AGENCY
### 1200 N. MAIN STREET, SUITE 100-A
### SANTA ANA, CALIFORNIA 92701

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA

3052016059109     STATE FILE NUMBER     3201630004770     LOCAL REGISTRATION NUMBER

**DECEDENT'S PERSONAL DATA**

1. NAME OF DECEDENT—FIRST (Given): CARLOS
2. MIDDLE:
3. LAST (Family): HEREDIA
AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST):
4. DATE OF BIRTH mm/dd/ccyy: 02/27/1936
6. AGE Yrs.: 80 — IF UNDER ONE YEAR (Months, Days) — IF UNDER 24 HOURS (Hours, Minutes)
6. SEX: M
7. BIRTH STATE/FOREIGN COUNTRY: AZ
10. SOCIAL SECURITY NUMBER: 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
11. EVER IN U.S. ARMED FORCES?: YES ☐ NO ☒
12. MARITAL STATUS (at time of death): MARRIED
13. DATE OF DEATH mm/dd/ccyy: 03/16/2016
8. HOUR (24 Hour): 0839
13. EDUCATION – Highest Level/Degree: HS GRADUATE
14/15. WAS DECEDENT HISPANIC/LATINO(a)/SPANISH? (if yes, see worksheet on back): X YES — MEXICAN AMERICAN — NO
16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back): HISPANIC
17. USUAL OCCUPATION – Type of work for most of life, DO NOT USE RETIRED: GENERAL CONTRACTOR
18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.): CONSTRUCTION
19. YEARS IN OCCUPATION: 20

**USUAL RESIDENCE**

20. DECEDENT'S RESIDENCE (Street and number, or location): 460 W 2ND STREET
21. CITY: TUSTIN
22. COUNTY/PROVINCE: ORANGE
23. ZIP CODE: 92780
24. YEARS IN COUNTY: 56
25. STATE/FOREIGN COUNTRY: CA

**INFORMANT**

26. INFORMANT'S NAME, RELATIONSHIP: AUDREY ANN EMSEL HEREDIA, WIFE
27. INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state and zip): 460 W 2ND STREET, TUSTIN, CA 92780

**SPOUSE/SRDP AND PARENT INFORMATION**

28. NAME OF SURVIVING SPOUSE/SRDP—FIRST: AUDREY
29. MIDDLE: ANN
30. LAST (BIRTH NAME): EMSEL
31. NAME OF FATHER/PARENT—FIRST: EUSEBIO
32. MIDDLE:
33. LAST: HEREDIA
34. BIRTH STATE: MEXICO
35. NAME OF MOTHER/PARENT—FIRST: GUADALUPE
36. MIDDLE:
37. LAST (BIRTH NAME): PERALTA
38. BIRTH STATE: AZ

**FUNERAL DIRECTOR/LOCAL REGISTRAR**

39. DISPOSITION DATE mm/dd/ccyy: 03/24/2016
40. PLACE OF FINAL DISPOSITION: RES OF AUDREY HEREDIA — 460 W 2ND STREET, TUSTIN, CA 92780
41. TYPE OF DISPOSITION(S): CR/RES
42. SIGNATURE OF EMBALMER: NOT EMBALMED
43. LICENSE NUMBER: -
44. NAME OF FUNERAL ESTABLISHMENT: FAIRHAVEN MORTUARY — FD1313
45. SIGNATURE OF LOCAL REGISTRAR: ERIC G. HANDLER, M.D.
46. DATE mm/dd/ccyy: 03/23/2016

**PLACE OF DEATH**

101. PLACE OF DEATH: ADVANCED REHAB CENTER OF TUSTIN
102. IF HOSPITAL, SPECIFY ONE: ☐ IP ☐ ER/OP ☐ DOA — ☐ Hospice ☐ Nursing Home/LTC ☒ Decedent's Home ☐ Other
103. COUNTY: ORANGE
104. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location): 2210 EAST FIRST ST
105. CITY: SANTA ANA

**CAUSE OF DEATH**

107. CAUSE OF DEATH — Enter the chain of events— diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE.
IMMEDIATE CAUSE (Final disease or condition resulting in death): CARDIOPULMONARY ARREST — Time interval: MINS
Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST: PARKINSON'S DISEASE — Time interval: YRS
108. DEATH REPORTED TO CORONER?: YES ☐ NO ☒
109. BIOPSY PERFORMED?: ☐ YES ☒ NO
110. AUTOPSY PERFORMED?: ☐ YES ☒ NO
111. USED IN DETERMINING CAUSE?: ☐ YES ☐ NO
112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107: NONE
113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date): NO
113A. IF FEMALE, PREGNANT IN LAST YEAR?: ☐ YES ☐ NO ☐ UNK

**PHYSICIAN'S CERTIFICATION**

114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.
Decedent Attended Since: 02/24/2016 — Decedent Last Seen Alive: 03/16/2016
115. SIGNATURE AND TITLE OF CERTIFIER: VINOD MALHOTRA M.D.
116. LICENSE NUMBER: A31505
117. DATE mm/dd/ccyy: 03/23/2016
118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE: VINOD MALHOTRA M.D., 11100 WARNER AVE STE 268, FOUNTAIN VALLEY, CA 92708

**CORONER'S USE ONLY**

119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.
MANNER OF DEATH: ☐ Natural ☐ Accident ☐ Homicide ☐ Suicide ☐ Pending Investigation ☐ Could not be determined
120. INJURED AT WORK?: ☐ YES ☐ NO ☐ UNK
121. INJURY DATE mm/dd/ccyy:
122. HOUR (24 Hour):
123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.):
124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury):
125. LOCATION OF INJURY (Street and number, or location, and city and zip):
126. SIGNATURE OF CORONER / DEPUTY CORONER:
127. DATE mm/dd/ccyy:
128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER:

STATE REGISTRAR: A   B   C   D
"01000100200187"
FAX AUTH.#   CENSUS TRACT

CAORANGED1

---

## CERTIFIED COPY OF VITAL RECORD
### STATE OF CALIFORNIA, COUNTY OF ORANGE

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Vital Records Section, Orange County Health Care Agency.

003753682

DATE ISSUED _____ **April 4, 2016**

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Registrar.

ERIC G. HANDLER, MD
COUNTY HEALTH OFFICER



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# ATTACHMENT 2

I, Corbina Mancuso, hereby declare as follows:

1.      I am the daughter of decedent RUBY MANCUSO (hereinafter "Decedent").

2.      Decedent died on April 30, 2016, in Oakland, California.

3.      No proceeding is now pending in California for administration of the Decedent's estate.

4.      I am a named plaintiff in this action.  I am suing as a successor-in-interest to the estate of Decedent.

5.      I am a successor-in-interest of Decedent as defined in Section 377.11 of the California Code of Civil Procedure, and succeed to the Decedent's interest in this action or proceeding.

6.      No other persons have a superior right to commence the action or proceeding or to be substituted for the Decedent in the pending action or proceeding.

7.      A copy of Decedent's Death Certificate is attached as Exhibit A.


I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.


This declaration was executed in ___Richmond___, California on June _1_, 2017.


By: _____
     CORBINA MANCUSO

DECLARATION OF CORBINA MANCUSO
PURSUANT TO CALIFORNIA CODE OF CIVIL
PROCEDURE 377.32

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# ALAMEDA COUNTY HEALTH CARE SERVICES AGENCY
## PUBLIC HEALTH DEPARTMENT

### CERTIFICATE OF DEATH

STATE FILE NUMBER · 3201601003268 · LOCAL REGISTRATION NUMBER

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| RUBY | | MANCUSO |

AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST): CORBINA RUBY MANCUSO

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR | IF UNDER 24 HOURS | 6. SEX |
|---|---|---|---|---|
| 10/05/1921 | 94 | | | F |

| 8. STATE OF BIRTH/FOREIGN COUNTRY | 9. SOCIAL SECURITY NUMBER | 10. EVER IN U.S. ARMED FORCES? | 11. MARITAL STATUS/EVER IN SRDP | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR 24hr |
|---|---|---|---|---|---|
| NY | 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 | YES [X] NO | WIDOWED | 04/30/2016 | 1130 |

| 12. EDUCATION – Highest Level/Degree | 14. WAS DECEDENT HISPANIC/LATINO/SPANISH? | 15. DECEDENT'S RACE – Up to 3 races may be listed | 16. YEARS IN OCCUPATION |
|---|---|---|---|
| HS GRADUATE | YES [X] NO | CAUCASIAN | |

| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc) | 19. YEARS IN OCCUPATION |
|---|---|---|
| HOMEMAKER | OWN HOME | 60 |

| 20. DECEDENT'S RESIDENCE (Street and number, or location) |
|---|
| 226 SHORELINE COURT |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| RICHMOND | CONTRA COSTA | 94804 | 5 | CA |

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number, city or town, state and zip) |
|---|---|
| CORBINA MANCUSO, DAUGHTER | 226 SHORELINE COURT, RICHMOND, CA 94804 |

| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST BIRTH NAME |
|---|---|---|

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| JOSEPH | | FLORIO | ITALY |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST BIRTH NAME | 38. BIRTH STATE |
|---|---|---|---|
| FRANCES | | LOSCALZO | ITALY |

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 05/11/2016 | RES JOANN DEEGAN, 10 LA RUE DRIVE, HUNTINGTON, NY 11743 |

| 42. TYPE(S) OF DISPOSITION | 43. SIGNATURE OF EMBALMER | 44. LICENSE NUMBER |
|---|---|---|
| CR/TR/RES | NOT EMBALMED | |

| 46. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 48. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| PACIFIC INTERMENT SERVICE | FD 1506 | MUNTU DAVIS, M.D. | 05/09/2016 |

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| MERCY RETIREMENT AND CARE CENTER | IP [ ] EP/OP [ ] DOA [X] | Hospice [ ] Home/LTC [X] Decedent's Home [ ] Other [ ] |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number or location) | 106. CITY |
|---|---|---|
| ALAMEDA | 3431 FOOTHILL BLVD | OAKLAND |

| 107. CAUSE OF DEATH | Enter the chain of events — diseases, injuries, or complications — that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | Time interval between onset and death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | (A) COLON CARCINOMA | MOS | YES [ ] NO [X] |
| Sequentially list conditions, if any, leading to cause on line (A). Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | (B) | | 109. BIOPSY PERFORMED? YES [ ] NO [X] |
| | (C) | | 110. AUTOPSY PERFORMED? YES [ ] NO [X] |
| | (D) | | 111. USED IN DETERMINING CAUSE? YES [ ] NO [ ] |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| ANEMIA, GASTROINTESTINAL BLEEDING |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) | 113A. IF FEMALE, PREGNANT IN LAST YEAR |
|---|---|
| NO | YES [ ] NO [X] UNK [ ] |

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since / Decedent Last Seen Alive | MICHAEL JAMES MARCHIANO M.D. | A46191 | 05/06/2016 |
| 05/18/2015 / 04/30/2016 | 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | 6140 STONERIDGE MALL RD, HAYWARD, CA 94545 | MICHAEL JAMES MARCHIANO M.D. |

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED. | 120. INJURY AT WORK? | 121. INJURY DATE mm/dd/ccyy | 121. HOUR 24hr |
|---|---|---|---|
| MANNER OF DEATH: Natural [ ] Accident [ ] Homicide [ ] Suicide [ ] Pending Investigation [ ] Could not be determined [ ] | YES [ ] NO [ ] UNK [ ] | | |

| 122. PLACE OF INJURY (e.g., home, construction site, wooded area, etc) |
|---|

| 123. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|

| 124. LOCATION OF INJURY (Street and number, or location, and city) |
|---|

| 125. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|

| STATE REGISTRAR | A | B | C | D | E | | FAX AUTH.# | CENSUS TRACT |
|---|---|---|---|---|---|---|---|---|
| | | | | | | *910001003237130* | | |

CAALAMED01

### CERTIFIED COPY OF VITAL RECORDS
### STATE OF CALIFORNIA, COUNTY OF ALAMEDA

001075178

This is a true and exact reproduction of the document officially registered and filed with the Alameda County Health Care Services Agency.

DATE ISSUED    MAY 10 2016

HEALTH OFFICER AND LOCAL REGISTRAR
ALAMEDA COUNTY, CALIFORNIA

This copy not valid unless prepared on an engraved border displaying date and signature of Registrar.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

1    Kathryn A. Stebner, State Bar No. 121088
     Kelly Knapp, State Bar No. 252013
2    George Kawamoto, State Bar No. 280358
     **STEBNER AND ASSOCIATES**
3    870 Market Street, Suite 1212
     San Francisco, CA 94102
4    Tel: (415) 362-9800
     Fax: (415) 362-9801
5
     Christopher J. Healey, State Bar No. 105798
6    **DENTONS US LLP**
     600 West Broadway, Suite 2600
7    San Diego, CA 92101-3372
     Tel: (619) 235-3491
8    Fax: (619) 645-5328
9    Robert S. Arns, State Bar No. 65071
     Julie C. Erickson, State Bar No. 293111
10   **THE ARNS LAW FIRM**
     515 Folsom Street, 3rd Floor
11   San Francisco, CA 94105
     Tel: (415) 495-7800
12   Fax: (415) 495-7888
13   [Additional Counsel listed on signature page]
14   Attorneys for Plaintiffs and the Proposed Class
15
              SUPERIOR COURT OF THE STATE OF CALIFORNIA
16
                          COUNTY OF ALAMEDA
17
     Audrey Heredia as successor-in-interest to          CASE NO. RG17865844
18   the Estate of Carlos Heredia; and Corbina
     Mancuso as successor-in-interest to the          **DECLARATION OF CORBINA**
19   Estate of Ruby Mancuso; on their own             **MANCUSO PURSUANT TO CIV. CODE §**
     behalves and on behalf of others similarly       **1780(d)**
20   situated,
21              Plaintiffs,
22   vs.                                               **JURY TRIAL DEMANDED**
23   Sunrise Senior Living, LLC; and Does 1
     Through 100,
24
                Defendants.
25
26
27
28

────────────────────────────────────────────────
     DECLARATION OF CORBINA MANCUSO PURSUANT TO CIV. CODE § 1780(d)

**BY FAX**

I, Corbina Mancuso, hereby declare as follows:

1.      I am the successor-in-interest to the estate of RUBY MANCUSO and a named plaintiff in this action. I make this declaration in connection with a Complaint being filed in the Superior Court of the State of California, County of Alameda on behalf of RUBY MANCUSO and all others similarly situated.  If called to testify as to the information contained herein, I would and could competently do so.  The following is based on my own personal knowledge, except as to the information which is based on information and belief, which I believe to be true.

2.      Venue is proper in Alameda County under Cal. Civil Code section 1780, based on the facts, without limitation, that: Defendant conducts substantial business in this county, including but not limited to the management of Sunrise of Oakland Hill; a portion of Defendant's liability arose in this county; and the acts upon which this action is based occurred in part in this county.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.


This declaration was executed in _____Richmond_____, California on June 16, 2017.


By:     ~~Corbina Mancuso~~

CORBINA MANCUSO

1       DECLARATION OF CORBINA MANCUSO
        PURSUANT TO CIV. CODE SEC. 1780(d)



# Superior Court of California, County of Alameda
# Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

---

The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:

- Indicating your preference on Case Management Form CM-110;

- Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or

- Agree to ADR at your Initial Case Management Conference.

**QUESTIONS?** Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
Or visit the court's website at http://www.alameda.courts.ca.gov/adr

---

## What Are The Advantages Of Using ADR?

- *Faster* – Litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control and flexibility* – Parties choose the ADR process appropriate for their case.

- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.

- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

## What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

## What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o **Court Mediation Program:** Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o **Private Mediation:** This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* -- A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

o **Judicial Arbitration Program** (non-binding): The judge can refer a case or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

o **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

### Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
2530 San Pablo Avenue, Suite A, Berkeley, CA 94702-1612
Telephone: (510) 548-2377     Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – <u>S</u>ervices that <u>E</u>ncourage <u>E</u>ffective <u>D</u>ialogue and <u>S</u>olution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Telephone: (925) 373-1035     Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA 94607
Telephone: (510) 768-3100     Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

CM-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Kathryn Stebner (SBN 121088); Kelly Knapp (SBN 252013)<br>Stebner and Associates<br>870 Market Street, Suite 1212<br>San Francisco, CA 94102<br>TELEPHONE NO.: 415-362-9800   FAX NO. *(Optional):* 415-362-9801<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiffs and the Proposed Class | FOR COURT USE ONLY |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS:  1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE:  Oakland, CA 94612
BRANCH NAME:

FILED
ALAMEDA CC
AUG 17 2017
CLERK OF THE SUPERIOR C
~~~~~~~~~~~~~~~

PLAINTIFF/PETITIONER:  Audrey Heredia, et al.

DEFENDANT/RESPONDENT:  Sunrise Senior Living, LLC

| EX PARTE APPLICATION FOR EXTENSION OF TIME TO SERVE PLEADING  AND ☑ ORDER EXTENDING TIME TO SERVE AND ☑ ORDER CONTINUING CASE MANAGEMENT CONFERENCE | CASE NUMBER:<br>RG17865541 |
|---|---|
| Note: This ex parte application will be considered without a personal appearance. (See Cal. Rules of Court, rule 3.1207(2).) | HEARING DATE: 9/29/17<br>DEPT.: 30    TIME: 9:15 |

1. Applicant *(name):*  Audrey Heredia and Corbina Mancuso
is

  a. ☑  plaintiff
  b. ☐  cross-complainant
  c. ☐  petitioner
  d. ☐  defendant
  e. ☐  cross-defendant
  f. ☐  respondent
  g. ☐  other *(describe):*

BY FAX

2. The complaint or other initial pleading in this action was filed on *(date):*  June 27, 2017

3. Applicant requests that the court grant an order extending time for service of the following pleading:

  a. ☑  Complaint
  b. ☐  Cross-complaint
  c. ☐  Petition
  d. ☐  Answer or other responsive pleading
  e. ☐  Other *(describe):*

4. Service and filing of the pleading listed in item 3 is presently required to be completed by *(date):*  August 28, 2017

5. Previous applications, orders, or stipulations for an extension of time to serve and file in this action are:

  a. ☑  None
  b. ☐  The following *(describe all, including the length of any previous extensions):*

6. Applicant requests an extension of time to serve and file the pleading listed in item 3 on the following parties *(name each):*
Sunrise Senior Living, LLC

Page 1 of 2

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-020 [Rev. January 1, 2008] | EX PARTE APPLICATION FOR EXTENSION OF TIME<br>TO SERVE PLEADING AND ORDERS | Cal. Rules of Court,<br>rules 3.110, 3.1200–3.1207<br>www.courtinfo.ca.gov |
|---|---|---|

CM-020

| CASE NAME: | CASE NUMBER: |
|---|---|
| Audrey Heredia, et al. v. Sunrise Senior Living, LLC, et al. | RG17865541 |

7. The pleading has not yet been filed and served on the parties listed in item 6 for the following reasons *(describe the efforts that have been made to serve the pleading and why service has not been completed):*

Plaintiff has not attempted to serve the Complaint for the reasons described in No. 8.

☐ Continued on Attachment 7.

8. An extension of time to serve and file the pleading should be granted for the following reasons:

Parties have agreed to a 60-day "stand-down" for the purpose of exploring whether early settlement negotiations are a possibility.

☐ Continued on Attachment 8.

9. If an extension of time is granted, filing and service on the parties listed in item 6 will be completed by *(date):*
October 9, 2017.

10. Notice of this application under rules 3.1200–3.1207 ☑ has been provided as required *(describe all parties or counsel to whom notice was given; the date, time, and manner of giving notice; what the parties or counsel were told and their responses; and whether opposition is expected)* or ☐ is not required *(state reasons):*

☑ Continued on Attachment 10.

11. Number of pages attached: __4__

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  August 15, 2017

Kelly Knapp
(TYPE OR PRINT NAME OF APPLICANT OR ATTORNEY FOR APPLICANT)

▶                         Kelly Knapp
(SIGNATURE OF APPLICANT OR ATTORNEY FOR APPLICANT)

Order on Application is ☐ below ☐ on a separate document.

## ORDER

1. The application for an order extending time to serve and file the pleading is ☑ granted ☐ denied.
2. The pleading must be served and filed no later than *(date):*
3. ☑ The case management conference is rescheduled to:
   a. Date:  10/17/17
   b. Time:  3:8m
   c. Place:  Dept 30
4. Other orders:

5. A copy of this application and order must be served on all parties or their counsel that have appeared in the case.

Date:  8/17/17

_____
JUDICIAL OFFICER

**EX PARTE APPLICATION FOR EXTENSION OF TIME TO SERVE PLEADING AND ORDERS**

# ATTACHMENT 10

1 | Kathryn A. Stebner, State Bar No. 121088
Kelly Knapp, State Bar No. 252013
2 | George Kawamoto, State Bar No. 280358
**STEBNER AND ASSOCIATES**
3 | 870 Market Street, Suite 1212
San Francisco, CA 94102
4 | Tel: (415) 362-9800
Fax: (415) 362-9801
5
Christopher J. Healey, State Bar No. 105798
6 | **DENTONS US LLP**
600 West Broadway, Suite 2600
7 | San Diego, CA 92101-3372
Tel: (619) 235-3491
8 | Fax: (619) 645-5328
9 | Robert S. Arns, State Bar No. 65071
Julie C. Erickson, State Bar 293111
10 | **THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
11 | San Francisco, CA 94105
Tel: (415) 495-7800
12 | Fax: (415) 495-7888
13 | [Additional Counsel listed on signature page]
14 | Attorneys for Plaintiff and the Proposed Class
15 |
        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
16 |
                 **COUNTY OF ALAMEDA**
17 |

| | |
|---|---|
| Audrey Heredia as successor-in-interest to the Estate of Carlos Heredia; and Corbina Mancuso as successor-in-interest to the Estate of Ruby Mancuso; on their own behalves and on behalf of others similarly situated, | CASE NO. **RG7865541**<br><br>**DECLARATION OF KATHRYN STEBNER IN SUPPORT OF EX PARTE APPLICATION FOR EXTENSION OF TIME TO SERVE PLEADINGS AND ORDERS** |
|        Plaintiffs, | |
| vs. | |
| Sunrise Senior Living, LLC; and Does 1 Through 100, | |
|        Defendants. | |

1    I, KATHRYN STEBNER, declare:

2        1.    I am an attorney licensed to practice in the State of California and the principle

3    attorney at the law firm Stebner and Associates. I make this declaration in support of PlaintiffS'

4    Ex Parte Application for Extension of Time to Serve Pleadings. If called as a witness, I would and

5    could competently testify to the facts stated herein, all of which are within my personal

6    knowledge.

7        2.    On July 24, 2017, counsel for both parties met to discuss the possibility for early

8    settlement negotiations, and proposed a 60-day "stand-down" to allow time for those settlement

9    negotiations to occur. The parties agreed to that stand-down on August 8, 2017.

10       3.    On August 14, 2016, I spoke to Defendant's counsel, Jason Schwartz of Gibson

11   Dunn & Crucher LLP, and notified him that Plaintiffs will be filing an ex parte application for an

12   extension of time to serve the complaint in this case. Mr. Schwartz agreed to the extension during

13   the phone call and in an confirming email, and there is no opposition expected.

14       4.    Attached to this declaration is a true and correct copy of the confirming email from

15   Mr. Schwartz.

16

17       I declare under the penalty of perjury under the laws of the State of California that the

18   foregoing is true and correct.

19       Executed on August 14, 2017 in San Francisco, California.

20

21                                      _____

22                                      Kathryn Stebner

23

24

25

26

27

28
                                        1    DECL. OFSTEBNER ISO EX PARTE APPLICATION
                                             FOR EXTENSION OF TIME TO SERVE PLEADINGS
                                             AND ORDERS

**Kelly Knapp**

| | |
|---|---|
| **From:** | Kathryn Stebner |
| **Sent:** | Monday, August 14, 2017 3:14 PM |
| **To:** | Kelly Knapp; Healey, Christopher J. |
| **Subject:** | FW: Heredia v. Sunrise |

**From:** Schwartz, Jason C. [mailto:JSchwartz@gibsondunn.com]
**Sent:** Monday, August 14, 2017 3:01 PM
**To:** Kathryn Stebner
**Cc:** Brass, Rachel S.; Sucheski, Laura A.
**Subject:** Heredia v. Sunrise

Kathryn: Nice speaking with you. As promised, below is my contact information. I am also copying my colleagues Rachel Brass and Laura Sucheski, who as I mentioned are in our San Francisco office. We understand that you will seek additional time to serve your complaint on an ex parte basis to facilitate the 60-day standstill. As agreed, we are, of course, not entering an appearance, accepting service, or waiving any rights. Please let me know when and if you serve the complaint. In the meantime, I look forward to speaking with you informally during the standstill. Best, Jason

Jason C. Schwartz

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.955.8242 • Fax +1 202.530.9522
JSchwartz@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Stebner and Associates
Attn: Knapp, Kelly
870 Market Street
Suite 1212
San Francisco, CA   94102____

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| Heredia | No. RG17865541 |
| | |
| Plaintiff/Petitioner(s) | Order |
| | |
| VS. | Complaint - Other |
| | |
| Sunrise Senior Living, LLC | |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

The Complaint - Other was set for hearing on 08/29/2017 at 03:00 PM in Department 30 before the Honorable Brad Seligman.  The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

Case continued to 09:00 AM on 10/17/2017 in Department 21, Complex Determination Hearing, Administration Building, 1221 Oak Street, Oakland.

Dated:  08/29/2017

CourtroomClerk Lynette Rushing

Order

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number: RG17865541
Order After Hearing Re: of 08/29/2017

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addressed as shown on the foregoing document or on the attached, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed on 08/31/2017.

Chad Finke  Executive Officer / Clerk of the Superior Court

By _____

Deputy Clerk

Stebner and Associates
Attn: Knapp, Kelly
870 Market Street
Suite 1212
San Francisco, CA   94102

Sunrise Senior Living, LLC

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Heredia

Plaintiff/Petitioner(s)

VS.

Sunrise Senior Living, LLC

Defendant/Respondent(s)
(Abbreviated Title)

No. RG17865541

NOTICE OF HEARING (AMENDED)

Case Management Conference on 09/29/2017 has been vacated and rescheduled.

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above entitled action has been set for:

Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Case Management Conference:
DATE: 10/17/2017    TIME: 03:00 PM    DEPARTMENT: 23
LOCATION: Administration Building, Fourth Floor
        1221 Oak Street, Oakland

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions under Local Rule 3.90.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing (CDH) must be scheduled in the same department as that hearing.

If the information contained in this notice requires change or clarification, please call the courtroom clerk for the department where the CDH is scheduled.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling 1-888-882-6878, or faxing a service request form to 1-888-882-2946. This service is subject to charges by the vendor.

Dated: 09/13/2017

Chad Finke  Executive Officer / Clerk of the Superior Court

By _____

Deputy Clerk

## CLERK'S CERTIFICATE OF MAILING
I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 09/14/2017.

By _____

Deputy Clerk

*14964007*

CM-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Kathryn Stebner (SBN 121088); Kelly Knapp (SBN 252013) Stebner and Associates 870 Market Street, Suite 1212 San Francisco, CA 94102 TELEPHONE NO.: 415-362-9800   FAX NO. *(Optional)*: 415-362-9801 E-MAIL ADDRESS *(Optional)*: ATTORNEY FOR *(Name)*: Plaintiffs and the Proposed Class | **FILED ALAMEDA COUNTY** OCT 1 2 2017 CLERK OF THE SUPERIOR COURT By _____ Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

PLAINTIFF/PETITIONER: Audrey Heredia, et al.

DEFENDANT/RESPONDENT: Sunrise Senior Living, LLC

| EX PARTE APPLICATION FOR EXTENSION OF TIME TO SERVE PLEADING AND [✓] ORDER EXTENDING TIME TO SERVE AND [✓] ORDER CONTINUING CASE MANAGEMENT CONFERENCE | CASE NUMBER: RG17865541 |
|---|---|
| Note: This ex parte application will be considered without a personal appearance. (See Cal. Rules of Court, rule 3.1207(2).) | HEARING DATE: 10/17/17 DEPT: 23        TIME: 3:00 p.m. |

1. Applicant *(name)*: Audrey Heredia and Corbina Mancuso
   is
   a. [✓] plaintiff
   b. [ ] cross-complainant
   c. [ ] petitioner
   d. [ ] defendant
   e. [ ] cross-defendant
   f. [ ] respondent
   g. [ ] other *(describe)*:

2. The complaint or other initial pleading in this action was filed on *(date)*: June 27, 2017

3. Applicant requests that the court grant an order extending time for service of the following pleading:
   a. [✓] Complaint
   b. [ ] Cross-complaint
   c. [ ] Petition
   d. [ ] Answer or other responsive pleading
   e. [ ] Other *(describe)*:

4. Service and filing of the pleading listed in item 3 is presently required to be completed by *(date)*: October 9, 2017

5. Previous applications, orders, or stipulations for an extension of time to serve and file in this action are:
   a. [ ] None
   b. [✓] The following *(describe all, including the length of any previous extensions)*:
      Application for Extension of Time to Serve Pleadings and to Extend CMC was previously granted on 8/17/17; service was extended to 10/9/17 and CMC was rescheduled to 10/17/17.

6. Applicant requests an extension of time to serve and file the pleading listed in item 3 on the following parties *(name each)*:
   Sunrise Senior Living, LLC

Page 1 of 2

| Form Approved for Optional Use Judicial Council of California CM-020 (Rev. January 1, 2008) | **EX PARTE APPLICATION FOR EXTENSION OF TIME TO SERVE PLEADING AND ORDERS** | Cal. Rules of Court, rules 3.110, 3.1200–3.1207 www.courtinfo.ca.gov |
|---|---|---|

# BY FAX

CM-020

| CASE NAME: | CASE NUMBER: |
|---|---|
| Audrey Heredia, et al. v. Sunrise Senior Living, LLC, et al. | RG17865541 |

7.  The pleading has not yet been filed and served on the parties listed in item 6 for the following reasons *(describe the efforts that have been made to serve the pleading and why service has not been completed)*:

    Plaintiff has not attempted to serve the Complaint for the reasons described in No. 8.

    ☐ Continued on Attachment 7.

8.  An extension of time to serve and file the pleading should be granted for the following reasons:

    The parties have met and conferred several times telephonically and have scheduled an in-person meeting on November 1, 2017 to attempt to resolve this case without further litigation.

    ☐ Continued on Attachment 8.

9.  If an extension of time is granted, filing and service on the parties listed in item 6 will be completed by *(date)*:
    November 22, 2017.

10. Notice of this application under rules 3.1200–3.1207 ☑ has been provided as required *(describe all parties or counsel to whom notice was given; the date, time, and manner of giving notice; what the parties or counsel were told and their responses; and whether opposition is expected)* or ☐ is not required *(state reasons)*:

    ☑ Continued on Attachment 10.

11. Number of pages attached:  2

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  September 29, 2017

Kelly Knapp
_____
(TYPE OR PRINT NAME OF APPLICANT OR ATTORNEY FOR APPLICANT)

► _____
(SIGNATURE OF APPLICANT OR ATTORNEY FOR APPLICANT)

Order on Application is ☐ below ☐ on a separate document!

## ORDER

1.  The application for an order extending time to serve and file the pleading is ☐ granted ☐ denied.

2.  The pleading must be served and filed no later than *(date)*:

3.  ☐ The case management conference is rescheduled to:

    a. Date:

    b. Time:

    c. Place:

4.  Other orders:

5.  A copy of this application and order must be served on all parties or their counsel that have appeared in the case.

Date:  10/12/17
_____
JUDICIAL OFFICER

CM-020 [Rev. January 1, 2008]

**EX PARTE APPLICATION FOR EXTENSION OF TIME**
**TO SERVE PLEADING AND ORDERS**

Page 2 of 2

# ATTACHMENT 10

1  Kathryn A. Stebner, State Bar No. 121088
   Kelly Knapp, State Bar No. 252013
2  George Kawamoto, State Bar No. 280358
   **STEBNER AND ASSOCIATES**
3  870 Market Street, Suite 1212
   San Francisco, CA 94102
4  Tel: (415) 362-9800
   Fax: (415) 362-9801
5
   Christopher J. Healey, State Bar No. 105798
6  **DENTONS US LLP**
   600 West Broadway, Suite 2600
7  San Diego, CA 92101-3372
   Tel: (619) 235-3491
8  Fax: (619) 645-5328

9  Robert S. Arns, State Bar No. 65071
   Julie C. Erickson, State Bar 293111
10 **THE ARNS LAW FIRM**
   515 Folsom Street, 3rd Floor
11 San Francisco, CA 94105
   Tel: (415) 495-7800
12 Fax: (415) 495-7888

13 [Additional Counsel listed on signature page]

14 Attorneys for Plaintiff and the Proposed Class

15
                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
16
                        **COUNTY OF ALAMEDA**
17

18 Audrey Heredia as successor-in-interest to      CASE NO. RG7865541
   the Estate of Carlos Heredia, and Corbina
19 Mancuso as successor-in-interest to the         **DECLARATION OF KATHRYN STEBNER**
   Estate of Ruby Mancuso, on their own           **IN SUPPORT OF EX PARTE**
20 behalves and on behalf of others similarly      **APPLICATION FOR EXTENSION OF**
   situated,                                       **TIME TO SERVE PLEADINGS AND**
                                                    **ORDERS**
21                Plaintiffs,

22 vs.

23 Sunrise Senior Living, LLC, and Does 1
   Through 100,
24
                  Defendants.
25

26

27

28
                                        1

I, KATHRYN STEBNER, declare:

1.     I am an attorney licensed to practice in the State of California and the principle attorney at the law firm Stebner and Associates. I make this declaration in support of Plaintiffs' Ex Parte Application for Extension of Time to Serve Pleading. If called as a witness, I would and could competently testify to the facts stated herein, all of which are within my personal knowledge.

2.     On July 24, 2017, counsel for both parties met to discuss the possibility for early settlement negotiations, and proposed a 60-day "stand-down" to allow time for those settlement negotiations to occur. The parties agreed to that stand-down on August 8, 2017.

3.     On August 17, 2017, this Court granted Plaintiffs' Ex Parte Application for Extension of Time to Serve Pleadings and Orders. The Court ordered a new deadline of October 9, 2017 for service of pleadings, and rescheduled the Case Management Conference and Complex Determination Hearing to October 17, 2017.

4.     Since August 17, 2017, the parties have met and conferred several times by phone, and have scheduled an in-person meeting on November 1, 2017 to further their attempts to settle this case without additional litigation. Given these ongoing negotiations, on September 28, 2017, I notified Defendant's counsel, Jason Schwartz of Gibson Dunn & Crucher LLP, that Plaintiffs will be filing another ex parte application for an extension of time to serve the complaint in this case. Mr. Schwartz agreed to the extension during the phone call, and there is no opposition expected.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 29, 2017 in San Francisco, California.

_Kathryn Stebner_

2

Stebner and Associates
Attn: Knapp, Kelly
870 Market Street
Suite 1212
San Francisco, CA   94102____

# Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Heredia<br><br>          Plaintiff/Petitioner(s)<br><br>VS.<br><br>Sunrise Senior Living, LLC<br>          Defendant/Respondent(s)<br>     (Abbreviated Title) | No. RG17865541<br><br>Order<br><br>Complaint - Other |

The Complex Determination Hearing was set for hearing on 10/17/2017 at 09:00 AM in Department 21 before the Honorable Winifred Y. Smith.

Plaintiff Audrey Heredia represented by Knapp, Kelly.Plaintiff Corbina Mancuso represented by Knapp, Kelly.Defendant Sunrise Senior Living, LLC not appearing.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to one of the three complex judges and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda

County Superior Court Local Rules.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

Case Management Conf Continuance scheduled on 12/14/2017 09:00 AM in Department 21, Administration Building, 1221 Oak Street, Oakland.

Dated:  10/17/2017

Facsimile

Judge Winifred Y. Smith

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG17865541
Order After Hearing Re: of 10/17/2017

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addressed as shown on the foregoing document or on the attached, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed on 10/18/2017.

Chad Finke  Executive Officer / Clerk of the Superior Court

By  *Nancy A. Rose*
Digital

Deputy Clerk

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Heredia<br><div align="right">Plaintiff/Petitioner(s)</div><br><div align="center">VS.</div><br><br>Sunrise Senior Living, LLC<br><div align="right">Defendant/Respondent(s)</div><div align="center">(Abbreviated Title)</div> | No. <u>RG17865541</u><br><br>Case Management Order<br><br>Date:  10/17/2017<br>Time:  03:00 PM<br>Dept:  23<br>Judge:  Brad Seligman |

ORDER re: CASE MANAGEMENT

The Court has ordered the following after review of the case, including timely filed Case Management Statements, without a conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 12/05/2017 at 03:00 PM in Dept. 23.

Counsel and self-represented litigants are reminded to check the court's register of action before appearing at any case management conference at least two days before any scheduled appearance to determine if the court has issued a tentative case management order.  If published, this tentative case management order will become the order of the Court unless counsel or self-represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings postings on the website is for tentative rulings on law and motion matters and will not display tentative Case Management Orders. The tentative Case Management Orders are found in the Register of Action). The court may be reached at Dept.23@alameda.courts.ca.gov.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110,  no later than five (5) court days prior to the CMC. PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

NOTICES

Counsel for Plaintiff(s) must forthwith serve a copy of this order on all counsel of record and self-represented parties, and file proof of service.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

Dated:  10/17/2017

facsimile

Judge Brad Seligman

1  Kathryn A. Stebner, State Bar No. 121088
   Kelly Knapp, State Bar No. 252013
2  George Kawamoto, State Bar No. 280358
   **STEBNER AND ASSOCIATES**
3  870 Market Street, Suite 1212
   San Francisco, CA 94102
4  Tel: (415) 362-9800
   Fax: (415) 362-9801
5
   Christopher J. Healey, State Bar No. 105798
6  **DENTONS US LLP**
   600 West Broadway, Suite 2600
7  San Diego, CA 92101-3372
   Tel: (619) 235-3491
8  Fax: (619) 645-5328

9  Robert S. Arns, State Bar No. 65071
   Julie C. Erickson, State Bar 293111
10 **THE ARNS LAW FIRM**
   515 Folsom Street, 3rd Floor
11 San Francisco, CA 94105
   Tel: (415) 495-7800
12 Fax: (415) 495-7888

13 Attorneys for Plaintiff and the Proposed Class

14

15                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

                          **COUNTY OF ALAMEDA**
16

17 Audrey Heredia as successor-in-interest to     CASE NO. **RG17865541**
   the Estate of Carlos Heredia; and Corbina
18 Mancuso as successor-in-interest to the        **PEREMPTORY CHALLENGE**
   Estate of Ruby Mancuso; on their own           **[CODE CIV. PROC. §170.6]**
   behalves and on behalf of others similarly
19 situated,                                      Judge: Hon. Winifred Smith
                                                  Dept.: 21
20                    Plaintiffs,
                                                  **JURY TRIAL DEMANDED**
21 vs.                                            **Complaint Filed: June 27, 2017**

22 Sunrise Senior Living, LLC; and Does 1
   Through 100,
23
                      Defendants.
24

25

26     I, KATHRYN STEBNER, declare:

27     1.     That I am an attorney duly licensed to practice law in the State of California, the

28 principal attorney in the law firm of Stebner and Associates, and one of the attorneys representing

                                                1

ENDORSED
FILED
ALAMEDA COUNTY

OCT 18 2017

CLERK OF THE SUPERIOR COURT
By_____
CORINNA CARDEN

BY FAX

1 | Kathryn A. Stebner, State Bar No. 121088
Kelly Knapp, State Bar No. 252013
2 | George Kawamoto, State Bar No. 280358
**STEBNER AND ASSOCIATES**
3 | 870 Market Street, Suite 1212
San Francisco, CA  94102
4 | Tel:  (415) 362-9800
Fax:  (415) 362-9801
5 |
Christopher J. Healey, State Bar No. 105798
6 | **DENTONS US LLP**
600 West Broadway, Suite 2600
7 | San Diego, CA  92101-3372
Tel: (619) 235-3491
8 | Fax: (619) 645-5328

9 | Robert S. Arns, State Bar No. 65071
Julie C. Erickson, State Bar No. 293111
10 | **THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
11 | San Francisco, CA 94105
Tel:  (415) 495-7800
12 | Fax: (415) 495-7888

13 | Attorneys for Plaintiff and the Proposed Class

14 |

**COPY DELIVERED**
Date 10 18 Int: SX

15 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ALAMEDA**

16 |

| | |
|---|---|
| 17 Audrey Heredia as successor-in-interest to the Estate of Carlos Heredia; and Corbina Mancuso as successor-in-interest to the Estate of Ruby Mancuso; on their own behalves and on behalf of others similarly situated, | CASE NO. **RG17865541** |
| 18 | **PEREMPTORY CHALLENGE [CODE CIV. PROC. §170.6]** |
| 19 | Judge: Hon. Winifred Smith Dept.: 21 |
| 20 Plaintiffs, | **JURY TRIAL DEMANDED** Complaint Filed:  June 27, 2017 |
| 21 vs. | |
| 22 Sunrise Senior Living, LLC; and Does 1 Through 100, | |
| 23 | |
| 24 Defendants. | |

25 |

26 |       I, KATHRYN STEBNER, declare:

27 |       1.       That I am an attorney duly licensed to practice law in the State of California, the

28 | principal attorney in the law firm of Stebner and Associates, and one of the attorneys representing

1

PEREMPTORY CHALLENGE [CODE CIV. PROC. §170.6]

1    the plaintiffs in this matter.  If called to testify, I could competently testify to the facts set forth

2    herein as being of my personal knowledge, except for those matters stated on information and

3    belief.

4          2.         That Hon. Winifred Smith, the judge before whom the aforesaid action is assigned,

5    is prejudiced against plaintiffs and/or their interests and/or their attorneys so that affiant cannot, or

6    believes that she cannot, receive a fair and impartial trial or hearing before said judge.

7          3.         Wherefore, pursuant to provisions of Code Civ. Proc. Section 170.6, I respectfully

8    request that this court issue an order reassigning said case to another, and different, judge for

9    further proceedings.

10          I declare under penalty of perjury under the laws of the State of California that the

11    foregoing is true and correct.

12          Executed on October 18, 2017, in San Francisco, California.

13

14                                                             _____

15                                                             Kathryn Stebner

16

17

18

19

20

21

22

23

24

25

26

27

28

PEREMPTORY CHALLENGE [CODE CIV. PROC. §170.6]

### *Superior Court of California, County of Alameda*



### *Notice of Reassignment of Judge for All Purposes*
### *September 7, 2017*

Case Number: RG17865541
Case Title:   Heredia  VS Sunrise Senior Living, LLC
Date of Filing: 06/27/2017

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby reassigned by the Presiding Judge for all purposes to:**

| | |
|---|---|
| **Judge:** | **Brad Seligman** |
| **Department:** | **23** |
| **Address:** | **Administration Building** |
| | **1221 Oak Street** |
| | **Oakland  CA  94612** |
| **Phone Number:** | **(510) 267-6939** |
| **Fax Number:** | **0** |
| **Email Address:** | **Dept.23@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure section 170.6 must be exercised within the time period provided by law.  (See Code Civ. Proc. §§ 170.6, subd. (a)(2) and 1013.)**

**NOTICE OF NONAVAILABILITY OF COURT REPORTERS:** Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording.

Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY

OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

**General Procedures**

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the René C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, George E. McDonald Hall of Justice, 2233 Shoreline Drive, Alameda, California, 94501 and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

<div align="center">

ASSIGNED FOR ALL PURPOSES TO
JUDGE Brad Seligman
DEPARTMENT 23

</div>

All parties are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at: http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processes (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days". Plaintiff received that form in the ADR information package at the time the complaint was filed. The court's Web site also contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

You may schedule case management hearings, law & motion hearings and other calendar events with Department 23 by EMAIL ONLY. The use of email is not a substitute for filing pleadings or filing other documents. You must provide copies of all email communications to each party (or the party's attorney if the party is represented) at the same time that you send the email to the Court and you must show that you have done so in your email.

Courtesy copies of all moving, opposition and reply papers should be delivered directly to Dept. 23 in the Administration Building 1221 Oak St. 4th Floor Oakland, CA 94612.

**Schedule for Department 23**

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.

- Trials generally are held: Mondays through Thursdays from 9:00 am - 1:30 pm.

- Case Management Conferences are held: Tuesdays beginning at 3:00 pm.

- Asbestos Cases Fridays 9:15 am

- Law and Motion matters are heard: Friday mornings beginning at 9:30 a.m. in exceptional circumstances, motions may be set at other times.

- Settlement Conferences are heard: N/A

- Ex Parte matters are heard: Fridays at 9:00 a.m.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
  Email:       Dept23@alameda.courts.ca.gov

  Reservations by email only. No discovery motions will be scheduled prior to conference with the court. Email to schedule a conference.

- Ex Parte Matters
  Email:       Dept23@alameda.courts.ca.gov

  Reservations by email only.

## Tentative Rulings

The court may issue tentative rulings in accordance with the Local Rules.  Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website:  www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 23

- Phone:  1-866-223-2244

Dated:  10/31/2017

Presiding Judge,
Superior Court of California, County of Alameda

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as attached hereto and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 11/01/2017

By

Deputy Clerk

| SHORT TITLE: Heredia  VS Sunrise Senior Living, LLC | CASE NUMBER: RG17865541 |
|---|---|

ADDITIONAL ADDRESSEES

Stebner and Associates
Attn:  Knapp, Kelly
870 Market Street
Suite 1212
San Francisco, CA    94102____



SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

**FILED**
ALAMEDA COUNTY

OCT 3 1 2017

CLERK OF THE SUPERIOR COURT

By _____
                                    Deputy

| Heredia, et al, |
| |
| Plaintiffs |
| |
| Sunrise Living, LLC, et al. |
| |
| Defendants |
| |

Case No.  RG17865541

INITIAL CASE MANAGEMENT ORDER

ASSIGNED FOR ALL PRE-TRIAL
PURPOSES  TO: JUDGE BRAD
SELIGMAN, DEPARTMENT 23

The following order shall apply to all parties in this action:

1.   CASE MANAGEMENT CONFERENCES

At Case Management Conferences the Court will address discovery issues, schedules, and other subjects pursuant to CRC 3.750.  Counsel thoroughly familiar with the case shall attend the Case Management Conferences.  See LRC, Rule 3.290.

At the Initial CCMC, the parties must be prepared to discuss at length the nature of the case, both factually and legally, as well as the projected management of the case at each stage. This is not a perfunctory exercise.  The primary objective of the CCMC is to develop a comprehensive plan for a just, speedy and economical determination of the litigation.

Case Management Statements may be filed by fax-filing via the designated Fax Number, (510) 267-5732.

However, courtesy copies of statements must be delivered directly to Dept. 23.  The filing and delivery date is not later than five court days before the conference.

The Court strongly prefers joint CCMC statements prepared in narrative form, and not using Form CM-110, after counsel have met and conferred as required by CRC 3.724. CCMC statements must address the following issues when applicable:

A. A brief factual summary to assist the Court in understanding the background of the case, a statement of the issues presented, including each theory of liability and defense and a summary of the facts supporting each position taken, and the relief sought, including an estimate of damages.

B. The number of parties and their posture, including a proposed structure of representation, (e.g., liaison/lead counsel or by committee) if applicable;

C. Deadlines and limits on joinder of parties and amended or additional pleadings;

D. Class discovery and class certification, if applicable;

E. A proposed schedule for the conduct of the litigation including, but not limited to, a discovery plan, a plan for hearing remaining law and motion, and a projected trial date;

F. An identification of all potential evidentiary issues involving confidentiality or protected evidence;

G. A detailed description of the procedural posture of the case, describing any outstanding procedural problems, including, but not limited to:

(1) unserved parties and the reasons for the failure to serve;

(2) unserved and/or unfiled cross-complaints;

(3) related actions pending in any jurisdiction and the potential for coordination or consolidation;

(4) any possible jurisdictional or venue issues that may arise;

(5)  the status of discovery, including a description of all anticipated discovery and incomplete or disputed discovery issues;

(6)  unresolved law and motion matters;

(7)  requests for, or opposition to, any ADR proceedings, including but not limited to mediation, judicial or contractual arbitration;

(8)  severance of issues for trial; and

(9)  calendar conflicts for any attorney, witness, or party, and any other matter which may affect the setting of a trial date.

H.  Counsel may make suggestions for streamlining the litigation, including, but not limited to, a master file system, designation of lead counsel [for plaintiff(s) and/or defendant(s)] to streamline service of process and/or management of discovery, the use of e-filing, and the use of a web-page maintained by lead counsel for the purpose of posting the litigation schedule and agenda. Counsel may also address ways of structuring the trial of the action such as bifurcation, severance, bell-weather trials, use of special masters, use of expedited jury procedures and/or waiver of jury.

Parties are advised to check the court's register of action before appearing at any case management conference, including the Initial Case Management, at least one day before any scheduled appearance to determine if the court has issued a tentative case management order.  If published, this tentative case management order will become the order of the Court unless counsel or self represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings posted on the website are for tentative rulings on law and motion

matters and will not display tentative Case Management Orders. The tentative Case Management Orders are found in the Register of Action). Department 23 may be reached at Dept.23@alameda.courts.ca.gov.

### 2. NOTICE OF FEE CHANGES - JURY TRIAL FEE

Effective July 2, 2012, the advance jury fee is fixed at $150.00, and is no longer refundable. With certain exceptions, the jury trial fee is due on or before the date scheduled for the initial case management conference. See, C.C.P. 631(b).

### 3. DISCOVERY

Discovery Conference: Motions related to discovery (i.e. motions to compel, protective orders etc.) may not be filed without leave of the court after an informal discovery conference. The discovery conference is not a pro forma step before a motion. Requests for a discovery conference may be made, after meaningful meet and confer, by sending an email to the department clerk, copied to all counsel that briefly describes the issue to be presented, and the extent of parties' meet and confer. The court will provide proposed dates. Parties are to meet and confer as to availability for the proposed dates. If one or more parties are not available on the proposed date(s), additional dates may be requested. Upon request, the court will consider telephonic appearances as well as calls from depositions in progress.

### 4.   EMAILS TO COURT

Emails to the court are not part of the court record in this case and may be deleted without notice. Email is not a substitute for required filings. Any emails should be copied to all counsel. The Department 23 email may only be used for the following purposes: to seek a reservation to schedule a proceeding on the court's calendar, to give notice that a hearing has been dropped or a settlement reached, to request a discovery conference, emergency scheduling

issues (i.e. running late to a hearing), to give notice that a litigant intends to appear to contest a tentative ruling, to reply to an inquiry from the clerk or research attorney of Department 23, to communicate with the courtroom clerk regarding department 23 procedures, or other matters that the court has expressly authorized in this case.

   5.  NOTICE

   Parties are advised that CASE MANAGEMENT ORDERS, including trial setting orders, and FINAL RULINGS ON LAW AND MOTION that are issued by Dept. 23 will be published in the Court's website in the Register of Action for this case.  The clerk of the court WILL NOT serve each party a copy of future orders.  Instead, unless otherwise ordered, counsel shall obtain copies of all future orders from the Register of Action in this case.

   SERVICE OF THIS ORDER

   Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service. The clerk is directed to serve a copy of this CASE MANAGEMENT ORDER upon counsel for Plaintiff(s).

DATED: October 31, 2017 _____

                                                        BRAD SELIGMAN, JUDGE

---

CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addresses shown below, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

5

Dated: November 01, 2017

_Lynette Rushing_
Courtroom Clerk, Dept. 23

▼     Knapp, Kelly
        Stebner and Associates
        870 Market Street
        Suite 1212
        San Francisco,  CA 94102____

*14961385*

CM-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Kathryn Stebner (SBN 121088); Kelly Knapp (SBN 252013)<br>Stebner and Associates<br>870 Market Street, Suite 1212<br>San Francisco, CA 94102<br>TELEPHONE NO.: 415-362-9800   FAX NO. *(Optional):* 415-362-9801<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiffs and the Proposed Class | **FILED**<br>**ALAMEDA COUNTY**<br><br>NOV 1 7 2017<br><br>CLERK OF THE SUPERIOR COURT<br>By _____<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA  94612
BRANCH NAME:

PLAINTIFF/PETITIONER:  Audrey Heredia, et al.

DEFENDANT/RESPONDENT:  Sunrise Senior Living, LLC

| EX PARTE APPLICATION FOR EXTENSION OF TIME TO SERVE<br>PLEADING  AND ☑ ORDER EXTENDING TIME TO SERVE AND<br>☑ ORDER CONTINUING CASE MANAGEMENT CONFERENCE | CASE NUMBER:<br>RG17865541 |
|---|---|
| **Note: This ex parte application will be considered without a personal appearance.**<br>**(See Cal. Rules of Court, rule 3.1207(2).)** | HEARING DATE: 12/5/17<br>DEPT.: 23      TIME: 3:00 |

1. Applicant *(name):*  Audrey Heredia and Corbina Mancuso
   is
   a. ☑ plaintiff
   b. ☐ cross-complainant
   c. ☐ petitioner
   d. ☐ defendant
   e. ☐ cross-defendant
   f. ☐ respondent
   g. ☐ other *(describe):*

2. The complaint or other initial pleading in this action was filed on *(date):*  June 27, 2017

3. Applicant requests that the court grant an order extending time for service of the following pleading:
   a. ☑ Complaint
   b. ☐ Cross-complaint
   c. ☐ Petition
   d. ☐ Answer or other responsive pleading
   e. ☐ Other *(describe):*

4. Service and filing of the pleading listed in item 3 is presently required to be completed by *(date):*  November 22, 2017

5. Previous applications, orders, or stipulations for an extension of time to serve and file in this action are:
   a. ☐ None
   b. ☑ The following *(describe all, including the length of any previous extensions):*
      Second Application for Extension of Time to Serve Pleadings and to Extend CMC was previously
      granted on 10/12/17; service was extended to 11/22/17 and CMC was rescheduled to 12/05/17.

6. Applicant requests an extension of time to serve and file the pleading listed in item 3 on the following parties *(name each):*
   Sunrise Senior Living, LLC

Page 1 of 2

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-020 [Rev. January 1, 2008] | **EX PARTE APPLICATION FOR EXTENSION OF TIME**<br>**TO SERVE PLEADING AND ORDERS** | Cal. Rules of Court,<br>rules 3.110, 3.1200–3.1207<br>www.courtinfo.ca.gov |
|---|---|---|

BY FAX

COPY

ENDORSED
FILED
ALAMEDA COUNTY

NOV 1 5 2017

CLERK OF THE SUPERIOR COURT

BY _____
Deputy

CM-020

| CASE NAME: | CASE NUMBER: |
|---|---|
| Audrey Heredia, et al. v. Sunrise Senior Living, LLC, et al. | RG17865541 |

7. The pleading has not yet been filed and served on the parties listed in item 6 for the following reasons *(describe the efforts that have been made to serve the pleading and why service has not been completed)*:

Plaintiff has not attempted to serve the Complaint for the reasons described in No. 8.

☐ Continued on Attachment 7.

8. An extension of time to serve and file the pleading should be granted for the following reasons:

The parties have met and conferred several times telephonically, met in-person on November 1, 2016, and continue to meet and confer to attempt to resolve this case without further litigation.

☐ Continued on Attachment 8.

9. If an extension of time is granted, filing and service on the parties listed in item 6 will be completed by *(date)*:
January 3, 2018

10. Notice of this application under rules 3.1200–3.1207 ☑ has been provided as required *(describe all parties or counsel to whom notice was given; the date, time, and manner of giving notice; what the parties or counsel were told and their responses; and whether opposition is expected)* or ☐ is not required *(state reasons)*:

☑ Continued on Attachment 10.

11. Number of pages attached: 2

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: November 16, 2017

Kelly Knapp
_____
(TYPE OR PRINT NAME OF APPLICANT OR ATTORNEY FOR APPLICANT)

► _Kelly Knapp_
(SIGNATURE OF APPLICANT OR ATTORNEY FOR APPLICANT)

Order on Application is ☐ below ☐ on a separate document.

## ORDER

1. The application for an order extending time to serve and file the pleading is ☒ granted ☐ denied.

2. The pleading must be served and filed no later than *(date)*:

3. ☐ The case management conference is rescheduled to:

*no further extensions will be approved.*

   a. Date:

   b. Time:

   c. Place:

4. Other orders:

5. A copy of this application and order must be served on all parties or their counsel that have appeared in the case.

Date: 11/17/17
_____
JUDICIAL OFFICER

**EX PARTE APPLICATION FOR EXTENSION OF TIME TO SERVE PLEADING AND ORDERS**

# ATTACHMENT 10

1 | Kathryn A. Stebner, State Bar No. 121088
Kelly Knapp, State Bar No. 252013
2 | George Kawamoto, State Bar No. 280358
**STEBNER AND ASSOCIATES**
3 | 870 Market Street, Suite 1212
San Francisco, CA 94102
4 | Tel: (415) 362-9800
Fax: (415) 362-9801
5

Christopher J. Healey, State Bar No. 105798
6 | **DENTONS US LLP**
600 West Broadway, Suite 2600
7 | San Diego, CA 92101-3372
Tel: (619) 235-3491
8 | Fax: (619) 645-5328

9 | Robert S. Arns, State Bar No. 65071
Julie C. Erickson, State Bar 293111
10 | **THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
11 | San Francisco, CA 94105
Tel: (415) 495-7800
12 | Fax: (415) 495-7888

13

Attorneys for Plaintiff and the Proposed Class
14

15 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16 | **COUNTY OF ALAMEDA**

17 | Audrey Heredia as successor-in-interest to
the Estate of Carlos Heredia; and Corbina
18 | Mancuso as successor-in-interest to the
Estate of Ruby Mancuso; on their own
19 | behalves and on behalf of others similarly
situated,
20
Plaintiffs,
21
vs.
22
Sunrise Senior Living, LLC; and Does 1
23 | Through 100,

24 | Defendants.

CASE NO. **RG7865541**

**DECLARATION OF KELLY KNAPP IN
SUPPORT OF EX PARTE APPLICATION
FOR EXTENSION OF TIME TO SERVE
PLEADINGS AND ORDERS**

25

26

27

28

1

DECLARATION OF KELLY KNAPP IN SUPPORT OF EX PARTE APPLICATION FOR EXTENSION OF TIME
TO SERVE PLEADINGS AND ORDERS

I, KELLY KNAPP, declare:

1.     I am an attorney licensed to practice in the State of California and an associate at the law firm Stebner and Associates. I make this declaration in support of Plaintiffs' Ex Parte Application for Extension of Time to Serve Pleadings. If called as a witness, I would and could competently testify to the facts stated herein, all of which are within my personal knowledge.

2.     On July 24, 2017, counsel for both parties met to discuss the possibility for early settlement negotiations, and proposed a 60-day "stand-down" to allow time for those settlement negotiations to occur. The parties agreed to that stand-down on August 8, 2017.

3.     On August 17, 2017, this Court granted Plaintiffs' Ex Parte Application for Extension of Time to Serve Pleadings and Orders. The Court ordered a new deadline of October 9, 2017 for service of pleadings, and rescheduled the Case Management Conference and Complex Determination Hearing to October 17, 2017.

4.     On October 2, 2017, Plaintiffs filed a second Ex Parte Application for Extension of Time to Serve Pleadings and Orders. Plaintiffs sought a second extension because since August 17, 2017, the parties had met and conferred several times by phone, and had scheduled an in-person meeting on November 1, 2017, to further their attempts to settle this case without additional litigation. The Court granted the second Ex Parte Application, ordered a new deadline of November 22, 2016 for service of pleadings, and rescheduled the Case Management Conference to December 5, 2017.

5.     The parties met on November 1, 2017, and agreed to continue early settlement negotiations. The parties also discussed and agreed that another ex parte application for an extension of time to serve the complaint in this case should be filed to allow additional time for negotiations.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 16, 2017 in San Francisco, California.

_____
Kelly Knapp

2

DECLARATION OF KELLY KNAPP IN SUPPORT OF EX PARTE APPLICATION FOR EXTENSION OF TIME TO SERVE PLEADINGS AND ORDERS



ENDORSED
FILED
ALAMEDA COUNTY

NOV 2 8 2017

CLERK OF THE SUPERIOR COURT
By _____ TANIA PIERCE
Deputy

1 | Kathryn A. Stebner, State Bar No. 121088
Kelly Knapp, State Bar No. 252013
2 | George Kawamoto, State Bar No. 280358
**STEBNER AND ASSOCIATES**
3 | 870 Market Street, Suite 1212
San Francisco, CA 94102
4 | Tel: (415) 362-9800
Fax: (415) 362-9801
5 |
Guy B. Wallace, State Bar No. 176151
6 | Sarah Colby, State Bar No. 194475
Jennifer A. Uhrowczik, State Bar No. 302212
7 | **SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS, LLP**
8 | 2000 Powell Street, Suite 1400
Emeryville, CA 94608
9 | Tel:   (415) 421-7100
Fax:   (415) 421-7105
10 |
Christopher J. Healey, State Bar No. 105798
11 | **DENTONS US LLP**
600 West Broadway, Suite 2600
12 | San Diego, CA 92101-3372
Tel: (619) 235-3491
13 | Fax: (619) 645-5328

14 | [Additional Counsel listed on signatur page]

15 | *Attorneys for Plaintiffs and the Proposed Class*

16 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17 | **COUNTY OF ALAMEDA**

18 | Audrey Heredia as successor-in-interest to    CASE NO. **RG17865541**
the Estate of Carlos Heredia; and Corbina
19 | Mancuso as successor-in-interest to the     ASSIGNED FOR ALL PURPOSES TO
Estate of Ruby Mancuso; on their own          JUDGE Brad Seligman
20 | behalves and on behalf of others similarly      DEPARTMENT 23
situated,
21 |                                              **CASE MANAGEMENT CONFERENCE
Plaintiffs,                      STATEMENT**
22 |
vs.
23 |                                              **Date:  December 5, 2017**
Sunrise Senior Living, LLC; and Does 1         **Time:  3:00 p.m.**
24 | Through 100,                                  **Dept:  23**

25 |
Defendants.
26 |

27 |

28 |

1

1  Kathryn A. Stebner, State Bar No. 121088
   Kelly Knapp, State Bar No. 252013
2  George Kawamoto, State Bar No. 280358
   **STEBNER AND ASSOCIATES**
3  870 Market Street, Suite 1212
   San Francisco, CA  94102
4  Tel: (415) 362-9800
   Fax:  (415) 362-9801
5
   Guy B. Wallace, State Bar No. 176151
6  Sarah Colby, State Bar No. 194475
   Jennifer A. Uhrowczik, State Bar No. 302212
7  **SCHNEIDER WALLACE COTTRELL
   KONECKY WOTKYNS, LLP**
8  2000 Powell Street, Suite 1400
   Emeryville, CA 94608
9  Tel:   (415) 421-7100
   Fax:   (415) 421-7105
10
   Christopher J. Healey, State Bar No. 105798
11 **DENTONS US LLP**
   600 West Broadway, Suite 2600
12 San Diego, CA  92101-3372
   Tel: (619) 235-3491
13 Fax: (619) 645-5328

14 [Additional Counsel listed on signatur page]

15 *Attorneys for Plaintiffs and the Proposed Class*

16             **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17                         **COUNTY OF ALAMEDA**

18 Audrey Heredia as successor-in-interest to          CASE NO. **RG17865541**
   the Estate of Carlos Heredia; and Corbina
19 Mancuso as successor-in-interest to the             ASSIGNED FOR ALL PURPOSES TO
   Estate of Ruby Mancuso; on their own                   JUDGE Brad Seligman
20 behalves and on behalf of others similarly                DEPARTMENT 23
   situated,
21                                                     **CASE MANAGEMENT CONFERENCE
                 Plaintiffs,                           STATEMENT**
22
   vs.
23                                                     Date:  December 5, 2017
   Sunrise Senior Living, LLC; and Does 1            Time:  3:00 p.m.
24 Through 100,                                       Dept:  23

25
                 Defendants.
26

27

28
                                            1
                        CASE MANAGEMENT CONFERENCE STATEMENT

1    Plaintiffs submit this complex case management conference statement without Defendant

2  because Defendant has not been served or appeared in this case.  Although Defendant has not been

3  served, the parties are currently engaged in discussions to determine if this case can be resolved

4  without further litigation.  The parties have met and conferred telephonically several times, and

5  met in-person on November 1, 2017.  The parties are currently determining whether settlement

6  discussions shall continue given the information exchanged during the meeting on November 1,

7  2017.  Over the course of these discussions, Plaintiffs have submitted three ex parte parte

8  applications for extensions of time to serve pleadings and to continue the case management

9  conference, including an application filed on November 16, 2017.  On November 17, 2017, the

10  Court granted an extension of time to serve the pleadings until January 3, 2018, but did not

11  reschedule the Case Management Conference currently scheduled on December 5, 2017, in

12  Department 23.

13    **A.**    **PLAINTIFFS' SUMMARY OF CASE**

14    Defendant Senior Senior Living ("Sunrise" or "Defendant") has engaged in a scheme to

15  defraud seniors and persons with disabilities by falsely representing in standard admission

16  contracts and other uniform statements that residents will receive care services determined by

17  needs assessments conducted by facility personnel.  Undisclosed to residents or the public, Sunrise

18  does not use the assessments to determine or provide staffing in its facilities.  As a result, residents

19  either fail to receive promised services or are placed at substantial risk that such services will not

20  be provided in the future.

21    This putative class action was filed by Audrey Heredia as successor-in-interest to the

22  Estate of Carlos Heredia; and Corbina Mancuso as successor-in-interest to the Estate of Ruby

23  Mancuso; on behalf of themselves and others similarly situated.  Mr. Heredia was a resident of

24  Sunrise at Tustin, in Santa Ana, California from June 2014 to April 2015.  Ms. Mancuso was a

25  resident of Sunrise of Oakland Hills, in Oakland, California from December 26, 2012 to January

26  2016.

27    When Plaintiffs Heredia and Mancuso (collectively "Plaintiffs") entered Sunrise facilities,

28

1 Sunrise represented in its standard contract and during the admission process that (a) each resident
2 will receive the care that he/she requires; (b) the facility's professional staff will determine the care
3 required for each resident through the resident assessment process; and (c) the amount of care
4 identified in the resident assessment process as needed by the resident will be translated into a
5 "score" and specific "Service Level" for which the resident will be charged on a daily basis.
6 Plaintiffs and members of the putative class therefore reasonably expected that Sunrise will use its
7 resident assessment system and related care points to determine and provide sufficient staffing
8 levels necessary to ensure each resident receives the care he/she requires.  They chose to enter
9 Sunrise in part because they relied on Sunrise's material representations that it would provide
10 enough staff to meet all of their needs.  However, Sunrise failed to disclose to Plaintiffs and
11 members of the proposed class that it does not use its resident assessment system or the Service
12 Levels generated by it to set aggregate staffing levels.

13      Plaintiffs allege that Defendant has misrepresented and failed to disclose material facts
14 regarding its resident assessment system and staffing levels in violation of sections 1770(a)(5),
15 1770(a)(7), 1770(a)(9), and 1770(a)(14) of the Consumer Legal Remedies Act.  Plaintiffs also
16 allege that Defendant engages in unlawful, unfair, and fraudulent business acts and practices in
17 violation of California Business and Professions Code section 17200, *et seq.*, and elder financial
18 abuse in violation of  California W&I Code section 15610.30. *See Newirth v. Aegis Senior*
19 *Communities, LLC* (N.D. Cal. May 18, 2017) No. 16-cv-03991-JSW, 2017 WL 3328073, at *6
20 (holding that similar allegations in another assisted living claims met pleading requirements under
21 the CLRA and UCL).

22      Plaintiffs seek injunctive relief requiring that Defendant cease current and future unlawful,
23 unfair, and fraudulent business practices, and violations of the Consumers Legal Remedies Act,
24 Business and Professions Code, and the Elder Financial Abuse statute as alleged.  Additionally,
25 Plaintiffs seek an injunction requiring Defendant to disclose to Plaintiffs, the putative class
26 members, and the consuming public that Sunrise does not staff its facilities based on the results of
27
28

1 resident assessments regardless of changes in the overall care needs and assessed care points of

2 current residents.

3     Plaintiffs also seek statutory and actual damages, treble damages, punitive damages,

4 restitution, and attorneys' fees and costs.  Because Plaintiffs do not know currently how many

5 class members exist, they cannot estimate damages at this time.

6     **B.    NUMBER OF PARTIES**

7     The class and its representative are represented by law firms with experience litigating class

8 actions alleging elder financial abuse by assisted living facilities and violations of the Consumers

9 Legal Remedies Act.  Stebner and Associates will serve as the liaison.

10     **C.    AMENDED OR ADDITIONAL PLEADINGS**

11     Plaintiffs anticipate filing an amended pleading to add a current resident plaintiff and an

12 injunctive relief claim under the CLRA by January 3, 2018.

13     **D.    CLASS DISCOVERY AND CLASS CERTIFICATION**

14     Plaintiffs will seek documents and other discovery, including depositions of persons most

15 knowledgable, regarding Defendant's fees, services, staffing, budgets, resident assessment

16 systems, resident information tracking, and other related topics.

17     Plaintiffs will seek additional documents related to resident assessment systems and

18 staffing such as emails and memos, in electronic and searchable form.  Plaintiffs have devised

19 protocols regarding electronic discovey in other similar cases and will work with Defendant to

20 create an agreeable stipulation and order.

21     Depending on the cooperation between the parties regarding discovery, Plaintiffs anticipate

22 bringing their class certification motion in six to nine months.  If acceptable to the Court, Plaintiffs

23 propose that the Court set a status conference after the completition of initial discovery

24 (approximately six months from Defendant's appearance), at which time the Court could set a

25 briefing schedule and hearing date for class certificaton, if warranted based on discovery status.

26     **E.    PROPOSED SCHEDULE**

27     Due to the settlement discussions with Defendant, Plaintiffs filed, and the Court granted, a

28

request for an extension of time to serve the complaint by January 3, 2018. **Plaintiffs request that the Case Management Conference be rescheduled to 60 days after Defendant's first appearance.** As noted above, Plaintiffs hope to complete discovery necessary for class certification in six to nine months, but this depends on the cooperation of the parties.

Assuming appropriate cooperation from Defendant on discovery matters, Plaintiffs expect to file their motion for class certification in six to nine months from Defendant's appearance, and expect to be ready for trial within twelve months of the class certification hearing.

### F.     CONFIDENTIALITY ISSUES

Plaintiffs do not anticipate any confidentiality issues.

### G.     PROCEDURAL POSTURE OF CASE

1.     Plaintiffs sent Defendant a notice to cure under California Civil Code § 1782(a), which was received by Defendant on June 5, 2017. Defendant has not corrected or remedied the alleged violations. Plaintiffs began meeting and conferring with Defendant in July 2017, and Plaintiffs accordingly sought and received an extension of time on August 29, 2017 to serve the pleadings by October 9, 2017. The parties met in-person meeting on November 1, 2017, and Plaintiffs accordingly filed on October 2, 2017 a second request for an extension of time to serve the pleadings by November 22, 2017, which the Court granted. The parties continue to meet and confer regarding a possible resolution, and Plaintiffs accordingly filed on November 16, 2017 a second request for an extension fo time to servie the pleadings by January 3, 2018, which the Court granted.

2.     Plaintiffs do not anticipate any cross complaints.

3.     Plaintiffs do not know of any related actions.

4.     There are no jurisdictional or venue issues.

5.     Discovery issues are discussed above.

6.     There are no unresolved law and motion matters.

7.     Plaintiffs will participate in mediation with an an agreed-upon mediator.

8.     Plaintiffs do not seek severance of any issues for trial.

1        9.    Assuming trial occurs in late 2018 or early 2019, no conflicts currently exist.

2

3    Dated: November 28, 2017

                    Kathryn A. Stebner, State Bar No. 121088
4                        Kelly Knapp, State Bar No. 252013
                    George Kawamoto, State Bar No. 280358
5                        STEBNER AND ASSOCIATES
                    870 Market Street, Suite 1212
6                        San Francisco, CA 94102
                    Tel:    (415) 362-9800
7                        Fax:    (415) 362-9801

8                        Guy B. Wallace, State Bar No. 176151
                    Sarah Colby, State Bar No. 194475
9                        Jennifer A. Uhrowczik, State Bar No. 302212
                    SCHNEIDER WALLACE
10                       COTTRELL KONECKY
                    WOTKYNS, LLP
11                       2000 Powell Street, Suite 1400
                    Emeryville, CA 94608
12                       Tel:    (415) 421-7100
                    Fax:    (415) 421-7105
13

14                       Christopher J. Healey, State Bar No. 105798
                    DENTONS US LLP
                    4655 Executive Drive, Suite 700
15                       San Diego, CA 92121
                    Tel:    (619) 235-3491
16                       Fax:    (619) 645-5328

17                       Michael D. Thamer, State Bar No. 101440
                    LAW OFFICES OF MICHAEL D. THAMER
18                       12444 South Highway 3
                    Post Office Box 1568
19                       Callahan, CA 96014-1568

20                       Robert S. Arns, State Bar No. 65071
                    Julie C. Erickson, State Bar 293111
21                       THE ARNS LAW FIRM
                    515 Folsom Street, 3rd Floor
22                       San Francisco, CA 94105

23                       W. Timothy Needham, State Bar No. 96542
                    JANSSEN MALLOY LLP
24                       730 Fifth Street
                    Eureka, CA 95501
25

26                       Attorneys for Plaintiff and the proposed Class

27

28

CASE MANAGEMENT CONFERENCE STATEMENT

# EXHIBIT C

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Kathryn A. Stebner (SBN 121088); Kelly Knapp (SBN 252013) Stebner and Associates 870 Market Street, Suite 1212 San Francisco, CA  94102 TELEPHONE NO. 415-362-9800     FAX NO. (Optional): 415-362-9801 E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): Plaintiffs and the Proposed Class | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA  94612
BRANCH NAME: René C. Davidson Courthouse

PLAINTIFF/PETITIONER: Audrey Heredia, as successor-in-interest, et al.

DEFENDANT/RESPONDENT: Sunrise Senior Living, LLC

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: RG17865541 |
|---|---|

TO (insert name of party being served): Sunrise Senior Living, LLC

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: January 3, 2018

Ann Williams
(TYPE OR PRINT NAME)

▶ _(signature)_
(SIGNATURE OF SENDER - MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. [✓]  A copy of the summons and of the complaint.

2. [✓]  Other (specify): Civil Case Cover Sheet; Declaration of Corbina Mancuso Pursuant to Civ. Code sec. 1780(d); Alternative Dispute Resolution (ADR) Information Packet; Order re Application for Extension of Time to Serve Pleading and Orders [8/17/17]; Order re Complex Determination Hearing [8/29/17]; Notice of Hearing (Amended) [9/13/17]; Order re Application for Extension of Time to Serve Pleading and Orders [10/12/17]; Order re Complex Determination [10/17/17]; Case Management Order [10/17/17]; Peremptory Challenge [Code Civ. Proc. sec 170.6]; Notice of Reassignment of Judge for All Purposes [10/31/17]; Initial Case Management Order [10/31/17]; Order re Application for Extension of Time to Serve Pleading and Orders [11/17/17]; Case Management Conference Statement
(To be completed by recipient):

Date this form is signed:  January 3, 2018

Rachel S. Brass (SBN 219301), Gibson, Dunn & Crutcher LLP
Attorneys for Sunrise Senior Living, LLC
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _(signature)_
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)