1  MICHELE L. MARYOTT, SBN 191993
      mmaryott@gibsondunn.com
2  ASHLEY ALLYN, SBN 254559
      aallyn@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   3161 Michelson Drive
4  Irvine, CA  92612-4412
   Telephone:  949.451.3800 / Facsimile:  949.451.4220
5
   JASON C. SCHWARTZ (*admitted pro hac vice*)
6     jschwartz@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
7  1050 Connecticut Avenue, N.W.
   Washington, DC  20036-5306
8  Telephone:  202.955.8500 / Facsimile:  202.467.0539

9  Attorneys for Defendant
   SUNRISE SENIOR LIVING, LLC
10
   [Additional Counsel Listed on Next Page]
11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14              SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| 15 AUDREY HEREDIA, as successor-in-interest to the Estate of Carlos Heredia; AMY FEARN, as successor-in-interest to the Estate of Edith Zack; and HELEN GANZ, by and through her Guardian ad Litem, Elise Ganz; on their own behalves and on behalf of others similarly situated, | CASE NO. 8:18-cv-01974-JLS-JDE [DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE JOHN D. EARLY] **JOINT STIPULATION OF POINTS AND AUTHORITIES ON DEFENDANT SUNRISE SENIOR LIVING, LLC'S MOTION TO COMPEL FURTHER PRODUCTION OF DOCUMENTS** |

15  AUDREY HEREDIA, as successor-in-
    interest to the Estate of Carlos Heredia;
16  AMY FEARN, as successor-in-interest
    to the Estate of Edith Zack; and HELEN
17  GANZ, by and through her Guardian ad
    Litem, Elise Ganz; on their own
18  behalves and on behalf of others
    similarly situated,
19
                    Plaintiffs,
20
         v.
21
    SUNRISE SENIOR LIVING, LLC; and
22  DOES 1 through 100,
23                  Defendants.
24
25
26
27
28

CASE NO. 8:18-cv-01974-JLS-JDE

[DISCOVERY DOCUMENT:
REFERRED TO MAGISTRATE JUDGE
JOHN D. EARLY]

**JOINT STIPULATION OF POINTS
AND AUTHORITIES ON
DEFENDANT SUNRISE SENIOR
LIVING, LLC'S MOTION TO
COMPEL FURTHER PRODUCTION
OF DOCUMENTS**

**Hearing:**
Date:           August 6, 2020
Time:           10:00 a.m.
Place:          Courtroom 6A
                411 W. Fourth Street
                Santa Ana, CA 92701
Judge:          Hon. John D. Early

Discovery cut-off:   March 26, 2021
Pretrial Conference: July 30, 2021
Trial:               None Set

Gibson, Dunn &
Crutcher LLP

1    KATHRYN A. STEBNER, SBN 121088
       kathryn@stebnerassociates.com
2    BRIAN S. UMPIERRE, SBN 236399
       brian@stebnerassociates.com
3    STEBNER AND ASSOCIATES
     870 Market Street, Suite 1212
4    San Francisco, CA  94102
     Telephone:  415.362.9800 / Facsimile:  415.362.9801

5
     CHRISTOPHER J. HEALEY, SBN 105798
6      chris.healey@dentons.com
     DENTONS US LLP
7    4655 Executive Drive, Suite 700
     San Diego, CA  92121
8    Telephone:  619.236.1414 / Facsimile:  619.232.8311

9    GUY B. WALLACE, SBN 176151
       gwallace@schneiderwallace.com
10   MARK T. JOHNSON, SBN 76904
       mjohnson@schneiderwallace.com
11   SCHNEIDER WALLACE COTTRELL
     KONECKY WOTKYNS LLP
12   2000 Powell Street, Suite 1400
     Emeryville, CA  94608
13   Telephone:  415.421.7100 / Facsimile:  415.421.7105

14   [Additional counsel listed on Signature Page]

15   Attorneys for Plaintiffs and the Proposed Class

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................... 1

   A.   Sunrise's Introduction ......................................................................... 1

   B.   Plaintiffs' Introduction ........................................................................ 3

II.  DEFENDANT'S MOTION TO COMPEL PRODUCTION OF
DOCUMENTS ............................................................................................. 5

   A.   Sunrise's Argument ............................................................................. 8

      1.   The Documents Are Indisputably Relevant and Critical to
Sunrise's Defense ..................................................................... 9

      2.   Third-Party Documents and Communications Are Not
Protected Work Product .......................................................... 10

      3.   Plaintiffs' "Burden" Objection Is Meritless ........................... 13

   B.   Plaintiffs' Argument .......................................................................... 14

      1.   The Documents Sunrise Seeks Are Protected Work-Product ....... 15

   C.   Sunrise's Cases Are Inapposite ......................................................... 17

   D.   Sunrise Cannot Meet Its Burden Under Rule 23(b)(3) ...................... 20

   E.   Sunrise's Smear of Plaintiffs' Counsel is Baseless, False, and
Irrelevant .......................................................................................... 21

Gibson, Dunn &
Crutcher LLP

i

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  306 F.R.D. 234 (N.D. Cal. 2015) .................................................................. 5, 11, 18

5

6

*Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*,
  2016 WL 7743032 (M.D. Fla. Nov. 30, 2016) ........................................................ 14

7

*Bible v. Rio Properties, Inc.*,
  246 F.R.D. 614 (C.D. Cal. 2007) ............................................................................ 13

8

9

*Bretana v. Int'l Collection Corp.*,
  2008 WL 4334710 (N.D. Cal. Sept. 22, 2008) ....................................................... 14

10

11

*Briggs v. OS Rest. Servs.*,
  Case No. 2:18-cv-8457 JAK, 2019 WL 7195620 (C.D. Cal. Sept. 10,
  2019) .......................................................................................................... 4, 5, 11, 17

12

*Brown v. Tax Ease Lien Serv., LLC*,
  2017 WL 6939338 (W.D. Ky. Sept. 20, 2019) ................................................. 11, 12

13

14

*Burgess v. Tesoro Refining & Marketing Co.*,
  Case No. CV 10-5870-VBF, 2011 WL 13217362 (C.D. Cal. Jul. 5,
  2011) ....................................................................................................................... 20

15

16

*U.S. ex rel. Burroughs v. DeNardi Corp.*,
  167 F.R.D. 680 (S.D. Cal. 1996) ...................................................................... 16, 17

17

18

*In re Cal. Pub. Utils. Comm'n*,
  892 F.2d 778 (9th Cir. 1989) .................................................................................. 11

19

*Cal. v. Kinder Morgan Energy Partners, L.P.*,
  2009 WL 10668706 (S.D. Cal. Sept. 28, 2009) ..................................................... 12

20

21

*Campbell v. Best Buy Stores, L.P.*,
  Case No. LA CV 12-07794 JAK, 2013 WL 5302217 (C.D. Cal. Sept.
  20, 2013) ........................................................................................................... 16, 19

22

23

*Coito v. Super. Ct.*,
  54 Cal.4th 480 (2012) ............................................................................................. 15

24

*EEOC v. ABM Indus. Inc.*,
  261 F.R.D. 503 (E.D. Cal. 2009) ...................................................................... 11, 18

25

26

*EEOC v. CRST Van Expedited, Inc.*,
  2009 WL 136025 (N.D. Iowa Jan. 20, 2009) ......................................................... 12

27

*Fangman v. Genuine Title, LLC*,
  2016 WL 3362538 (D. Md. June 17, 2016) ........................................................... 12

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hawkins v. Kroger Co.*,
  Case No. 3:15-cv-02320-JM-AHG, 2020 WL 1952832 (S.D. Cal. Apr. 23, 2020) .................................................................................................................. 15

*Hickman v. Taylor*,
  329 U.S. 495 (1946) ................................................................................ 12, 17

*Holmgren v. State Farm Mut. Ins. Co.*,
  976 F.2d 573 (9th Cir 1992) ........................................................................ 16

*Intel Corp. v. Via Technologies*,
  204 F.R.D. 450 (N.D.Cal. 2001) ....................................................... 16, 18, 19

*Johnston v. Don Employees' Pension Plan*,
  Case No. 14-cv-10427, 2016 WL 1106889 (E.D. Mich. Mar. 22, 2016) ............... 19

*Loustalet v. Refco, Inc.*,
  154 F.R.D. 243 (C.D. Cal. 1993) ................................................................. 12

*O'Connor v. Boeing N. American, Inc.*,
  216 F.R.D. 640 (C.D. Cal. 2003) ................................................................. 16

*Rumac v. Bottomley*,
  143 Cal.App.3d 810 (1983) ................................................................... 15, 19

*Sinohui v. CEC Entm't, Inc.*,
  Case No. EDCV 14-2516-JLS, 2016 WL 2743458 (C.D. Cal. May 11, 2016) .......................................................................................... 4, 16, 20

*Yeager v. Bowlin*,
  693 F.3d 1076 (9th Cir. 2012) ..................................................................... 22

**Statutes**

CCP §§ 2018.018 -2018.080 ............................................................................ 15

CCP § 2018.030 ............................................................................................ 19

CCP § 2018.030(a) ....................................................................................... 15

CCP § 2018.030(b) ....................................................................................... 15

**Other Authorities**

C. Wright & A. Miller, Fed. Practice & Proc. § 2024, at 201-02 ......................... 11

**Rules**

Fed. R. Civ. P. 26(b)(3) ................................................................... 4, 11, 15, 19, 20

Gibson, Dunn & Crutcher LLP

# I.     INTRODUCTION

## A.     Sunrise's Introduction

Sunrise respectfully seeks this Court's intervention in obtaining two overlapping categories of documents that Plaintiffs are withholding:  (1) documents that putative class members provided to Plaintiffs' counsel in the context of this litigation; and (2) correspondence between Plaintiffs' counsel and putative class members regarding this action.  Plaintiffs' counsel concedes they have these documents in their possession, that the documents are relevant, and that they are organized and ready to be produced. However, they refuse to produce them on specious work product grounds and a frivolous "burden" argument.  These objections have no merit.

Specifically, Sunrise has requested documents and communications: (1) relating to "claims, allegations, complaints and/or lawsuits by YOU in which YOU represented or sought to represent a class or classes of plaintiffs;" (2) relating to "any allegation in YOUR COMPLAINT" including those that plaintiffs contend "support" their allegations; and (3) provided to Plaintiffs in response to "subpoenas, public records requests, or informal requests" to third parties in connection with this action.  Allyn Decl., Exs. A-C.  After months of meet and confer efforts, Plaintiffs agreed to produce documents related to individuals who submitted declarations in support of their Motion for Class Certification.  Dkt. 139-1.  On June 10, more than two weeks after filing the Motion, Plaintiffs produced a handful of documents relating to some (but not all) of their declarants, as well as a privilege log evincing that they are improperly withholding 441 other responsive documents.

Plaintiffs' privilege log shows that the vast majority of the withheld documents have no indicia of work product—in other words, they were not prepared in anticipation of litigation, and they were not prepared by a party or party representative. As explained below, Plaintiffs have not produced any documents indicating that any of the putative class members have retained their counsel, and Sunrise is conservatively seeking *only* those documents that are clearly not attorney work product.

Gibson, Dunn &
Crutcher LLP

Plaintiffs' burden objection also falls flat.  They have conceded that the documents are organized, compiled, and ready to be produced, but have not identified any burden they will endure if ordered to produce them, because they cannot. Plaintiffs are also incorrect that they are not obligated to produce certain documents because Sunrise *might* already have copies in its possession.  No showing has been made that Sunrise actually has those same documents in its possession.  And making matters worse, Plaintiffs have cherry-picked some of these documents to produce— namely, certain documents provided to them by individuals who submitted declarations in support of their motion for class certification—but withheld the others. That is not how discovery works.  Plaintiffs are not entitled to conceal documents that they believe are inconsistent with their arguments and theories.  Plaintiffs must produce all relevant non-privileged documents, whether they like the substance of those documents or not.

Sunrise propounded discovery requesting these documents in April 2019 and February 2020 because they are relevant to Plaintiffs' class certification motion (which Plaintiffs do not dispute), as well as to the merits of Plaintiffs' claims and Sunrise's defenses.  For example, these documents may show a variety of expectations and experiences across the putative class, thereby confirming that Plaintiffs' claims are not susceptible to common proof on a class-wide basis.  Indeed, they may also show any number of putative class members informing Plaintiffs' counsel that they *disagree* with Plaintiffs' theory in this case.

The documents are critical for the additional reason that Plaintiffs' counsel has demonstrated a failure to provide adequate or accurate information to putative class members.  For example, after obtaining contact information via a *Belaire-West* notice process, Plaintiffs' counsel sent misleading communications to putative class members, which they subsequently corrected only after Sunrise demanded that they do so.  *See* Allyn Decl., Exs. J, L.  And the deposition of one of the named plaintiffs revealed that *she did not even know* she was a plaintiff in a lawsuit because *no one*

*ever told her*.  *See generally id.*, Ex. M.[1]  Sunrise has a serious concern that the documents Plaintiffs are currently withholding will reveal more misleading communications by Plaintiffs' counsel in an effort to advance this litigation, or additional examples of Plaintiffs' counsel hiding the ball from the people they seek to represent.  If that is the case, Sunrise has a right to bring those troubling issues to light.

This misconduct is also part of a broader pattern by Plaintiffs of improperly withholding information, greatly prejudicing Sunrise's ability to prepare its opposition to Plaintiffs' class certification motion.  Among many examples, with respect to the Requests for Production at issue here, Plaintiffs:

- Failed to appear for a scheduled meet-and-confer call regarding Sunrise's requests on April 24, 2020;
- Refused to discuss the requested documents on a May 5, 2020 meet-and-confer call that was specifically scheduled because Plaintiffs indicated that they would be available to discuss these issues at that time; and
- Failed to provide any substantive updates regarding these and other issues on a May 11, 2020 meet-and-confer call, despite having had months to prepare.

*Id.*, Ex. F.  These tactics have hamstrung Sunrise's ability to prepare to depose Plaintiffs' declarants, oppose Plaintiffs' class certification bid, and otherwise prepare its defense in this case.

Because Plaintiffs' basis for withholding the admittedly relevant and responsive documents is unfounded, Sunrise respectfully requests that this Court compel production of all documents provided to Plaintiffs' counsel by, and all non-privileged communications with, all putative class members.

### B.   **Plaintiffs' Introduction**

With this motion, Sunrise seeks to compel production of all "communications" between Plaintiffs' counsel and putative class members, including any documents those putative class members provided at the request of Plaintiffs' counsel. On June 10, 2020, Plaintiffs produced all non- protected documents received from putative

---

[1] Plaintiffs subsequently submitted a sham declaration that directly contradicts Ms. Ganz's original deposition testimony.  *See* Dkt. 144.

1   class members who provided declarations in support of Plaintiffs' motion for class

2   certification.   Plaintiffs also provided a privilege log for documents withheld as

3   attorney work product, which includes: (i) Plaintiffs' counsel communications

4   regarding drafts of the declarations that ultimately were submitted in final form; and

5   (ii) Plaintiffs counsel's communications with putative class members who did not

6   submit a declaration and documents received from those persons.

7       The withheld documents are protected from disclosure under the attorney work-

8   product doctrine. *See e.g., Sinohui v. CEC Entertainment, Inc.,* Case No. EDCV 14-

9   2516-JLS (KKx), 2016 WL 2743458, at *7 (C.D. Cal. May 11, 2016) ("To the extent

10   Plaintiff's counsel contacted the putative class member first as a potential witness,

11   such information is protected by the attorney work-product doctrine;" as defendant can

12   likewise contact putative class members, it "has not met its burden of establishing a

13   substantial need for the information from Plaintiff's counsel sufficient to overcome the

14   attorney work product protection.").

15       Here, Sunrise does not even cite, let alone attempt to meet, its burden to show

16   both a "substantial need" for the materials and that it cannot obtain their substantial

17   equivalent by other means without undue hardship. Fed. R. Civ. Pro. 26(b)(3)(B)(ii).

18   Sunrise weakly asserts the documents are "critical" to its case defense, but ignores the

19   fact that most of the documents (produced as to the declarant class members) consist of

20   materials already in Sunrise's possession, such as admission agreements and billing

21   records. *See* Declaration of Brian Umpierre ("Umpierre Decl."), ¶ 13.

22       Where, as here, putative class members communicated with Plaintiffs' counsel in

23   order to express their interest in participating in this case – including by discussing

24   their experiences with Sunrise – and Plaintiffs' counsel has acted with circumspection

25   and care to keep that information confidential, work product protection applies. *Briggs*

26   *v. OS Rest. Servs.,* Case No. 2:18-cv-8457 JAK (AFMx), 2019 WL 7195620, at *3

27   (C.D. Cal. Sept. 10, 2019) is clear on this point, Sunrise's interpretation

28   notwithstanding. Nor have Plaintiffs' waived that protection simply by offering

1   declarations from some of those putative class members to support their class
2   certification motion. The substance of the class member declarations do not reveal
3   otherwise privileged communications with Plaintiffs' counsel. *Compare Briggs,* at *4;
4   *Apple, Inc. v. Samsung Elecs. Co., Ltd.,* 306 F.R.D. 234, 242 (N.D. Cal. 2015).

5       Lacking a real argument, Sunrise resorts to baseless accusations against
6   Plaintiffs' counsel of "misconduct" and engaging in a "pattern" of "improperly
7   withholding information."  The record confirms that these accusations are false.
8   Umpierre Decl., ¶¶ 20-27.

9       The irony of Sunrise's ad hominem attack is that, when the shoe was on the
10  other foot, Sunrise flatly refused to produce *any* documents in response to Plaintiffs'
11  document requests.  Specifically, in March 2019, Plaintiffs asked Sunrise to produce
12  communications between itself and others (necessarily including putative class
13  members) regarding the allegations and claims asserted in this lawsuit. Plaintiffs also
14  requested documents related Sunrise's attempts to obtain releases or waivers of the
15  claims asserted in this lawsuit. Sunrise objected on work product and other grounds
16  and refused to produce any responsive documents. Umpierre Decl., ¶¶ 28-29, Ex. N.

17      For these and the reasons detailed below, Sunrise's motion should be denied in
18  its entirety.

19  **II.   DEFENDANT'S MOTION TO COMPEL PRODUCTION OF**
20  **DOCUMENTS**

21      Pursuant to Local Rule 37-1, the parties have met and conferred extensively
22  regarding the Requests for Production at issue here, including via Sunrise's April 27,
23  2020 letter, Plaintiffs' May 11, 2020 letter in response, a meet-and-confer telephone
24  call on May 11, 2020, Sunrise's May 15, 2020 letter, a meet-and-confer telephone call
25  on May 23, 2020, and Sunrise's June 9, 2020 letter. *See* Allyn Decl. ¶¶ 5-8, Exs. D-G.
26  The parties have been unable to reach an agreement.

27      Sunrise served Plaintiffs with Requests for Production Nos. 5 and 15 on April
28  29, 2019, and Request for Production No. 20 on February 14, 2020. *Id.* ¶¶ 2-3.

Plaintiffs served responses on May 29, 2019 and March 16, 2020, respectively. *Id.* The Requests and responses, in full, read as follows:

> Sunrise's Request for Production No. 5

ALL DOCUMENTS and COMMUNICATIONS RELATING TO claims, allegations, complaints and/or lawsuits by YOU in which YOU represented or sought to represent a class or classes of plaintiffs.

> Plaintiffs' Response to Request for Production No. 5

Objection.  Plaintiff objects that this request is over broad and seeks information that is not relevant to the subject matter of this litigation and, as drafted, protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Discovery is ongoing and Plaintiff reserves the right to amend this response.

Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

After a reasonable and diligent search, there are no responsive documents beyond those related to the instant litigation.[2]

> Sunrise's Request for Production No. 15

ALL DOCUMENTS and COMMUNICATIONS RELATING TO any allegation made in YOUR COMPLAINT, including DOCUMENTS and COMMUNICATIONS YOU contend support such allegations.

> Plaintiffs' Response to Request for Production No. 15

Objection.  The request is overbroad and oppressive.  Plaintiff objects to the extent this request seeks information protected by the attorney-client privilege and/or work-product doctrine.  Plaintiff objects further that the request seeks information that is already in Defendant's possession or otherwise available to Defendant and, therefore, may be accessible and obtained by Defendant with less burden than Plaintiff

---

[2] The quoted responses are those served by Plaintiffs Helen and Elise Ganz.  Allyn Decl., Ex. B.  Plaintiff Amy Fearn's response to Request for Production No. 5 differs only in that the last sentence states "After a reasonable and diligent search, there are no responsive documents."  *See id.*, Ex. A.

can identify and provide the requested information.    Plaintiff objects the term "RELATING TO" is vague and ambiguous.    Discovery is ongoing and Plaintiff reserves the right to amend this response.

Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

After a reasonable and diligent search, Plaintiff will produce the non-privileged documents responsive to this request that are found to exist within her possession, custody, or control, including PG000001 – PG000031 and PG000219 – PG000220 (Residency Agreement); PG000032 – PG000151 (Resident Binder); PG000152 – PG000168 (Resident Handbook); PG000169 – PG000193 (Service Plan instructions); PG000194 – PG000217 (Resident Assessment); PG000218 (Rate Sheet); PG000221 (Founder's Letter); PG000250 – PG000251 (Ganz email correspondence); P000001 – P000012 (Glassdoor reviews); P000013 – P000018 (Yelp reviews); P000019 – P000082 (Sunrise website and brochure).[3]

Sunrise's Request for Production No. 20

All DOCUMENTS produced to YOU in response to any THIRD-PARTY subpoenas, public records requests, or informal requests made to any THIRD-PARTY in connection with this ACTION.

Plaintiffs' Response to Request for Production No. 20

Objection.    Plaintiff objects to the extent that this request seeks information protected by the attorney-work product doctrine.    Plaintiff also objects that the phrase "informal requests" is vague and ambiguous.    Plaintiff objects further that the request seeks information that is already in Sunrise's possession or otherwise available to

---

[3] The quoted responses are those served by Plaintiffs Helen and Elise Ganz. Allyn Decl., Ex. B.    Plaintiff Amy Fearn was served with the equivalent request as Request for Production No. 17.    Plaintiff Amy Fearn's response to Request for Production No. 17 differs only in that the last paragraph states "After a reasonable and diligent search, Plaintiff will produce the non-privileged documents responsive to this request that are found to exist within her possession, custody, or control, including PF004146, PF004256, and PF004280." *See id.*, Ex. A.

Sunrise and, therefore, may be accessible and obtained by Sunrise with less burden that Plaintiff can identify and provide the requested information.  Discovery is ongoing and Plaintiff reserves the right to supplement or amend this response.

Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

After a reasonable and diligent search, Plaintiff will produce non-privileged documents within her possession, custody, or control that are responsive to this request, including documents obtained pursuant to a public records request regarding Sunrise of Beverly Hills (P000083 – P001743), Sunrise of Westlake Village (P001744 – P003839), Sunrise of San Mateo (P003840 – P004345), and Sunrise of San Rafael (P004346 – P005329).  As Sunrise is aware, Plaintiffs issued Rule 45 subpoenas for documents to twelve regional offices of the Department of Social Services – Community Care Licensing Division ("DSS-CCL").  Per the parties' agreement reflected in the letter dated September 20, 2019, Sunrise's counsel is permitted to conduct a preliminary review of the documents produced by DSS-CCL for privilege and/or confidentiality, after which counsel will produce, on a rolling basis, such documents to Plaintiffs' counsel.  As these documents are, therefore, equally available to Sunrise, Plaintiffs will not re-produce same back to Sunrise.[4]

## A.    Sunrise's Argument

Plaintiffs are improperly withholding two categories of documents.  The first is documents that putative class members provided *to* counsel:  (i) email correspondence between putative class members and Sunrise employees; (ii) Sunrise "billing documents"; (iii) Sunrise residency agreements; and (iv) other, unnamed documents.  The second category is Plaintiffs' counsel's *own* correspondence with putative class members.

---

[4] The quoted responses are those served by Plaintiffs Helen and Elise Ganz.  Allyn Decl., Ex. C.  Plaintiff Amy Fearn was not served with this Request for Production.

Gibson, Dunn &
Crutcher LLP

Plaintiffs concede that these documents exist, that they are relevant and responsive, and that they are organized in their counsel's files, ready to be produced. On June 10, 2020, following months of requests by Sunrise, Plaintiffs produced a handful of documents that were provided to them by some (but not all) of the 30 declarants who submitted declarations in support of their motion for class certification. Allyn Decl. ¶ 9.  They are refusing to provide those same documents for any other putative class members.  Instead, they produced a lengthy privilege log indicating they are withholding at total of 449 documents—62 related to their class certification declarants and 387 related to other putative class members—on the basis that they are attorney work product because they are related to Plaintiffs' counsel's investigation in the course of this litigation.  *See id.*, Exs. G-H.  Only 8 (1.8%) of those documents are described as counsel's notes.  *See generally id.*, Ex. H.  Plaintiffs do not argue that any of these documents are protected by the attorney-client privilege, or that Plaintiffs' counsel represents any of the individuals with whom they have corresponded.

Because these documents are relevant, responsive, and critical to Sunrise's defense, and because neither of Plaintiffs' objections holds water, this Court should compel Plaintiffs to produce them.

### 1.   The Documents Are Indisputably Relevant and Critical to Sunrise's Defense

As Plaintiffs concede, the documents and communications they are withholding are both relevant and responsive to Sunrise's requests at issue here.  *See* Allyn Decl., Ex. G.  Plaintiffs recently filed their motion for class certification in which they contend their claims can be proven via common evidence on a class-wide basis. Dkt. 147-1.  Plaintiffs proffered evidence from putative class members in the form of declarations in support of that claim.  *See* Dkt. 143.  But that evidence is most certainly only part of the picture.  The other documents that Plaintiffs' counsel collected from putative class members and chose to withhold may undermine Plaintiffs' arguments or

show variation across the putative class. Plaintiffs concede their relevance and have no basis on which to withhold them.

The requested communications are especially crucial for the additional reason that, as both parties concede, Plaintiffs have sent misleading communications to putative class members in the past. *See* Allyn Decl. ¶¶ 11-13, Exs. J-L. Specifically, after Plaintiffs' counsel used a *Belaire-West* notice to obtain contact information for approximately 2,600 putative class members, they sent emails to those putative class members implying that Sunrise had ***voluntarily*** produced their contact information without regard for their privacy. This was misleading because Sunrise was ***required*** to produce information for anyone who did not return the *Belaire-West* opt-out form. *See id.*, Ex. L. This behavior is indicative of a pattern on the part of Plaintiffs' counsel, whose own client testified that she did not review the complaint in this action before it was filed, nor was she even aware that she had filed a lawsuit. *See id.*, Ex. M. Any misleading interactions between counsel and putative class members will bear directly on the adequacy of counsel and may also shed light on information set forth in the filed declarations.

Despite conceding both the relevance and responsiveness of non-privileged communications with putative class members, Plaintiffs' counsel refuses to produce them on the grounds that they are protected by the attorney work product doctrine and that their production would be unduly burdensome. Both of these excuses fall flat.

## 2. Third-Party Documents and Communications Are Not Protected Work Product

Plaintiffs are improperly withholding 441 third-party documents based on the claim that they are protected by the attorney work product doctrine.[5] Plaintiffs claim this protection applies because the documents are related to their counsel's

---

[5] According to Plaintiffs' privilege log, they are withholding 449 documents. Only 8 of those documents are described as containing "[c]ounsel's notes." *See* Allyn Decl. ¶ 10, Ex. I. Sunrise does not seek to compel production of those 8 documents.

investigation regarding the claims in this lawsuit.  This is not a proper basis for withholding these documents.  Documents qualify for work-product protection only if they (1) were "prepared *in anticipation of litigation* or for trial," and (2) were prepared *by a party or that party's representative*.  *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)) (emphases added).

Case law is clear that where, as here, a party's counsel communicates with putative class members and other third parties, *the communications are discoverable*. *See Briggs v. OS Rest. Servs., LLC*, 2019 WL 7195620, at *3 (C.D. Cal. Sept. 10, 2019) ("communications of Plaintiff and his counsel" with "putative class members" "are not protected by the work-product doctrine"); *see also Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 306 F.R.D. 234, 242 (N.D. Cal. 2015) (party may not make a disclosure of communications to help his case then block discovery into related communications by asserting privilege or work product); *EEOC v. ABM Indus. Inc.*, 261 F.R.D. 503, 511-513 (E.D. Cal. 2009) (communications between counsel and a general group of putative class members waives work product protection); *Brown v. Tax Ease Lien Serv., LLC*, 2017 WL 6939338, at *17 (W.D. Ky. Sept. 20, 2019) ("Defendants likewise may have discovery of the solicitation of representation letters sent to potential class members and factual communications with potential class members by Plaintiffs' counsel. Such letters are relevant not only to the Rule 23(g) considerations . . . , but also potentially bear on the credibility of the class members.").

This is because putative class members are not parties to the litigation.  To the extent that Plaintiffs are attempting to argue that the *content* of their counsel's communications with putative class members could be considered to have been created in anticipation of litigation, these communications were not prepared by a party or their representative and thus cannot qualify as work product.  *See In re Cal. Pub. Utils. Comm'n*, 892 F.2d at 781 (explaining work product protection can only be asserted by "one who is a party (or a party's representative) to the litigation in which discovery is sought"); *see also* C. Wright & A. Miller, Fed. Practice & Proc. § 2024, at 201-02

("[D]ocuments prepared for one who is not a party to the present suit are wholly unprotected."); *Loustalet v. Refco, Inc.*, 154 F.R.D. 243, 247 (C.D. Cal. 1993) (noting "the fact that [individual asserting work product], a non-party to the present litigation, anticipated being named in the litigation affords him no protection under 26(b)(3)"). Plaintiffs have neither produced nor logged retention agreements for the declarants and putative class members over whose documents they now claim work-product protection, rendering them plainly discoverable. *See, e.g., EEOC v. CRST Van Expedited, Inc.*, 2009 WL 136025, at *4 (N.D. Iowa Jan. 20, 2009) ("solicitation letters sent … to prospective class members or oral representations made to prospective class members, prior to the establishment of an attorney-client relationship, are discoverable pursuant to Federal Rule of Civil Procedure 26(b)(3)(A)"); *see also Fangman v. Genuine Title, LLC*, 2016 WL 3362538, at *3 (D. Md. June 17, 2016) (ordering production of "solicitation materials sent . . . to potential Plaintiffs or class members" noting they "are not privileged" and plaintiffs "failed to cite a single case holding that solicitation materials are shielded from discovery by the work-product doctrine"); *Brown*, 2017 WL 6939338, at *17 (same).

Even if the communications themselves could plausibly be considered attorney work product (they cannot), the underlying documents that putative class members gave to Plaintiffs' counsel are not protected from disclosure. *See Cal. v. Kinder Morgan Energy Partners, L.P.*, 2009 WL 10668706, at *2 (S.D. Cal. Sept. 28, 2009) ("not all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery"); *id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1946)) ("where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had").

As a result, Plaintiffs' work product objections are improper, and the documents should be produced.

Gibson, Dunn & Crutcher LLP

### 3.   Plaintiffs' "Burden" Objection Is Meritless

During the parties' May 11, 2020 meet-and-confer call, Plaintiffs stated that they objected to producing the requested documents because doing so would be "burdensome," in part because many of the documents were authored by Sunrise (such as Sunrise billing statements or other documents related to resident care) or already in Sunrise's possession (such as email communications between residents' family members and Sunrise personnel).  Plaintiffs have provided no factual or legal basis for their position that producing these documents is burdensome—because they cannot. *See Bible v. Rio Properties, Inc.*, 246 F.R.D. 614, 618 (C.D. Cal. 2007) ("[T]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.").

By Plaintiffs' own admission, and as evidenced by the privilege log, the documents are already in counsel's possession and organized by declarant or putative class member.  *See* Allyn Decl., Exs. G, H.  As such, any purported "burden" is limited to simply producing 441 documents, a number that pales in comparison to the *hundreds of thousands* of pages produced by Sunrise to date.

To the extent Plaintiffs contend production of these documents would be burdensome because Sunrise has copies of those documents in its possession, this argument also fails.  Sunrise cannot possibly have a majority of the documents, such as email correspondence, voicemails, and text messages between residents and resident representatives and Plaintiffs' counsel.  Sunrise is not required to guess at what documents may or may not have been provided to Plaintiffs, even if some of those documents were originally communications between putative class members and Sunrise personnel.  Sunrise does not know what documents Plaintiffs are withholding because Plaintiffs redacted the names of the putative class members to which these documents relate.  *See* Allyn Decl., Ex. H.  Sunrise thus has no way to confirm whether it does in fact have even a portion of these documents.  Sunrise cannot be expected to guess .

In any event, this argument is simply not a proper basis for withholding documents. "[T]he requesting party's alleged possession of the documents is not a legitimate basis for refusing to produce the documents." *Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*, 2016 WL 7743032, at *3 (M.D. Fla. Nov. 30, 2016); *see also Bretana v. Int'l Collection Corp.*, 2008 WL 4334710, at *4 (N.D. Cal. Sept. 22, 2008) ("A requested party may not refuse to respond to a requesting party's discovery request on the ground that the requested information is in the possession of the requesting party."). This is particularly true where, as here, the objecting party has already gathered and organized the documents and has not articulated a specific burden involved in producing them.

Accordingly, this Court should grant Sunrise's motion and compel Plaintiffs to produce all non-privileged documents produced to Plaintiffs' counsel by, and all written or otherwise recorded communications with, Plaintiffs' class certification declarants and any other putative class members.

## B. Plaintiffs' Argument

Sunrise's instant motion seeks to piggy-back on opposing counsels' industry and efforts to develop the claims advanced in this case. Plaintiffs' counsel are entitled to a certain degree of privacy in preparing this case for trial. The content of counsels' communications with putative class members about their experiences with Sunrise – and the documents that putative class members provided in connection with those inquiries – reflect counsels' strategy to obtain class certification and their evaluation of the strengths or weaknesses of the evidence required for trial. Where, as here, the information Sunrise seeks is equally available to Sunrise through its own industry, compelling Plaintiffs to hand over the fruits of their investigation is wholly at odds with the protections afforded by the work-product rule.

Gibson, Dunn &
Crutcher LLP

1

### 1.   The Documents Sunrise Seeks Are Protected Work-Product

2      Fed. R. Civ. Pro. 26(b)(3) codifies the attorney work-product rule:

3          a party may not discover documents … prepared in anticipation of
           litigation or for trial … [unless the party seeking discovery] shows that is
4          has substantial need for the materials … and cannot, without undue
           hardship,  obtain their substantial equivalent by other means.
5

6      *Id.*[6]

7          Here, Plaintiffs' counsel conducted a typical pre-trial investigation to evaluate

8      the strengths and weaknesses of their case. Upon receiving contact information for

9      putative class members' compiled by Sunrise and provided through the *BelAire-West*

10     notice process, Plaintiffs' counsel used that information to invite putative class

11     members to share their experiences about Sunrise. Plaintiffs produced the form letter

12     and three versions of the email they sent to putative class members, in response to

13     Sunrise's document requests. *See* Umpierre Decl., ¶ 3, 5, 7-9, 18; Exs. A, C, E, F

14     (P011563-P011568). A subset of those putative class members (or their representative)

15     responded to Plaintiffs' counsels' inquiries. Plaintiffs' counsel communicated further

16     with that subset of putative class members to gather information relevant to their class

17     certification motion and in anticipation of trial. Those communications reflect

18     counsels' strategy to  obtain class certification, their evaluation of the strengths or

19

20     _____

       [6]  Sunrise's motion is addressed to work product under the federal standard as
21     reflected in Fed. R. Civ. P. 23 and Plaintiffs respond herein accordingly. However,
       as Plaintiffs' claims are before the Court on the basis of CAFA diversity
22     jurisdiction, California privilege law applies under Fed. R. Evid. 501. *See Hawkins
       v. Kroger Co.,* Case No. 3:15-cv-02320-JM-AHG, 2020 WL 1952832, at *17 (S.D.
       Cal. Apr. 23, 2020). California codified the attorney work product privilege in the
23     Discovery Act. CCP §§ 2018.018 -2018.080. Absolute protection is given to "[a]ny
       writing that reflects an attorney's impressions, conclusions, opinions, or legal
24     research or theories." *Id.,* § 2018.030(a); *Coito v. Super. Ct.,* 54 Cal.4th 480, 486
       (2012). Conditional protection is provided to any other work product which is
25     discoverable if "the court determines that denial of discovery will unfairly prejudice
       the party seeking discovery in preparing that party's claim or defense or will result
26     in an injustice." *Id.,* § 2018.030(b). At all events, should the subject discovery be
       protected under the Federal authorities, it surely is protected under the more
27     expansive California rule. *See, e.g., Rumac v. Bottomley,* 143 Cal.App.3d 810, 815
       (1983) (work product protection for any document prepared by attorney in
28     connection with work as attorney and regardless of whether litigation
       contemplated).

Gibson, Dunn &
Crutcher LLP

weaknesses of the evidence garnered to date, and the facts counsel found critical in that regard.

This information is protected from disclosure by the attorney work-product doctrine. *Sinohui v. CEC Entertainment, Inc.,* 2016 WL 2743458, at *7 ("To the extent Plaintiff's counsel contacted the putative class member first as a potential witness, such information is protected by the attorney work-product doctrine;" since defendant can likewise contact putative class members, it "has not met its burden of establishing a substantial need for the information from Plaintiff's counsel sufficient to overcome the attorney work product protection."); *see also*, *Campbell v. Best Buy Stores, L.P.*, Case No. LA CV 12-07794 JAK (SHx), 2013 WL 5302217, at *16 (C.D. Cal. Sept. 20, 2013) ("Rule 26 does not require that Plaintiff disclose specifically which individuals he plans to use in support of his position, nor does it require that Plaintiff turn over declarations obtained from putative class members. … "); *Intel Corp. v. Via Technologies*, 204 F.R.D. 450, 452 (N.D.Cal. 2001) (rejecting argument that party was required to disclose witness declaration under Rule 26 disclosure report; "the declaration at issue was clearly work product right up until the moment it was filed.")

These decisions are grounded in the well-recognized purpose of the work product rule – to prevent exploitation of a party's efforts in preparing their case. *See, e.g., Holmgren v. State Farm Mut. Ins. Co.,* 976 F.2d 573, 576 (9th Cir 1992); *O'Connor v. Boeing N. American, Inc.,* 216 F.R.D. 640, 642 (C.D. Cal. 2003) ("One of the primary purposes of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation."); *U.S. ex rel. Burroughs v. DeNardi Corp.,* 167 F.R.D. 680, 685 (S.D. Cal. 1996) ("One of the primary functions of the work-product doctrine is to prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigation and analytic effort, and strategies for developing and presenting the client's case.").

Gibson, Dunn & Crutcher LLP

16

Were Plaintiffs' compelled to produce the communications and related documents provided to their counsel by putative class members, Sunrise would unfairly benefit from Plaintiffs' counsels' industry and efforts as reflected in their expenditure of time and effort to gather evidence relevant to Plaintiffs' claims. Where, as here, the putative class members consist of Sunrise's own current and former residents and/or their family members, opposing counsel is free to interview them on their own initiative to find out what information they have that is relevant to the litigation. As the Supreme Court in *Hickman v. Taylor* observed: "[A] common law trial is and always should be an adversary proceeding. Discovery was hardly intended to enable a learned profession to perform its function [with] wits borrowed from the adversary." *Id.,* 329 U.S. 495, 516 (1947) (conc. opn. of Jackson, J.).

## C.    Sunrise's Cases Are Inapposite

Implicitly acknowledging that it cannot meet the standard under Rule 23(b)(3) to obtain discovery of attorney work-product, Sunrise argues the requested documents do not constitute attorney-work product.  But the cases Sunrise cites for this position are clearly distinguishable.

Selectively quoting from *Briggs v. OS Rest. Servs.,* 2019 WL 7195620, at *3, Sunrise argues that all communications between Plaintiffs' counsel and putative class members are discoverable. But what the *Briggs* court actually held is that where "plaintiff's counsel communicated with putative class members without any agreement or indication that the recipients would keep the communications confidential, or that the individuals were interested in participating in the case," then the communications are not protected work product. *Id.*  Here, in contrast, the putative class members with whom Plaintiffs' counsel communicated did so due to their interest in participating in the case and to share their experiences concerning Sunrise facilities. *See* Umpierre Decl, ¶¶ 10-13 (describing Plaintiffs' use of *BelAire-West* notice contact information to send communications to approximately 1,943 putative class members to invite them to

1  contact Plaintiffs' counsel if they wished to share their experiences at Sunrise).   Those

2  communications have been maintained as confidential. Umpierre Decl., ¶¶ 14-18.

3      *Apple v. Samsung Elecs. Co., Ltd.,* 306 F.R.D. 234 (N.D. Cal. 2015), is likewise

4  inapposite.   There, the party asserting the claim of privilege (Samsung) "referenced

5  privileged communications" to support arguments in opposing a sanctions motion.

6  The court found Samsung's use of privileged information as both "sword and shield"

7  constituted a waiver.  *Id* at 242-243.   Here, Plaintiffs did not rely on privileged or

8  protected information to advance their litigation position. Plaintiffs filed declarations

9  from certain putative class members and produced the non-protected documents

10  received from those declarants.  There has been no "sword and shield" use of protected

11  information.   Nothing in *Apple* supports Sunrise's contention that the mere filing of

12  declarations opens up discovery into Plaintiffs counsel's opinions and strategies

13  reflected in communications with the declarants and drafts of their final declarations.

14  Those materials remain protected as attorney work product.  *See Intel Corp. v. VIA*

15  *Tech.,* 204 F.R.D. at 452 (declaration is work product "right up until the moment it was

16  filed").

17      Sunrise's reliance on *EEOC v. ABM Indus. Inc.,* 261 F.R.D. 503 (E.D. Cal.

18  2009) is misplaced.   There, defendant ABM sought discovery of a cover letter and

19  questionnaire that the EEOC sent to approximately 4,000 current and former ABM

20  janitorial employees.  The court found that, by sending the communication to persons

21  who may have separated on favorable terms and thus likely to make disclosure to

22  ABM, with no request to maintain confidentiality, the EEOC waived any work product

23  protection. *Id.* at 512 (EEOC failed to exercise the "requisite degree of circumspection

24  and care the law requires").

25      Here, Plaintiffs have produced the initial introduction letters that Plaintiffs'

26  counsel caused to be sent to putative class members. Umpierre Decl., Exs. A, C, E, F.

27  Unlike the EEOC, there is no showing that Plaintiffs' counsel failed to exercise the

28  "requisite degree of circumspection and care" to maintain confidentiality with respect

to withheld documentation.   Sunrise's argument that sending the initial form communication to class members somehow constitutes a future waiver of all work-product related to communications with the contacted persons borders on the absurd.

Equally specious is Sunrise's argument that Plaintiffs counsels' communications with putative class members cannot be attorney-work product because "these communications were not prepared by a party or their representative." The communications originated with *Plaintiffs' representatives* – their counsel – and were pursued in connection with their investigation into the merits of class certification and for trial. This is attorney work-product by definition. *See* Fed. R. Civ. Pro. 23(b)(3), CCP § 2018.030. This includes any documents putative class members provided to counsel, at their request, in that it reveals what counsel considered important with regard to class certification and the merits at trial. This information was withheld from production, after careful review, and detailed in the privilege log Plaintiffs provided on June 10, 2020. Umpierre Decl., ¶ 18.

Sunrise's related contention that no work-product protection applies to communications that occurred after the litigation has commenced conflicts with the plain language of Rule 23(b)(3). See *id.* ("… prepared in anticipation of litigation **or for trial** …") (emphasis added). That is why, for example, work product protections have attached to declarations obtained, but not filed, at the class certification stage. *Campbell* , 2013 WL 5302217, at *16; *Intel,* 204 F.R.D at 452; *see also Johnston v. Don Employees' Pension Plan*, Case No. 14-cv-10427, 2016 WL 1106889, at *5 (E.D. Mich. Mar. 22, 2016) (emails to putative class members were prepared after litigation had already begun "appear to meet the requirement that they be made in anticipation of litigation"). It also conflicts with California law. *See Rumac,* 143 Cal.App.3d at 815 (California work product protection extends to documents prepared even in non-litigation context).

Gibson, Dunn &
Crutcher LLP

1

### D.    Sunrise Cannot Meet Its Burden Under Rule 23(b)(3)

2         Current and former residents of Sunrise's residential care facilities are as

3    available and accessible to it as they were to Plaintiffs – if not more so insofar as

4    Sunrise provided the contact information for a portion of putative class members and

5    has the names and last known contact information for the remainder of the putative

6    class. Sunrise claims that documents from putative class members are "critical," yet it

7    has not even attempted to claim unfair prejudice or any injustice that would result from

8    having to conduct its own pre-trial investigation of the claims and defenses at issue in

9    this case. Sunrise's ipse dixit notwithstanding, it cannot, therefore demonstrate

10   substantial need of this information, or that it is unable without undue hardship to

11   obtain the substantial equivalent of the materials by other means. *See* Fed. R. Civ. Pro.

12   23(b)(3); *Sinohui,* 2016 WL 2743458, at *16 (defendant could not meet its burden

13   under Rule 23(b)(3) because "[t]here is nothing preventing Defendant from directly

14   contacting the non-representative putative class members").

15         By way of example, many of the documents Sunrise seeks are its own

16   documents, relating to the business relationships between itself and its current and

17   former residents. This information is presumably within Sunrise's own files; it cannot,

18   therefore, demonstrate it is unable to obtain this information without undue hardship.

19   What is more, the categories of document provided, at Plaintiffs' counsels' request,

20   reveals counsels' mental impressions. To the extent Sunrise is seeking "email

21   correspondence, voicemails, and text messages between residents and resident

22   representatives and Plaintiffs' counsel" that "may undermine Plaintiffs' arguments or

23   show variation across the putative class," such information is obtainable by Sunrise

24   through its own investigatory efforts.  Sunrise should not be permitted to obtain at

25   Plaintiffs' and their counsels' expense information it could not obtain directly from the

26   putative class members who provided it. *See, e.g., Burgess v. Tesoro Refining and*

27   *Marketing Co.,* Case No. CV 10-5870-VBF (PLAx), 2011 WL 13217362, at *2 (C.D.

28

Cal. Jul. 5, 2011) (noting "heavy burden" to obtain discovery from absent class members).

### E.   Sunrise's Smear of Plaintiffs' Counsel is Baseless, False, and Irrelevant

Based purely on innuendo, Sunrise accuses Plaintiffs' counsel of "misconduct" and "improperly withholding information." Those charges are inflammatory and false.

First, Plaintiffs' counsel did not send "misleading" communications to putative class members. After receiving contact information for approximately 15% of the putative class, Plaintiffs sent an email to 730 email addresses (about 60 of which bounced back as undeliverable), on January 27, 2020. *See* Umpierre Decl., ¶ 3. Upon receiving Sunrise's complaint a few days later – in which Sunrise admitted Plaintiffs' communication was "not technically incorrect" – Plaintiffs' counsel sent out a subsequent email modifying the language to comply with Sunrise's request, and informed Sunrise of same. *Id.,* ¶¶ 4-6, Exs. B-D. In the following weeks, Plaintiffs transmitted the communication with Sunrise's requested language to approximately an additional 1,213 putative class members. More specifically, on approximately February 3, 2020, Plaintiffs sent approximately 485 letters by regular mail, and an additional 728 emails on February 27, 2020.  *See id.*, ¶¶ 8-9. Indeed, Plaintiffs did more than Sunrise asked by sending communications with Sunrise's modified language to all 730 putative class members initially contacted rather than only those with whom Plaintiffs' counsel were "engaged in ongoing communications."

Second, Sunrise's claim that Ms. Ganz submitted a sham declaration in support of the motion for class certification is baseless. As Ms. Ganz explained, she did not remember at her deposition when the first amended Complaint was filed and she trusted her attorneys to handle that filing. Declaration of Elise Ganz in Support of Plaintiffs' Motion for Class Certification (Dkt. 144), ¶ 32. Ms. Ganz did "understand that she joined a lawsuit that was [already] on file as a plaintiff" and that she "was going be representative of a class action." *Id.* Further, Ms. Ganz knew she reviewed a

copy of the Complaint before she was added as a named plaintiff when her lawyers discussed with her statements about her and her mother, Helen. *Id.* Ms. Ganz has no legal training and, not surprisingly, became confused under intense questioning that did not follow a chronological sequence of events. *See* Umpierre Decl., Ex. O (Ganz deposition excerpts at 176:16-180:20, describing initial communications with Plaintiffs' counsel then jumping to lay witness' knowledge of current, pre-certification status). Nevertheless, her testimony is ambiguous at worst. *See id.*[7] Without more, there is simply no need to impugn counsels' – or Ms. Ganz's – integrity. *See Yeager v. Bowlin,* 693 F.3d 1076,  1080-1081 (9th Cir. 2012) (explaining or clarifying prior testimony elicited by opposing counsel on deposition inconsistencies that result from a mistake should not lead to striking declaration on grounds it was a "sham").

Third, Sunrise's description of the parties' meet and confer efforts on the subject discovery is one-sided and self-serving. First, Sunrise fails to mention that a condition for the April 24 meet and confer call was it provide, in advance of the call, specific dates to meet and confer with respect to outstanding issues related to Sunrise's production of assessment and service plan data and other ESI – discovery itself outstanding for months by that time. *See* Umpierre Decl., ¶¶ 20, Ex. J. Sunrise responded, stating it would provide dates on which they would be available to meet and confer on the assessment/service plan data and other ESI issues the following day, April 24. *Id.,* ¶ 21 Ex. J.  Sunrise failed to provide those dates – and for that reason – the April 24 meet and confer did not go forward. *Id.*, ¶ 22, Ex. K.

Sunrise's descriptions of the May 5 and May 11 meet and confer calls again omit key facts. The agenda for the May 5 call included Sunrise's production of assessment data and related ESI issues, among other things. *See* Umpierre Decl., ¶ 23,

---

[7] Including testimony such as: Q: "Did you know this is not a class action, and it's a case that you filed …" A: "I did not know I was not part of a class action." Q: "It's a proposed class action." A: "Oh." … Q: "Were you told [that] you would be added to this lawsuit before you were added to it?" A: "I don't understand your question." … A: "… thought I was part of a group of people that were going to be in this lawsuit."

Ex. L. Plaintiffs informed Sunrise they would address their responses and objections to the subject document requests in writing. *See id.* After accommodating Sunrise's request to postpone the meet and confer discussion a couple of days, Plaintiffs' agreed to the call which ultimately occurred on May 5. Plaintiffs never agreed to include the subject discovery as an agenda item on that call and provided their written response to same on May 11. *Id.,* ¶¶ 24, 26 Exs. M, G. Indeed, Plaintiffs' accommodated Sunrise's demand for a meet and confer call later that same day; counsel provided whatever "update" it could to the letter sent only hours earlier. *See id.,* ¶¶ 26-27.

Undoubtedly, attempts to resolve the parties' discovery disputes have been, at times, contentious. However, Sunrise's baseless allegations of wrongdoing related to other discovery are irrelevant to the issues of whether the subject documents are work product and are insufficient to overcome its burden to show a substantial need and undue hardship. To be clear, however, Plaintiffs' counsel have at all times comported themselves with professionalism and courtesy. At all times, Plaintiffs' counsel have acted in good faith.

Dated: July 9, 2020

JASON C. SCHWARTZ
MICHELE L. MARYOTT
ASHLEY ALLYN
GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Michele L. Maryott*
            Michele L. Maryott

Attorneys for Defendant
SUNRISE SENIOR LIVING, LLC

1 | Dated:  July 9, 2020

2

3                                        KATHRYN A. STEBNER
                                        SARAH COLBY
                                        GEORGE N. KAWAMOTO
                                        BRIAN S. UMPIERRE
4                                        STEBNER AND ASSOCIATES

5                                        CHRISTOPHER J. HEALEY
                                        DENTONS US LLP
6

7                                        GUY B. WALLACE
                                        TRAVIS C. CLOSE
                                        MARK T. JOHNSON
8                                        SCHNEIDER WALLACE COTTRELL
                                        KONECKY WOTKYNS LLP
9

10                                       ROBERT S. ARNS
                                        THE ARNS LAW FIRM
11
                                        MICHAEL D. THAMER
                                        LAW OFFICES OF MICHAEL D. THAMER
12

13                                       W. TIMOTHY NEEDHAM
                                        JANSSEN MALLOY LLP
14

15                                       By:   _/s/ Christopher J. Healey_____
                                                     Christopher J. Healey
16
                                        Attorneys for Plaintiff and the Proposed Class
17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

24

## **ATTESTATION PURSUANT TO L.R. 5-4.3.4**

I, Michele L. Maryott attest that all other signatories listed, and on whose behalf this stipulation is submitted, concur in the contents of the stipulation and have authorized this filing.

Dated:  July 9, 2020

                                         */s/ Michele L. Maryott*
                                         Michele L. Maryott

103975957 1

Gibson, Dunn & Crutcher LLP